## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------- X
                                          :
In re                                     :       Chapter 11
                                          :
CHECKOUT HOLDING CORP., et al.,           :       Case No. 18-[_____] (___)
                                          :
              Debtors.¹                   :       Joint Administration Requested
                                          :
--------------------------------------------------------- X
```

## MOTION OF DEBTORS PURSUANT
## TO 11 U.S.C. §§ 105(a), 363(b), 363(c), 364(a), AND
## 503(b)(1) AND FED. R. BANKR. P. 6003 AND 6004 FOR
## (I) INTERIM AND FINAL AUTHORITY TO (A) CONTINUE
## EXISTING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
## PREPETITION OBLIGATIONS RELATED THERETO, AND (C) MAINTAIN
## BUSINESS FORMS AND EXISTING BANK ACCOUNTS; AND (II) RELATED RELIEF

Checkout Holding Corp. ("**CHC**") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.    On the date hereof (the "**Petition Date**"), the Debtors each commenced with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.     Before the Petition Date, the Debtors, with the support of their secured lenders, began the solicitation of votes on their *Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* (the "**Prepackaged Plan**"), through their *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtors expect that the Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.   Consistent with their obligations under that certain *Restructuring Support Agreement*, dated as of December 11, 2018 (as amended from time to time and including all exhibits thereto, the "**RSA**"), the Debtors are seeking to emerge from chapter 11 on an expedited timeframe.

4.     Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Del Genio* (the "**Del Genio Declaration**"), which has been filed with this Court contemporaneously with the Motion.

<u>**Jurisdiction**</u>

5.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013–1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

6.      By this Motion, pursuant to sections 105(a), 363(b), 363(c), 364(a), and 503(b)(1) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtors request: (i) authority to (a) continue to operate their existing cash management system (the "**Cash Management System**"), as described herein, including the continued maintenance of existing bank accounts (the "**Bank Accounts**") at the banks (the "**Banks**"), and continue transferring funds among the Debtors and their non-Debtor affiliates in the ordinary course of business, consistent with their prepetition practices; (b) honor certain prepetition obligations related to the Cash Management System; and (c) maintain existing business forms; and (ii) related relief.

7.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**") and, pending a final hearing on the relief requested herein, on a final basis as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

## The Debtors' Cash Management System

8.      In the ordinary course of their business, the Debtors have historically used the Cash Management System to collect and transfer funds generated by their operations and to disburse funds to satisfy obligations efficiently.  The Cash Management System also facilitates the Debtors' cash forecasting and reporting, their monitoring of the enterprise-wide collection

and disbursement of funds, and the overall administration of the Bank Accounts.  To lessen the disruption caused by these chapter 11 cases, minimize expense, and maximize the value of their estates, it is vital that the Debtors continue to use the Cash Management System.

9.    The Cash Management System includes thirteen Bank Accounts: (i) the master account for CHC, ending in 3960 (the "**Super Master Account**");[2] (ii) the master account for Catalina Marketing Corporation ("**CMC**"), ending in 2748 (the "**CMC Master Account**"); (iii) an account which receives all CMC lockbox deposits, ending in 9448  (the "**CMC Lockbox Account**"); (iv) four zero-balance CMC accounts for various types of disbursements, ending in 9178, 9456, 9895, and 2764 (collectively, the "**CMC Disbursement ZBAs**"); (v) a CMC standalone account, ending in 3400 (the "**CMC Standalone Account**"); (vi) four unutilized Bank Accounts, ending in 7035, 7043, 7050, and 7068, which are each owned by one of CHC's four parent holding corporations (together, the "**PDM Accounts**");[3] and (vii) one cash collateral account maintained with JPMorgan Chase & Co. ("**JPM**"), ending in 8026 (the "**Cash Collateral Account**"), which holds approximately $5.25 million of cash collateral securing JPM's exposure in connection with a letter of credit issued in favor of one of the Debtors' vendors, pursuant to the terms of that certain Cash Collateral Agreement, dated as of July 5, 2018, between JPM and CHC (the "**Cash Collateral Agreement**").  With the exception of the Cash Collateral Account, each of the Bank Accounts is maintained by SunTrust Banks, Inc. ("**SunTrust**").  Both JPM and SunTrust are authorized bank depositories by the Office of the United States Trustee for Region 3 (the "**U.S. Trustee**") pursuant to the *U.S. Trustee's Operating Guidelines for Chapter 11 Cases* (the "**UST Operating Guidelines**").

---

[2] Proceeds from the Debtors' prepetition indebtedness were deposited in the Super Master Account.

[3] The PDM Accounts were established to facilitate Berkshire Partners LLC's purchase of CHC in April 2014.  The PDM Accounts have been dormant since 2014 and currently have zero balance.

10.     The Cash Management System is overseen by the personnel in the Debtors' finance department (the "**Finance Department**").   Although much of the Cash Management System is automated, Finance Department personnel, including the Debtors' chief financial officer, monitor the Bank Accounts and manage the proper collection and disbursement of funds, including by, among other things, reviewing weekly reports on the Debtors' cash balances and disbursements.

11.     As described in further detail below, the Cash Management System facilitates four principle cash functions: (i) cash collection; (ii) cash concentration; (iii) disbursements to fund the Debtors' operations; and (iv) cash transfers among the Debtors and certain non-Debtor affiliates.   A general overview of the movement of cash through the Debtors' Cash Management System is illustrated by the flow of funds chart attached hereto as **Exhibit C**.

### A.     Cash Collection

12.     Revenue received by the Debtors is directed to either the CMC Lockbox Account or the CMC Master Account.   As referenced above, the CMC Lockbox Account is the recipient of all revenue that the Debtors receive in the form of lockbox deposits (*e.g.*, checks and cash).   All non-lockbox payments and revenue streams are directed to the CMC Master Account.

### B.     Cash Concentration

13.     In administering the Cash Management System, the Debtors conduct two cash sweeps at the end of each business day.   First, funds held in the CMC Lockbox Account, as well as any residual funds left in a CMC Disbursement Account, are swept to the CMC Master Account.   Second, funds held in the CMC Master Account are swept up to the Super Master Account.   The Debtors do not invest excess funds held in the Super Master Account or elsewhere in the Cash Management System.

C.    **Cash Disbursements**

14.    The Debtors utilize the CMC Disbursement ZBAs, the CMC Master Account, and the Super Master Account to make disbursements, as follows:

a)  <u>CMC Disbursement ZBA 9895</u>:  Administers payments to vendors;

b)  <u>CMC Disbursement ZBA 9456</u>:  Administers payments for employee payroll and benefits;

c)  <u>CMC Disbursement ZBA 9178</u>:  Purchases printers and reprographic supplies, and administers certain tax payments;

d)  <u>CMC Disbursement ZBA 2764</u>:  Not utilized currently, but historically was used for petty cash payments;

e)  <u>CMC Master Account</u>:  Administers wire payments, including for advisor fees; and

f)  <u>Super Master Account</u>:  Administers payments for interest and other expenses due under the Debtors' prepetition indebtedness.

15.    The funds necessary to issue the above-described disbursements from the CMC Disbursement ZBAs are drawn: (i) first, from the CMC Disbursement ZBA administering the payment; second, if sufficient funds are not available in the relevant CMC Disbursement ZBA, from the CMC Master Account; and third, if sufficient funds are not available in the relevant CMC Disbursement ZBA or the CMC Master Account, then from the Super Master Account.  Similarly, for disbursements made from the CMC Master Account, funds may be drawn from the Super Master Account if sufficient funds are not available in the CMC Master Account.

D.    **Intercompany Transactions and Claims**

16.    The Debtors' foreign non-Debtor affiliates (the "**Foreign Affiliates**") maintain their own distinct bank accounts and require minimal to no funding from the Debtors. Although cash transfers between the Debtors and their Foreign Affiliates are infrequent, the

Debtors do cover certain of their Foreign Affiliates' overhead costs, such as insurance, information technology and infrastructure, and advisor fees (the "**Shared Services**"). The Debtors are reimbursed for the costs of the Shared Services allocated to the Foreign Affiliates through agreements among the Debtors and their Foreign Affiliates (the "**Foreign Affiliate Agreements**"). Under the Foreign Affiliate Agreements, the Foreign Affiliates issue periodic payments (approximately quarterly) to the Debtors that include a fixed percentage of profits, which cover the costs associated with the Shared Services. As of the Petition Date, the Debtors estimate that they are owed approximately $15 million from the Foreign Affiliates on account of the Foreign Affiliate Agreements.

17.     On April 23, 2018, the Debtors established a Costa Rican subsidiary, Catalina Marketing Costa Rica, s.r.l. ("**CMCR**"). CMCR employs approximately ninety (90) Catalina employees in various post-sale campaign management, operational, and creative roles that benefit the Debtors' U.S. customers. The Debtors expect that establishing CMCR will yield significant benefits in terms of both employee retention and cost reduction. With respect to employee retention, the Debtors expect that it will be significantly easier to recruit and retain highly-skilled, operations-focused employees in Costa Rica. With respect to cost reduction, the Debtors anticipate material cost reductions in the areas of campaign set-up, execution, and optimization.

18.     In connection with the formation of CMCR, Catalina Marketing Worldwide, LLC ("**Catalina Worldwide**") and CMCR entered into an intercompany loan (the "**CMCR Loan**") agreement pursuant to which Catalina Worldwide funded CMCR in the amount of $1,000,000, which is the approximate amount necessary to cover CMCR's initial

operations and working capital requirements.[4]  Since becoming operational on October 15, 2018,

CMCR has charged the Debtors on a monthly basis for its services (the "**CMCR Payables**").  As

of the Petition Date, the Debtors believe that they owe approximately $720,000 on account of the

CMCR Payables, $580,000 of which will become due and owing within twenty-one (21) days of

the Petition Date (the "**Interim Period**").

> ### E.    Credit Card Program

19.    The Debtors maintain corporate credit card programs with American

Express and SunTrust in the ordinary course of business (the "**Employee Credit Card**

**Program**").  The Employee Credit Card Program, which consists of approximately three

hundred (300) corporate credit cards (the "**Employee Credit Cards**"), provides a convenient

way to allow employees to make purchases for the business where a wire, check, or automated

clearinghouse ("**ACH**") transfer is not possible or is otherwise inconvenient.  Each employee

participating in the Employee Credit Card Program is personally responsible for the Employee

Credit Card issued under his or her name.  Each month, American Express and SunTrust send the

invoices for the Employee Credit Card Program to the Debtors, which pay the invoices on their

employees' behalf.  The Debtors carefully review these invoices and bill their employees for any

charges that do not fit within the scope of their employment.

20.    The Debtors estimate that they incur liabilities of approximately $435,000

per month on account of the Employee Credit Card Program (the "**Employee Credit Card**

**Program Fees**").  As of the Petition Date, the Debtors estimate that they owe approximately

$180,000 in Employee Credit Card Program Fees, $20,000 of which will become due and owing

during the Interim Period.  By this Motion, the Debtors seek authority to (i) satisfy all prepetition

---

[4] Pursuant to the CMCR Loan, interest payments are due on a quarterly basis and the aggregate principal amount will be due in October 2023.

Employee Credit Card Program Fees, as and when they arise, and (ii) continue the Employee Credit Card Program in the ordinary course.

F.    **Bank Fees**

21.    In the ordinary course of their business, the Debtors incur and pay, honor, or allow to be deducted from the appropriate Bank Accounts certain service charges and other fees, costs, and expenses charged by the Banks (collectively, the "**Bank Fees**").  If the balance in a particular Bank Account decreases below a threshold amount established by the applicable Bank, the Debtors may incur additional fees for sending and receiving wire transfers, clearing checks, ACH transfers, and other transactions.  The Bank Fees are typically offset by interest amounts earned in the Bank Accounts, and, as of the Petition Date, the Debtors do not believe that they owe any amounts on account of the Bank Fees.

G.    **The Debtors' Existing Business Forms**

22.    In the ordinary course of business, the Debtors use a variety of correspondence and business forms, including, among other things, checks, purchase orders, invoices, and letterhead (collectively, the "**Business Forms**").  To minimize expenses, the Debtors seek authority to continue using all Business Forms substantially in the forms used immediately prior to the commencement of these chapter 11 cases, without reference to the Debtors' status as debtors in possession.  The Debtors have prepared communications for the various parties with which they conduct business, which will, among other things, notify such parties of the commencement of these chapter 11 cases.  The Debtors believe that these communications will provide adequate notice of the Debtors' status as debtors in possession.  Nevertheless, if the Debtors re-order checks or generate new checks during the pendency of these chapter 11 cases, such checks shall include a legend referring to the Debtors as "Debtors In Possession."

## Basis for Relief Requested

### A.    Continuation of the Cash Management System Is in the Best Interests of the Debtors and All Parties in Interest

23.    The efficient and economical operation of the Debtors' businesses requires that the Cash Management System continue during the pendency of these chapter 11 cases.  As a practical matter, because of the Debtors' corporate and financial structure, it would be difficult and expensive to establish and maintain a separate cash management system for each Debtor.  Further, requiring the Debtors to adopt new, segmented cash management systems at this early and critical stage of these cases would be expensive, create unnecessary administrative burdens, and be extraordinarily disruptive to their business operations.  Any such disruption would have a severe and adverse impact upon the Debtors' reorganization efforts.

24.    Accordingly, the Debtors seek authority to continue using the Cash Management System in the same manner as the Cash Management System was utilized prior to the Petition Date and to implement ordinary-course changes to it consistent with past practice.  The Bankruptcy Code contemplates such relief.

25.    Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.  *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992)*; Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997).  Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash

management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). The Cash Management System constitutes an ordinary course and essential business practice providing significant benefits to the Debtors, including, among other things, the ability to control corporate funds, ensure the maximum availability of funds when and where necessary, and reduce borrowing costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information. Accordingly, as stated, the Debtors seek authority under section 363(c)(1) to continue the Cash Management System as it operated prepetition.

**B.      Continued Performance of Intercompany Transactions Is Warranted**

26.      Even if continuation of the Cash Management System and other relief requested herein is outside of the ordinary course, the Court may approve it pursuant to section 363(b) of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purposes exists for doing so. *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring that debtor show a "sound business purpose" to justify its actions under section 363 of Bankruptcy Code); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987). If "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229,

238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

27.     Moreover, the Court also may rely on its general equitable powers to grant the relief requested in this Motion.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Courts have consistently permitted postpetition payment of prepetition obligations "where the payment is necessary to permit the effectuation of the rehabilitative purposes of the Bankruptcy Code."  *In re Sharon Steel Corp.*, 159 B.R. 730, 736 (Bankr. W.D. Penn. 1993); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); *See In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition claims and explaining that the "ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept").

28.     Payment of the CMCR Payables is warranted and justified by the facts and circumstances of these chapter 11 cases.  As described herein, the Debtors established CMCR as a strategic business initiative to improve employee retention and reduce overhead costs.  Failing to pay the CMCR Payables would jeopardize CMCR's operations because the Debtors are CMCR's only source of funding.  Without the CMCR Payables, CMCR would have no way to fund its operations or pay its employees, and, therefore, would not be able to continue to provide important support services to the Debtors.  Further, CMCR is a solvent, wholly-owned subsidiary of the Debtors, and, therefore, all of CMCR's equity value inures to the benefit of the Debtors.

Accordingly, by this Motion, the Debtors seek authority to pay any outstanding prepetition CMCR Payables and continue their arrangement with CMCR in the ordinary course of business.

29.     The Debtors believe that they do not require the Court's approval to continue entering into and performing under the Foreign Affiliate Agreements.  The Debtors perform under the Foreign Affiliate Agreements "in the ordinary course of business" within the meaning of section 363(c)(1).  The Foreign Affiliate Agreements are not just a matter of routine in the Debtors' business; they are the sorts of transactions that are common among many business enterprises that operate through multiple affiliates.  Yet, precisely because of their routine nature, the Foreign Affiliate Agreements are integral to the Debtors' ability to operate their business and successfully emerge from these chapter 11 cases.  In particular, the Foreign Affiliate Agreements benefit the Debtors because they facilitate increased efficiency and cost savings across the global Catalina enterprise at no cost to the Debtors, which are reimbursed for any expenditures on account of the Shared Services.  Accordingly, out of an abundance of caution, the Debtors request express authority to engage in such transactions postpetition.

**C.     The Court Should Authorize the Debtors to Pay Employee Credit Card Program Fees**

30.     Similarly, payment of the Employee Credit Card Program Fees is warranted and justified by the facts and circumstances of these chapter 11 cases.  The Debtors' employees – particularly their indispensable sales team – rely upon the Employee Credit Card Program to efficiently purchase goods and services that benefit the Debtors' business.  Employees will be forced to bear a significant financial burden if the Debtors are not permitted to honor obligations for unpaid Employee Credit Card Program Fees.  Moreover, honoring the Employee Credit Card Program Fees and continuing the Employee Credit Card Program will

help maintain employee morale and minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' business operations.

31.    Payment of the Employee Credit Card Program Fees is also necessary because any other treatment would be highly inequitable.  Employees who have incurred Employee Credit Card Program Fees should not be forced personally to bear the cost of such expenses, especially because the employees incurred the Employee Credit Card Program Fees for the Debtors' benefit, in the course of their employment by the Debtors, and with the understanding that they would be reimbursed for doing so.  Accordingly, by this Motion, the Debtors seek authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 to pay any outstanding prepetition Employee Credit Card Program Fees and continue the Employee Credit Card Program in the ordinary course of business.

**D.    The Court Should Authorize the Debtors to Pay Prepetition Bank Fees and Similar Service Charges**

32.    The Court should authorize the Debtors to pay Bank Fees and any similar service charges incurred prior to the commencement of these chapter 11 cases.  Payment of the prepetition Bank Fees and other, similar service charges is in the best interests of the Debtors and all parties in interest in these cases because it will prevent any disruption to the Cash Management System.  Further, because the Banks likely have setoff rights for the Bank Fees, payment of prepetition Bank Fees should not alter the rights of unsecured creditors in these chapter 11 cases.  Accordingly, by this Motion, the Debtors seek authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 to pay any outstanding prepetition Bank Fees and other similar service charges to maintain the Cash Management System.

RLF1 20430307V.1

E.      **Maintenance of the Debtors' Existing Bank Accounts and Business Forms Is Warranted**

33.      The Debtors request that the Court waive the requirements of the UST Operating Guidelines, which would require, among other things, the closure of the Bank Accounts, the opening of new deposit accounts, and the immediate ordering of new business forms with a legend identifying each of the Debtors as "Debtor-in-Possession."  The Debtors believe that these chapter 11 cases will be more orderly if they are permitted to maintain all Bank Accounts with the same account numbers during these cases.  By preserving business continuity and avoiding the disruption and delay to the Debtors' disbursement obligations, all parties in interest, including employees, vendors, and customers, will be best served by the relief requested herein.  In addition, to the extent necessary, the Debtors request authority to make ordinary course changes to the Cash Management System, such as opening or closing their accounts.

34.      To minimize expenses, the Debtors further request authority to continue to use their Business Forms substantially in the forms existing immediately prior to the commencement of these chapter 11 cases, without reference to their status as debtors in possession.  If the Debtors re-order checks or generate new checks during the pendency of these chapter 11 cases, such checks shall include a legend referring to the Debtors as "Debtors In Possession."  By virtue of the nature and scope of the Debtors' business operations and the large number of vendors and customers with which the Debtors transact, it is important that the Debtors be permitted to continue to use their existing Business Forms without alteration.  Because parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession as a result of the publicized nature of these chapter 11 cases and the notice of commencement that the Debtors will distribute to parties in interest, changing the Business Forms, except as noted above, would be unnecessary and unduly burdensome.

**Reservation of Rights**

35.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) an agreement or obligation to pay any claims, (iii) an admission as to the validity of any liens satisfied pursuant to this Motion, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (v) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Applicable Banks Should Be Authorized, At the Debtors' Direction, to
Receive, Process, Honor, and Pay Checks Issued and
Transfers Requested to Pay in Connection with Cash Management System**

36.     The Debtors further request that the Court authorize, but not direct, at the Debtors' direction, applicable financial institutions (the "**Bank**s") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by or on behalf of the Debtors relating to the Cash Management System, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payment.  The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to payment authorized by this Court or as a matter of law.  Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.  Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry and

without liability for following the Debtors' instructions.  The Debtors also seek authority to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or funds transfer requests on account of prepetition obligations relating to the Cash Management System dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

### The Debtors Satisfy Bankruptcy Rule 6003(b)

37.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  Fed. R. Bankr. P. 6003(b).  Here, the inability to use the Cash Management System and obtain the other relief requested herein likely would cause irreparable harm to the Debtors' business by stopping the flow of funds through the enterprise. Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### Bankruptcy Rules 6004(a) and (h)

38.    The Debtors believe that, under the circumstances of these chapter 11 cases, notice of the Motion, as set forth below, is adequate under Bankruptcy Rule 6004(a). Notwithstanding any applicability of the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), the Debtors respectfully request that the Motion be approved and the relief requested be immediately effective and enforceable.

### Notice

39.    Notice of this Motion shall be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the five (5) largest secured claims

against the Debtors (on a consolidated basis); (iii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.), as counsel to the DIP lenders and the ad hoc group of lenders under the First Lien Credit Agreement; (v) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq. and Robert A. Britton, Esq.) and Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.), as counsel to an ad hoc group of certain holders of term loans under the Second Lien Term Loan, dated as of April 9, 2014; (vi) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M. Resnick, Esq.) and Landis Rath & Cobb LLP, 919 Market Street, Wilmington, DE 19801 (Attn: Adam Landis, Esq. and Kerri Mumford, Esq.), as counsel to JPMorgan Chase Bank, N.A., as administrative agent under the First Lien Credit Agreement; (vii) Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007 (Attn: Andrew N. Goldman, Esq.), as counsel to Wilmington Savings Fund Society, FSB, as administrative agent under the Second Lien Credit Agreement; (viii) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.), as counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation; (ix) the Internal Revenue Service; (x) the United States Attorney's Office for the District of Delaware; (xi) the Banks; and (xii) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of the Motion as

required by Local Rule 9013-1(m).   The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

40.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and, following the Final Hearing (if one is required), the Proposed Final Order, in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as this Court may deem just and appropriate.

Dated: December 12, 2018
      Wilmington, Delaware

<div style="text-align:right">

*/s/ Jason M. Madron*

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Gary T. Holtzer (*pro hac vice* admission pending)
Ronit J. Berkovich (*pro hac vice* admission pending)
Jessica Liou (*pro hac vice* admission pending)
Kevin Bostel (*pro hac vice* admission pending)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

</div>

## Exhibit A

## Proposed Interim Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ X
                                                             :
In re                                                        :      Chapter 11
                                                             :
CHECKOUT HOLDING CORP., et al.,                              :      Case No. 18-[_____] (___)
                                                             :
                 Debtors.¹                                   :      Joint Administration Requested
                                                             :
------------------------------------------------------------ X
```

### INTERIM ORDER PURSUANT TO 11 U.S.C.
### §§ 105(a), 363(b), 363(c), 364(a), AND 503(b)(1) AND FED. R.
### BANKR. P. 6003 AND 6004 (I) AUTHORIZING DEBTORS TO
### (A) CONTINUE EXISTING CASH MANAGEMENT SYSTEM,
### (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED
### THERETO, AND (C) MAINTAIN BUSINESS FORMS AND EXISTING
### BANK ACCOUNTS; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b), 363(c), 364(a), and 503(b)(1) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing the Debtors to (a) continue the existing Cash Management System, (b) honor certain prepetition obligations related thereto, and (c) maintain existing Business Forms and Bank Accounts; and (ii) granting related relief; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

*Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Del Genio Declaration filed contemporaneously with the Motion, the record of the Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, to continue to manage their cash pursuant to the Cash Management System maintained by the Debtors before the Petition Date; to collect and disburse cash in accordance with the Cash Management System, including intercompany funding to Debtor affiliates (so long as such intercompany funding is consistent with the Debtors' obligations under any order of this Court authorizing the Debtors to enter into post-petition

financing and/or utilize cash collateral (a "**DIP Order**" and the debtor-in-possession financing facility authorized thereby, the "**DIP Facility**") and any documentation related thereto); and to make ordinary course changes to the Cash Management System without further order of the Court; *provided*, *however*, that such changes to the Cash Management System shall not be inconsistent with the Debtors' obligations under any DIP Order or financing documentation related thereto.

3.       The Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date.

4.       The Debtors are authorized, but not directed, to pay any Employee Credit Card Program Fees whether arising before or after the Petition Date, and continue using the Employee Credit Card Program in the ordinary course of business.

5.       The Debtors are further authorized, but not directed, to: (i) designate, maintain and continue to use any or all of their existing Bank Accounts listed on **Schedule 1** annexed hereto (which shall be promptly amended to identify any Bank Accounts inadvertently omitted therefrom, with any such amendments being served on the U.S. Trustee and any statutory committee appointed in these chapter 11 cases), in the names and with the account numbers existing immediately before the Petition Date, (ii) deposit funds in and withdraw funds from such accounts by all usual means, including, without limitation, checks, wire transfers, automated clearinghouse transfers, and other debits, (iii) pay any Bank Fees or other charges associated with the Bank Accounts whether arising before or after the Petition Date, and (iv) treat their Bank Accounts for all purposes as debtors in possession accounts.

6.     Except as otherwise provided in this Interim Order, all financial institutions in which the Debtors maintain the Bank Accounts as of the Petition Date are authorized to continue to maintain, service, and administer the Bank Accounts without interruption and in the usual and ordinary course, and to receive, process, honor, and pay all checks, drafts, wires, or other transfers by the holders or makers thereof, as the case may be; *provided*, that nothing contained herein shall (i) require a financial institution to honor any check, wire, or other transfer unless the account has good and collected funds at the time of the requested action or (ii) authorize any financial institution to honor any check, draft, wire, or other transfer issued or dated before the Petition Date, except as otherwise provided by order of this Court; *provided, further*, however, that any such financial institution is authorized to accept and honor all representations from the Debtors as to which check, ACH transfer, draft, wire, or other transfer drawn or issued or requested to be issued by the Debtors before the Petition Date should be honored pursuant to an order of this Court, and such financial institution shall not have any liability to any party for relying on the representation by the Debtors as provided for herein, nor shall any Bank honoring or not honoring any check or other item as a result of good faith error be liable to any party therefor.

7.     Nothing contained herein shall prevent the Debtors from opening any additional deposit accounts (including, without limitation, accounts to be maintained pursuant to the terms of the DIP Facility), or closing any Bank Accounts as they may deem necessary and appropriate in their sole discretion, and the Banks and other financial institutions are authorized to honor the Debtors' request to open or close, as the case may be, Bank Accounts or additional bank accounts; *provided, that* any new deposit account shall be with (i) a bank that is insured by the Federal Deposit Insurance Corporation, organized under the laws of the United States, and

4

designated as an Authorized Depository under the UST Operating Guidelines or (ii) any other bank, as the Debtors may determine, upon prior notice to the U.S. Trustee, the Ad Hoc Group of First Lien Lenders, the administrative agent under the DIP Facility and any statutory committee appointed in these chapter 11 cases; *provided*, *further*, *that* all accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Interim Order, be deemed a Bank Account as if it had been listed on Schedule 1 hereto; and *provided*, *further*, *that* nothing in this Interim Order shall authorize the Debtors to open or close Bank Accounts in a manner that is inconsistent with their obligations under any debtor-in-possession financing documents.

8.      The Debtors are authorized to use their existing Business Forms and are not required to (i) obtain new stock reflecting their status as debtors in possession, or (ii) print "debtor in possession," the Debtors' chapter 11 case numbers, or other information on any of their checks or wire transfers; *provided*, that if the Debtors re-order checks or generate new checks during the pendency of these chapter 11 cases, such checks shall include a legend referring to the Debtors as "Debtors In Possession."

9.      To the extent a Bank in the ordinary course of the Cash Management System incurs an overdraft or other event giving rise to an uncovered debit, regardless of whether arising pre- or postpetition, the Bank shall be authorized to cover the overdraft or debit from funds of the Debtors in its possession and available for that purpose.

10.     The Debtors are authorized to pay any CMCR Payables whether arising before or after the Petition Date.  The Debtors shall maintain accurate records of all CMCR Payables that they pay so that all such postpetition transfers shall be adequately and promptly documented in, and readily ascertainable from, the Debtors' bank records.

RLF1 20430307V.1

11.    The Debtors are authorized, but not directed, to pay prepetition amounts outstanding as of the Petition Date, if any, owed to the Banks and other third parties that directly or indirectly provide services to the Debtors in connection with the Cash Management System as Bank Fees and other service charges for the maintenance of the Cash Management System.

12.    The Debtors are hereby authorized to execute any additional documents and reasonably cooperate with the financial institutions as may be required to carry out the intent and purpose of this Order.

13.    Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**").

14.    The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

15.    Nothing herein shall be deemed to in any way limit, waive or release any of JPM's rights or interests under, or in connection with, the Cash Collateral Agreement or the Cash Collateral Account.  Subject to the terms of the DIP Order entered on [ , 2018] and any successor DIP Order thereto, JPM shall be authorized and entitled to, pursuant to the terms of the Cash Collateral Agreement (i) without notice or demand, and at any time or from time to time, charge, set-off and otherwise apply all or any part of the Obligations (as defined in the Cash Collateral Agreement) against the Cash Collateral Account or any part thereof and (ii) exercise all other rights or remedies available to it under the Cash Collateral Agreement.

Notwithstanding anything to the contrary herein, the Debtors are authorized and directed to pay any and all Bank Fees in connection with the Cash Collateral Account promptly when due.

16.    Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

17.    Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

18.    Nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

19.    Notwithstanding anything contained in the Motion or this Interim Order, the rights and obligations of the Debtors set forth herein shall be subject to the terms and conditions contained in any DIP Order, the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms of any DIP Order and any action taken or proposed to be taken by the Debtors hereunder, the terms of the DIP Order shall control.

20.    The requirements of Bankruptcy Rule 6003(b) have been satisfied.

RLF1 20430307V.1

21.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

22.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

23.     The Final Hearing on the Motion shall be held on **[_____], 2018 at [_____] (Eastern Standard Time)** and any objections or responses to the Motion shall be made in writing, filed with this Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq., Ronit J. Berkovich, Esq., and Kevin Bostel, Esq.) and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.); and (ii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Eastern Standard Time) on [_____], 2018**.

24.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that this Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

25.     The Debtors are authorized to take all action necessary to implement the relief granted in this Interim Order.

26. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

Dated: _____, 2018
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

**Bank Accounts**

|  | Entity | Bank Name | Account Number (XXXX) | Account Type |
|---|---|---|---|---|
| 1 | Catalina Marketing Corporation | SunTrust | 9895 | CMC Disbursement ZBAs |
| 2 | Catalina Marketing Corporation | SunTrust | 2748 | CMC Master Account |
| 3 | Catalina Marketing Corporation | SunTrust | 3400 | CMC Standalone Account |
| 4 | Catalina Marketing Procurement | SunTrust | 9178 | CMC Disbursement ZBAs |
| 5 | Catalina Marketing Corporation | SunTrust | 9448 | CMC Lockbox Account |
| 6 | Catalina Marketing Corporation | SunTrust | 9456 | CMC Disbursement ZBAs |
| 7 | Checkout Holding Corp | SunTrust | 3960 | Super Master Account |
| 8 | Checkout Holding Corp | JP Morgan | 8026 | Cash Collateral Account |
| 9 | Catalina Marketing Corporation | SunTrust | 2764 | CMC Disbursement ZBAs |
| 10 | PDM Group Holdings Corporation | SunTrust | 7035 | PDM Accounts |
| 11 | PDM Holdings Corporation | SunTrust | 7043 | PDM Accounts |
| 12 | PDM Intermediate Holdings B Corporation | SunTrust | 7068 | PDM Accounts |
| 13 | PDM Intermediate Holdings A Corporation | SunTrust | 7050 | PDM Accounts |

**<u>Exhibit B</u>**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ X
                                    :

In re                              :      **Chapter 11**
                                      :

**CHECKOUT HOLDING CORP.,** *et al.*,   :      **Case No. 18-[_____] (___)**
                                      :

               **Debtors.**[1]       :      **Joint Administration Requested**
                                      :

------------------------------------------------------------ X

## FINAL ORDER PURSUANT TO 11 U.S.C.
## §§ 105(a), 363(b), 363(c), 364(a), AND 503(b)(1) AND
## FED. R. BANKR. P. 6003 AND 6004 (I) AUTHORIZING DEBTORS
## TO (A) CONTINUE EXISTING CASH MANAGEMENT SYSTEM,
## (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED
## THERETO, AND (C) MAINTAIN BUSINESS FORMS AND EXISTING
## BANK ACCOUNTS; AND (II) GRANTING RELATED RELIEF

Upon the Motion (the "**Motion**")[2] of Checkout Holding Corp. and its affiliated

debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession

(collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b), 363(c), 364(a), and 503(b)(1)

of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing the

Debtors to (a) continue the existing Cash Management System, (b) honor certain prepetition

obligations related thereto, and (c) maintain existing Business Forms and Bank Accounts; and

(ii) granting related relief, all as more fully set forth in the Motion; and this Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware dated February 29, 2012; and consideration of

the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

notice of the Motion having been given as provided in the Motion, and such notice having been

adequate and appropriate under the circumstances; and it appearing that no other or further notice

need be provided; and this Court having reviewed the Motion; and this Court having held

hearings to consider the relief requested in the Motion on an interim (the "**Interim Hearing**")

and final basis (the "**Final Hearing**"); and this Court having entered an order granting the relief

requested in the Motion on an interim basis; and upon the Del Genio Declaration, filed

contemporaneously with the Motion, the record of the Interim Hearing, the Final Hearing, and all

of the proceedings had before this Court; and this Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all

parties in interest, and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.       The Motion is granted on a final basis as set forth herein.

2.       The Debtors are authorized, but not directed, pursuant to sections 105(a)

and 363(c) of the Bankruptcy Code, to continue to manage their cash pursuant to the Cash

Management System maintained by the Debtors before the Petition Date; to collect and disburse

cash in accordance with the Cash Management System, including intercompany funding to

Debtor affiliates (so long as such intercompany funding is consistent with the Debtors'

obligations under any order of this Court authorizing the Debtors to enter into post-petition

RLF1 20430307V.1

financing and/or utilize cash collateral (a "**DIP Order**" and the debtor-in-possession financing facility authorized thereby, the "**DIP Facility**") and any documentation related thereto); and to make ordinary-course changes to the Cash Management System without further order of the Court; *provided*, *however*, that such changes to the Cash Management System shall not be inconsistent with the Debtors' obligations under any DIP Order or financing documentation related thereto.

3.    The Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors before the Petition Date.

4.    The Debtors are authorized, but not directed, to pay any Employee Credit Card Program Fees whether arising before or after the Petition Date, and continue using the Employee Credit Card Program in the ordinary course of business.

5.    The Debtors are further authorized, but not directed, to: (i) designate, maintain and continue to use any or all of their existing Bank Accounts listed on **Schedule 1** annexed hereto (which shall be promptly amended to identify any Bank Accounts inadvertently omitted therefrom, with any such amendments being served on the U.S. Trustee and any statutory committee appointed in these chapter 11 cases), in the names and with the account numbers existing immediately before the Petition Date, (ii) deposit funds in and withdraw funds from such accounts by all usual means, including, without limitation, checks, wire transfers, automated clearinghouse transfers, and other debits, (iii) pay any Bank Fees or other charges associated with the Bank Accounts whether arising before or after the Petition Date, and (iv) treat their Bank Accounts for all purposes as debtors in possession accounts.

6.      Except as otherwise provided in this Final Order, all financial institutions in which the Debtors maintain the Bank Accounts as of the Petition Date are authorized to continue to maintain, service, and administer the Bank Accounts without interruption and in the usual and ordinary course, and to receive, process, honor, and pay all checks, drafts, wires, or other transfers by the holders or makers thereof, as the case may be; *provided*, that nothing contained herein shall (i) require a financial institution to honor any check, wire, or other transfer unless the account has good and collected funds at the time of the requested action or (ii) authorize any financial institution to honor any check, draft, wire, or other transfer issued or dated before the Petition Date, except as otherwise provided by order of this Court; *provided, further*, however, that any such financial institution is authorized to accept and honor all representations from the Debtors as to which check, ACH transfer, draft, wire, or other transfer drawn or issued or requested to be issued by the Debtors before the Petition Date should be honored pursuant to an order of this Court, and such financial institution shall not have any liability to any party for relying on the representation by the Debtors as provided for herein, nor shall any Bank honoring or not honoring any check or other item as a result of good faith error be liable to any party therefor.

7.      Nothing contained herein shall prevent the Debtors from opening any additional deposit accounts (including, without limitation, accounts to be maintained pursuant to the terms of the DIP Facility), or closing any Bank Accounts as they may deem necessary and appropriate in their sole discretion, and the Banks and other financial institutions are authorized to honor the Debtors' request to open or close, as the case may be, Bank Accounts or additional bank accounts; *provided*, that any new deposit account shall be with (i) a bank that is insured by the Federal Deposit Insurance Corporation, organized under the laws of the United States, and

4

designated as an Authorized Depository under the UST Operating Guidelines or (ii) any other bank, as the Debtors may determine, upon prior notice to the U.S. Trustee, the Ad Hoc Group of First Lien Lenders, the administrative agent under the DIP Facility and any statutory committee appointed in these chapter 11 cases; *provided*, *further*, that all accounts opened by any of the Debtors on or after the Petition Date at any bank shall, for purposes of this Final Order, be deemed a Bank Account as if it had been listed on Schedule 1 hereto; and *provided*, *further*, *that* nothing in this Final Order shall authorize the Debtors to open or close Bank Accounts in a manner that is inconsistent with their obligations under any debtor-in-possession financing documents.

8.      The Debtors are authorized to use their existing Business Forms and are not required to (i) obtain new stock reflecting their status as debtors in possession, or (ii) print "debtor in possession," the Debtors' chapter 11 case numbers, or other information on any of their checks or wire transfers; *provided*, *that* if the Debtors re-order checks or generate new checks during the pendency of these chapter 11 cases, such checks shall include a legend referring to the Debtors as "Debtors In Possession."

9.      To the extent a Bank in the ordinary course of the Cash Management System incurs an overdraft or other event giving rise to an uncovered debit, regardless of whether arising pre- or postpetition, the Bank shall be authorized to cover the overdraft or debit from funds of the Debtors in its possession and available for that purpose.

10.      The Debtors are authorized to pay any CMCR Payables whether arising before or after the Petition Date.  The Debtors shall maintain accurate records of all CMCR Payables that they pay so that all such postpetition transfers shall be adequately and promptly documented in, and readily ascertainable from, the Debtors' bank records.

11.     The Debtors are authorized, but not directed, to pay prepetition amounts outstanding as of the Petition Date, if any, owed to the Banks and other third parties that directly or indirectly provide services to the Debtors in connection with the Cash Management System as Bank Fees and other service charges for the maintenance of the Cash Management System.

12.     The Debtors are hereby authorized to execute any additional documents and reasonably cooperate with the financial institutions as may be required to carry out the intent and purpose of this Order.

13.     The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

14.     Nothing herein shall be deemed to in any way limit, waive or release any of JPM's rights or interests under, or in connection with, the Cash Collateral Agreement or the Cash Collateral Account.  Subject to the terms of the DIP Order entered on [ , 2018] and any successor DIP Order thereto, JPM shall be authorized and entitled to, pursuant to the terms of the Cash Collateral Agreement (i) without notice or demand, and at any time or from time to time, charge, set-off and otherwise apply all or any part of the Obligations (as defined in the Cash Collateral Agreement) against the Cash Collateral Account or any part thereof and (ii) exercise all other rights or remedies available to it under the Cash Collateral Agreement. Notwithstanding anything to the contrary herein, the Debtors are authorized and directed to pay any and all Bank Fees in connection with the Cash Collateral Account promptly when due.

15.     Nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as

(i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

16.    Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

17.    Nothing contained herein shall prevent the Banks from modifying or terminating any Bank Accounts or related services in accordance with the agreements governing such accounts or services.

18.    Notwithstanding anything contained in the Motion, the Interim Order, or this Final Order, the rights and obligations of the Debtors set forth herein shall be subject to the terms and conditions contained in any DIP Order, the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms of any DIP Order and any action taken or proposed to be taken by the Debtors hereunder, the terms of the DIP Order shall control.

19.    Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

20.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

21.    The Debtors are authorized to take all action necessary to carry out this Final Order.

22.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

Dated: _____, 2018
              Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Schedule 1**

**Bank Accounts**

|   | Entity | Bank Name | Account Number (XXXX) | Account Type |
|---|--------|-----------|----------------------|--------------|
| 1 | Catalina Marketing Corporation | SunTrust | 9895 | CMC Disbursement ZBAs |
| 2 | Catalina Marketing Corporation | SunTrust | 2748 | CMC Master Account |
| 3 | Catalina Marketing Corporation | SunTrust | 3400 | CMC Standalone Account |
| 4 | Catalina Marketing Procurement | SunTrust | 9178 | CMC Disbursement ZBAs |
| 5 | Catalina Marketing Corporation | SunTrust | 9448 | CMC Lockbox Account |
| 6 | Catalina Marketing Corporation | SunTrust | 9456 | CMC Disbursement ZBAs |
| 7 | Checkout Holding Corp | SunTrust | 3960 | Super Master Account |
| 8 | Checkout Holding Corp | JP Morgan | 8026 | Cash Collateral Account |
| 9 | Catalina Marketing Corporation | SunTrust | 2764 | CMC Disbursement ZBAs |
| 10 | PDM Group Holdings Corporation | SunTrust | 7035 | PDM Accounts |
| 11 | PDM Holdings Corporation | SunTrust | 7043 | PDM Accounts |
| 12 | PDM Intermediate Holdings B Corporation | SunTrust | 7068 | PDM Accounts |
| 13 | PDM Intermediate Holdings A Corporation | SunTrust | 7050 | PDM Accounts |

**<u>Exhibit C</u>**

**Flow of Funds Chart**

SunTrust #3960
Super Master Account
Lockbox
Deposits / Revenue
Non-Lockbox
Deposits / Revenue
Daily
Excess
Cash
Sweep
Prepetition Debt Service /
Shortfalls from CMC
Master Account
SunTrust #9448
CMC Lockbox Account
Daily
Sweep
SunTrust #2748
CMC Master Account
Wire Payments /
Shortfalls from ZBA
Disbursement Accounts
Daily
Sweep
SunTrust #9178
CMC Disbursement ZBA
SunTrust #9456
CMC Disbursement ZBA
SunTrust #9895
CMC Disbursement ZBA
SunTrust #2764
CMC Disbursement ZBA
Excess
Cash
Excess
Cash
Excess
Cash
Excess
Cash
Printers / Supplies
& Certain Taxes
Payroll & Benefits
Vendors
Petty Cash
Payments
2014 Acquisition
Accounts
Letter of Credit
Account
Other Account
SunTrust #7035
PDM Account
JPM #8026
JPM Account
SunTrust #3400
CMC Standalone
Account
SunTrust #7043
PDM Account
SunTrust #7050
PDM Account
SunTrust #7068
PDM Account
Debtor Bank
Account
External
Disbursement
Revenue /
Deposits



