## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ X
                                    :

In re                              :        **Chapter 11**
                                      :

**CHECKOUT HOLDING CORP.**, *et al.*,    :       **Case No. 18-[_____] (___)**
                                      :

             Debtors.[1]           :       **Joint Administration Requested**
                                        :
------------------------------------------------------------ X

### MOTION OF DEBTORS PURSUANT TO
### 11 U.S.C. §§ 105(a), 362(d), 363(b), AND 503(b) FOR
### INTERIM AND FINAL AUTHORITY TO CONTINUE
### THEIR INSURANCE POLICIES AND PROGRAMS, PAY ALL
### OBLIGATIONS WITH RESPECT THERETO, AND RELATED RELIEF

Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.       On the date hereof (the "**Petition Date**"), the Debtors each commenced with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

2.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.      Before the Petition Date, the Debtors, with the support of their secured lenders, began the solicitation of votes on their *Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* (the "**Prepackaged Plan**"), through their *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtors expect that the Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.   Consistent with their obligations under that certain *Restructuring Support Agreement*, dated as of December 11, 2018 (as amended from time to time and including all exhibits thereto, the "**RSA**"), the Debtors are seeking to emerge from chapter 11 on an expedited timeframe.

4.      Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Del Genio* (the "**Del Genio Declaration**"), which has been filed with this Court contemporaneously with the Motion.

## Jurisdiction

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013–1(f), the Debtors consent to the entry of

RLF1 20430302V.1

a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

6.      By this Motion, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code, the Debtors request (i) authority to continue all Insurance Policies and Programs (as defined below); (ii) authority to pay all Insurance Obligations (as defined below), whether arising prepetition or postpetition; (iii) modification of the automatic stay to permit the Debtors' employees to proceed with any claims they may have under the Workers' Compensation Program (as defined below); and (iv) related relief.  The Debtors further request that the Court authorize financial institutions, at the Debtors' direction, to receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests related to such obligations.

7.      No party in interest will be prejudiced by the relief requested by this Motion because the Debtors Insurance Carriers, as defined below, are unimpaired under the Prepackaged Plan and will be paid in full.  Thus, the relief requested herein seeks to alter only the timing, not the amount or priority, of such payments.

8.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**") and, pending a final hearing on the relief requested herein, on a final basis as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

## The Debtors' Insurance Programs

9.      In connection with the operation of the Debtors' business, the Debtors participate in various insurance programs governed by several insurance policies (collectively, the "**Insurance Policies and Programs**," and together with all premiums and other obligations related thereto, including broker or consultant fees, assessments, taxes, or fees, collectively, the "**Insurance Obligations**") obtained through several insurance carriers (each, an "**Insurance Carrier**").[2]  The Insurance Policies and Programs include those listed on **Exhibit C** annexed hereto and described below:

> (a).   general coverage of workers' compensation and employer liability (the "**Workers' Compensation Program**");
>
> (b).   general coverage for the Debtors' general liabilities, losses, costs, and expenses (the "**General Corporate Insurance Program**");
>
> (c).   coverage for damage to commercial property and equipment arising from natural disasters, transportation, and other risks (the "**Property Program**");
>
> (d).   coverage for damage relating to data security and privacy (the "**Data Program**");
>
> (e).   general coverage of director and officer liability and indemnification (the "**D&O Program**");
>
> (f).   general coverage for liabilities relating to the Debtors' Employees, including acts of the Debtors' in-house counsel (the "**Employee Liability Program**"); and
>
> (g).   coverage for certain discrete risks associated with the Debtors' business (the "**Discrete Liability Coverage**").

---

[2] In addition to the Insurance Policies and Programs listed on **Exhibit C**, the Debtors maintain numerous insurance programs with respect to employee health, dental, disability, and life insurance benefits.  These insurance policies are addressed in a separate motion filed in these cases pertaining to the employee wages and benefits programs.

## The Workers' Compensation Program

10.      Under the laws of the states in which the Debtors operate, the Debtors must maintain workers' compensation insurance for employee claims arising from accident or disease related to employment by the Debtors (the "**Workers' Compensation Claims**").  Debtor PDM Group Holdings Corporation ("**PDM**") maintains the Workers' Compensation Program, which is provided by two carriers:  the Continental Insurance Company, which provides the policy covering Workers' Compensation Claims arising in California, and the American Casualty Company of Reading Pennsylvania, which provides the policy covering Workers' Compensation Claims in all other states (collectively, the "**Workers' Compensation Carriers**").  The estimated annual premium for the Workers' Compensation Program is determined according to the Workers' Compensation Carriers' manual of rules, classifications, rates, and rating plans.

11.      Pursuant to the Workers' Compensation Program, the Workers' Compensation Carriers are entitled to conduct an audit during the pendency of the coverage period and for three (3) years thereafter to determine the final premium.  For the current coverage period ending on January 1, 2019, the Debtors' annual premiums for the Workers' Compensation Program totaled approximately $194,000, which have been paid in full for the current coverage period.  Accordingly, as of the Petition Date, the Debtors do not owe any amounts on account of premiums for the Workers' Compensation Program.  However, as stated, the final premium for the coverage period ending January 1, 2019 is subject to audit by the Workers' Compensation Carriers, and accordingly the final premiums may be adjusted.[3]

---

[3] As of the Petition Date, the Workers' Compensation Carriers have not conducted an audit for the coverage period ending January 1, 2019.

RLF1 20430302V.1

12.     Under the Workers' Compensation Program, the Workers' Compensation Carriers are liable for benefits that the Debtors would be legally obligated to pay under the appropriate state's workers' compensation law (*e.g.*, benefits resulting from bodily injury by accident or disease to an employee in the course of his or her employment by the Debtors).[4]  If the Workers' Compensation Carriers disagree with the validity or amount of a claim, they may contest such claim at their own expense.   As of the Petition Date, there are approximately $60,000 in Workers' Compensation Claims that remain unresolved.[5]

### General Corporate Insurance Program

13.     The General Corporate Insurance Program covers liabilities regarding: (i) commercial general liability, including personal injury, advertising injury, premises damage, and medical expenses and (ii) automobile liability and collisions, including hired and non-owned automobiles.  The General Corporate Insurance Program also includes excess liability coverage for losses beyond the primary policy.   The Insurance Carriers under the General Corporate Insurance Program are listed in further detail on **Exhibit C**.

14.     The coverage period for the General Corporate Insurance Program is March 25, 2018 through March 25, 2019.  The annualized premiums for the domestic portion of these programs is $62,366.  The premiums are paid as follows:  one initial payment of 25% of the respective annualized premiums (totaling $15,590) and nine equal subsequent payments (totaling $5,197).  Prior to the Petition Date, the Debtors, in the ordinary course of business,

---

[4] The Workers' Compensation Program does not reimburse claims in certain circumstances where it is determined that the Debtors: (i) engaged in serious and willful misconduct; (ii) knowingly employed an employee in violation of law; (iii) failed to comply with health or safety laws or regulations; or (iv) discharged or otherwise discriminated against an employee in violation of workers' compensation laws.   The Debtors are now aware of any such circumstances.

[5] It is possible that additional events giving rise to Workers' Compensation Claims—for example, injury or disease of an employee—could have occurred prepetition without the Debtors' knowledge.

made nine premium payments totaling $57,168.  One premium payment of $5,197 remains due on January 1, 2019.  The annual premium for the foreign component of this program is $9,139, which amount has been fully paid for the applicable coverage period.  Accordingly, to the best of the Debtors' knowledge, there are no prepetition amounts outstanding on account of the General Corporate Insurance Program.

### The Data Program

15.    The Data Program covers liabilities regarding:  (i) technological and professional liability, (ii) media liability, including liabilities assigned by law or assumed under contract, (iii) network security liability, (iv) privacy injury liability, and (v) damages and expense reimbursement related to privacy regulation proceedings regarding: (a) privacy events, (b) extortion demands, and (c) privacy regulation investigations.  The Debtors are required to carry these policies by the terms of certain contracts they have entered into with their customers, retail partners, and other counterparties.

16.    The insurance carrier for the data program is Continental Casualty Company.  The coverage period under the Data Program is March 25, 2018 through March 25, 2019.  The annual premium for the data program of $247,192 has been paid in full for the current coverage period.  Accordingly, to the best of the Debtors' knowledge, there are no prepetition amounts outstanding on account of the Data Program.

### The Property Program

17.    The Property Program covers liabilities and damages to the Debtors' commercial property and equipment arising from natural disasters, transportation, and other risks.  The Insurance Carriers for the Property Program are Homesite Insurance Company, the Continental Insurance Company, and Continental Casualty Company.

18.     The coverage period for Homesite Insurance Company policy is January 24, 2018 through January 24, 2019, and the annual premium for this program of $1,892 has been paid in full for the current coverage period.  The coverage period for the Continental Insurance Company policy is July 28, 2018 through July 28, 2020, and the annual premium for this program of $25,895 has been paid in full for the current coverage period.  The coverage period for the Continental Casualty Company policy is March 25, 2018 through March 25, 2019, and the annualized premium for the program of $200,755 is paid as follows:  one initial payment of $50,188.75 and nine subsequent payments of $16,730.  Prior to the Petition Date, the Debtors, in the ordinary course of business, made premium payments totaling $184,024.  One premium payment of $16,730 remains due on January 1, 2019.  To the best of the Debtors' knowledge, there are no prepetition amounts outstanding on account of the Property Program.

**The D&O Program**

19.     The D&O Program covers liabilities and indemnification for executives and losses to directors and officers after exhaustion of applicable underlying limits.  The General Corporate Insurance Program also includes excess liability coverage for losses beyond the primary policy.  The Insurance Carriers under the D&O Program are listed in further detail on **Exhibit C**.

20.     The coverage period for the D&O Program is September 30, 2018 through September 30, 2019,[6] and the annual premium for this program of $500,040 has been paid in full for the current coverage period.  To the best of the Debtors' knowledge, there are no prepetition amounts outstanding on account of the D&O Program.

---

[6] With the exception of the Side A Excess D&O policy which is October 3, 2018 through September 30, 2019.

RLF1 20430302V.1

21.     In addition to the above program, the Debtors also maintain a tax insurance policy for the benefit of their directors and officers to cover personal liability relating to sales and use tax liability.  The current policy was entered into on October 16, 2018 and covers current and former directors and officers through October 16, 2025.  This program's premium of $2,077,000 has been paid in full.

### The Employee Liability Program

22.     The Employee Liability Program covers liabilities arising from (i) services performed by the Debtors' in-house counsel and (ii) wrongful acts in the Debtors' employment practices.  The insurance carriers for the Employee Liability Program are Illinois National Insurance Company and Houston Casualty Company.

23.     The coverage period for the Employee Liability Plan is September 30, 2018 through September 30, 2019, and the annual premium for this program has been paid in full for the current coverage period.[7]  To the best of the Debtors' knowledge, there are no prepetition amounts outstanding on account of the Employee Liability Program.

### Discrete Risk Coverage

24.     The Debtors maintain Discrete Risk Coverage, which provides coverage for environmental contamination and exposure related to a certain property, crime protection, and corporate crises.  The Insurance Carriers for Discrete Risk Coverage are the Commerce & Industry Insurance Company, Houston Casualty Company, and the U.S. Specialty Insurance Company.

25.     The coverage period for the Commerce & Industry Insurance Company policy is July 31, 2018 through July 31, 2019, and the annual premium of $666, has been paid in

---

[7] The premium for the Illinois National Insurance Company Policy is $12,418.  The Houston Casualty Company is a joint Employee Liability-D&O Program; its premium is included in the D&O Program premium.

RLF1 20430302V.1

full for the current coverage period.  The coverage period for the Houston Casualty Company policy is September 30, 2018 through September 30, 2019, and the annual premium of $10,458 has been paid in full for the current coverage period.  The coverage period for the U.S. Specialty Insurance Company policy is September 30, 2016 through September 30, 2019, and the premium of $5,404 has been paid in full for the current coverage period.  Accordingly, to the best of the Debtors' knowledge, there are no prepetition amounts outstanding on account of the Discrete Risk Coverage.

### Combined Coverage with Certain Affiliates

26.    As is common, the Debtors obtain insurance coverage for their entire enterprise, including certain non-Debtor foreign affiliates (the "**Foreign Affiliates**").  By obtaining the insurance coverage for themselves and the Foreign Affiliates on a combined basis, the Debtors have been able to realize cost savings as well as efficiencies in the management and procurement of the Insurance Programs across their businesses.  The Debtors are typically reimbursed for the costs of insurance premiums that benefit the Foreign Affiliates through royalty agreements among the Debtors and the Foreign Affiliates.[8]

### Insurance Broker Services

27.    Marsh USA Inc. ("**Marsh**") serves as the Debtors' insurance broker for the Insurance Policies and Programs.  Marsh is compensated for its services through either commissions from the Insurance Carriers or payment by the Debtors of a set percentage of the policy premium reduced by any related commissions Marsh receives from the Insurance Carriers.  Marsh must disclose any commissions collected to the Debtors.  To the best of the Debtors' knowledge, they do not owe any prepetition fees to Marsh.

---

[8] These intercompany transactions are addressed in more detail in a separate motion filed in these cases pertaining to the Debtors' cash management system.

RLF1 20430302V.1

28.     To the extent any of the Insurance Policies and Programs discussed in this Motion have an upcoming expiration date, the Debtors are working with Marsh to identify the most cost efficient means of ensuring uninterrupted coverage.

### Basis for Relief Requested

**A.      Continuation of the Insurance Policies and Program and Payment of All Insurance Obligations Is Warranted**

29.     As set forth above, the Debtors seek authority to continue to maintain their Insurance Policies and Programs and to honor the Insurance Obligations in the ordinary course of business and to pay any outstanding prepetition Insurance Obligations for these programs the Debtors subsequently may discover.  The Court may grant the relief requested herein pursuant to sections 105(a), 363(b) and 503(b) of the Bankruptcy Code.

30.     Section 503(b) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . , including . . . the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).    It is, therefore, within the Court's power to authorize the Debtors to use estate funds to pay any Insurance Obligations arising or relating to the period after the Petition Date.

31.     The Court may authorize the Debtors to pay Insurance Obligations arising from or relating to the period before the Petition Date pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims if a sound business purpose exists for doing so.  *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring that debtor show a "sound business purpose" to justify its actions under section 363 of

Bankruptcy Code); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).    Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."    *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

32.    In addition, this Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.    Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest.    *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see Ionosphere Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25

(D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims).

33.     In a long line of well-established cases, courts have consistently permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

34.     This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See, e.g.*, *Just for Feet*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides statutory basis for payment of prepetition claims under the doctrine of necessity particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of

necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

35.     In these chapter 11 cases, the Debtors' use of estate funds to pay Insurance Obligations is permitted under sections 105(a), 363(b), and 503(b) of the Bankruptcy Code because such obligations are necessary costs of preserving the Debtors' estates.  The Insurance Policies and Programs are essential to the Debtors' operations, as the Debtors would be exposed to significant liability if the Insurance Policies and Programs were allowed to lapse or terminate. Such exposure could have a materially adverse impact on the Debtors' ability to reorganize successfully.

36.     The Insurance Policies and Programs are also vital to the Debtors' continued operations.  Applicable state law mandates that certain Debtors maintain workers' compensation coverage for their employees.  The Debtors' failure to pay their obligations under the Workers' Compensation Program could jeopardize their coverage and expose the Debtors to significant liability in fines by state workers' compensation boards.  In addition, the risk that eligible workers' compensation claimants would not receive timely payments for prepetition employment-related injuries could negatively impact not only the financial well-being of those claimants, but also the morale of the Debtors' active employees.  This could result in employee departures, causing a significant disruption in the Debtors' business with a materially adverse impact on the Debtors' operations, the value of their estates, and the interests of all parties in these chapter 11 cases.

37.     Additionally, applicable contracts between the Debtors and certain counterparties require the Debtors to maintain certain insurance coverage.  The Debtors' failure to pay such obligations would not only expose the Debtors to significant risk, but could

jeopardize relationships with contract counterparties, causing such contract counterparties to terminate contracts that are vital to the Debtors' ongoing operations. Accordingly, it is necessary for the Debtors to pay all obligations on account of their Insurance Policies and Programs.

**B.      The Automatic Stay Should Be Modified for Workers' Compensation Claims**

38.      Section 362(a)(1) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1). Section 362(d)(1), however, permits a debtor or other party in interest to request a modification or termination of the automatic stay for "cause." *Id.*

39.      To the extent that the Debtors' employees hold valid Workers' Compensation Claims, the Debtors seek authority, under section 362(d) of the Bankruptcy Code to permit those employees to proceed with their Workers' Compensation Claims to the extent covered by the Workers' Compensation Program, each in the appropriate judicial or administrative forum. There is cause to modify the automatic stay because staying the Workers' Compensation Claims could cause employee-departure or otherwise harm employee morale, which could severely disrupt the Debtors' business and prevent a successful reorganization. Accordingly, the Court should (i) modify the automatic stay as it relates to valid Workers' Compensation Claims to allow claims, to the extent covered by the Workers' Compensation Program, to proceed to resolution and (ii) waive the corresponding notice requirements under Bankruptcy Rule 4001(d). The Court should also grant the Debtors authority, if required by law, to pay all or part of a claim related thereto directly to an employee, any of his or her medical

providers, or any of his or her heirs or legal representatives, as set forth in the applicable law or policy.

## Reservation of Rights

40.    Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## Applicable Banks Should Be Authorized, at the Debtors' Direction, to Receive, Process, Honor, and Pay Checks Issued and Transfers Requested to Pay the Insurance Obligations

41.    The Debtors further request that the Court authorize applicable financial institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by or on behalf of the Debtors relating to the prepetition Employee obligations and Workday obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payment.  The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to payment authorized by this Court or as a matter of law.  Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.  Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry and

without liability for following the Debtors' instructions.  The Debtors also seek authority to issue

new postpetition checks or effect new postpetition electronic funds transfers in replacement of

any checks or funds transfer requests on account of prepetition Employee obligations and

Workday obligations dishonored or rejected as a result of the commencement of the Debtors'

chapter 11 cases.

### The Debtors Satisfy Bankruptcy Rule 6003(b)

42.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to

avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a

motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate,

including a motion to pay all or part of a claim that arose before the filing of the petition" before

twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b).  As described herein,

the Debtors are legally and contractually required to maintain many of their Insurance Policies

and Programs.  Additionally, as stated above, a lapse in coverage of any of the Insurance Policies

and Programs could subject the Debtors to substantial liability and possible cessation of

operations to the detriment of the Debtors' estate and all parties in interest.  Accordingly, the

Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable

harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### Bankruptcy Rules 6004(a) and (h)

43.    The Debtors believe that, under the circumstances of these chapter 11

cases, notice of the Motion, as set forth below, is adequate under Bankruptcy Rule 6004(a).

Notwithstanding any applicability of the fourteen (14) day stay of an order authorizing the use,

sale, or lease of property under Bankruptcy Rule 6004(h), the Debtors respectfully request that

the Motion be approved and the relief requested be immediately effective and enforceable.

### Notice

44.     Notice of this Motion shall be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.), as counsel to the DIP lenders and the ad hoc group of lenders under the First Lien Credit Agreement; (v) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq. and Robert A. Britton, Esq.) and Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.), as counsel to an ad hoc group of certain holders of term loans under the Second Lien Term Loan, dated as of April 9, 2014; (vi) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M. Resnick, Esq.) and Landis Rath & Cobb LLP, 919 Market Street, Wilmington, DE 19801 (Attn: Adam Landis, Esq. and Kerri Mumford, Esq.), as counsel to JPMorgan Chase Bank, N.A., as administrative agent under the First Lien Credit Agreement; (vii) Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007 (Attn: Andrew N. Goldman, Esq.), as counsel to Wilmington Savings Fund Society, FSB, as administrative agent under the Second Lien Credit Agreement; (viii) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.), as counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation; (ix) the Internal Revenue Service; (x) the United States Attorney's Office for the District of Delaware; (xi) the Banks; and (xii) any other party entitled to notice pursuant to Local

Rule 9013-1(m) (collectively, the "**Notice Parties**").  As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of the Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

45.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and, following the Final Hearing (if one is required), the Proposed Final Order, in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as this Court may deem just and appropriate.

Dated: December 12, 2018
       Wilmington, Delaware

/s/ Jason M. Madron
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Gary T. Holtzer (*pro hac vice* admission pending)
Ronit J. Berkovich (*pro hac vice* admission pending)
Jessica Liou (*pro hac vice* admission pending)
Kevin Bostel (*pro hac vice* admission pending)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors
and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- X
                                :
In re                           :         **Chapter 11**
                                  :
**CHECKOUT HOLDING CORP.**, *et al.*,     :         **Case No. 18-[_____] (___)**
                                  :
           Debtors.[1]             :         **Joint Administration Requested**
                                  :
----------------------------------------------------------- X

### INTERIM ORDER PURSUANT TO
### 11 U.S.C. §§ 105(a), 362(d), 363(b), AND 503(b) AUTHORIZING DEBTORS TO CONTINUE THEIR INSURANCE POLICIES AND PROGRAMS, PAY ALL OBLIGATIONS WITH RESPECT THERETO, AND GRANTING RELATED RELIEF

Upon the motion (the "**Motion**") [2] of Checkout Holding Corp and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the title 11 of the United States Code ( the "**Bankruptcy Code**") and rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for (i) authority to continue all Insurance Policies and Programs; (ii) authority to pay all Insurance Obligations, whether arising prepetition or postpetition; (iii) modification of the automatic stay to permit the Debtors' employees to proceed with any claims they may have under the Workers' Compensation Program; and (iv) related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Del Genio Declaration filed contemporaneously with the Motion, the record of the Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.    The Motion is granted on an interim basis as set forth herein.

2.    The Debtors are authorized, but not directed, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004, to maintain and continue all Insurance Policies and Programs, including all Insurance Policies and Programs listed on **Exhibit C** to the Motion, and to perform all of their obligations with respect thereto; provided that the Debtors are authorized, but not directed, to pay only amounts due and payable as of the Petition Date and amounts that are or become due and payable between

the Petition Date and the date that a final order on the Motion is entered in an aggregate amount
not to exceed $21,927, unless otherwise ordered by this Court.

3.      Subject to paragraph 8, the Debtors are authorized, but not directed, to
revise, extend, supplement or otherwise modify their insurance coverage as needed, including,
without limitation, through the purchase or renewal of new or existing Insurance Policies and
Programs.

4.      The automatic stay under section 362(a) of the Bankruptcy Code is
modified solely to permit the Debtors' employees to proceed with any Workers' Compensation
Claims in the appropriate judicial or administrative forum to the extent such claims are covered
by Workers' Compensation Program.

5.      Nothing in the Motion or this Interim Order shall be deemed to authorize
the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to
consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final
Hearing**").

6.      The Banks are authorized, to receive, process, honor, and pay any and all
checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the
Debtors relating to the obligations, to the extent that sufficient funds are on deposit and standing
in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are
authorized to accept and rely on all representations made by the Debtors with respect to which
checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in
accordance with this or any other order of this Court, whether such checks, drafts, wires, or
transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire
otherwise and without liability for following the Debtors' instructions.

7.      The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

8.      Notwithstanding anything contained in the Motion or this Interim Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "**DIP Order**"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms of any DIP Order and any action taken or proposed to be taken by the Debtors hereunder, the terms of the DIP Order shall control.

9.      Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

10.     Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

11.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

12.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

13.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

14.     The hearing to grant the relief requested in the Motion on a final basis shall be held on [_____], 2018 at [_____] (**Eastern Standard Time**) and any objections or responses to the Motion shall be made in writing, filed with this Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq., Ronit J. Berkovich, Esq., and Kevin Bostel, Esq.) and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.); and (ii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Eastern Standard Time) on [_____], 2018**.

15.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that this Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

16.     The Debtors are authorized to take all action necessary to implement the relief granted in this Interim Order.

17.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

Dated: _____, 2018
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 20430302V.1

**Exhibit B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ X
                                       :
In re                                  :        Chapter 11
                                       :
CHECKOUT HOLDING CORP., et al.,        :        Case No. 18-[_____] (___)
                                       :
                    Debtors.[1]        :        Joint Administration Requested
                                       :
------------------------------------------------------------ X
```

### FINAL ORDER PURSUANT TO
### 11 U.S.C. §§ 105(a), 362(d), 363(b), AND 503(b) AUTHORIZING DEBTORS TO CONTINUE THEIR INSURANCE POLICIES AND PROGRAMS, PAY ALL OBLIGATIONS WITH RESPECT THERETO, AND GRANTING RELATED RELIEF

Upon the Motion (the "**Motion**")[2] of Checkout Holding Corp and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the title 11 of the United States Code ( the "**Bankruptcy Code**") and rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for (i) authority to continue all Insurance Policies and Programs; (ii) authority to pay all Insurance Obligations, whether arising prepetition or postpetition; (iii) modification of the automatic stay to permit the Debtors' employees to proceed with any claims they may have under the Workers' Compensation Program; and (iv) related relief, all as more fully set forth in the Motion; and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

*Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held hearings to consider the relief requested in the Motion on an interim (the "**Interim Hearing**") and final basis (the "**Final Hearing**"); and this Court having entered an order granting the relief requested in the Motion on an interim basis; and upon the Del Genio Declaration, filed contemporaneously with the Motion, the record of the Interim Hearing, the Final Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their sole discretion, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004, to maintain and continue all Insurance Policies and Programs, including all Insurance Policies and Programs listed on **Exhibit C** to the Motion, and to perform all of their obligations with respect thereto.

3.          Subject to paragraph 8 below, the Debtors are authorized, but not directed, to revise, extend, supplement or otherwise modify their insurance coverage as needed, including, without limitation, through the purchase or renewal of new or existing Insurance Policies and Programs.

4.          The Debtors are authorized, but not directed, to pay, in their discretion, all Insurance Obligations, regardless of whether accruing or relating to the period before or after the Petition Date.

5.          The automatic stay under section 362(a) of the Bankruptcy Code is modified solely to permit the Debtors' employees to proceed with any Workers' Compensation Claims in the appropriate judicial or administrative forum to the extent such claims are covered by Workers' Compensation Program.

6.          The Banks are authorized, to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise and without liability for following the Debtors' instructions.

7.          The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds

transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

8.     Notwithstanding anything contained in the Motion, the Interim Order, or this Final Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "**DIP Order**"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.   To the extent there is any inconsistency between the terms of any DIP Order and any action taken or proposed to be taken by the Debtors hereunder, the terms of the DIP Order shall control.

9.     Nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

10.     Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

11.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

12.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

4

13.    The Debtors are authorized to take all action necessary to carry out this

Final Order.

14.    This Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation, interpretation and/or enforcement of this Final

Order.

Dated: _____, 2018
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**List of Insurance Policies**

| Type of Coverage | Insurer(s) | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| Workers' Compensation | • Continental Insurance Company<br>• American Casualty Co. of Reading, PA | • 5082913081<br>• 5082913064 | • 1/1/2018-1/1/2019<br>• 1/1/2018-1/1/2019 | $194,092.00 | NIL |
| General Corporate – Commercial General Liability | National Fire Insurance of Hartford | 4021045087 | 3/25/2018-3/25/2019 | $28,786. 00 | Deductible: $1,000.00 |
| General Corporate - Automobile Liability | Continental Insurance Company | 4021045073 | 3/25/2018-3/25/2019 | $6,427.00 | Hired Car Physical Damage Deductibles:<br>• $100.00 Comprehensive<br>• $1,000.00 Collision |
| General Corporate – Foreign Package | Continental Insurance Company | WP-41-383-4931 | 3/25/2018-3/25/2019 | $9,139.00 | DIC Auto Liability: $5,000.00<br><br>Employee Benefits: $1,000.00 |
| General Corporate – Umbrella | Continental Insurance Company | 4034975332 | 3/25/2018-3/25/2019 | $27,153.00 | Retention: $10,000 |
| Data | Continental Casualty Company | 592386049 | 3/25/2018-3/25/2019 | $247,192.00 | Retention: $500,000 |
| Property – Flood Liability | Homesite Insurance Company | 3000040659 | 1/24/2018-1/24/2019 | $1,892.00 | Deductibles:<br>• $1,250.00 Building<br>• $1,250.00 Contents |
| Property – Cargo Insurance | Continental Insurance Company | OC 7300196 | 7/28/2018-7/28/2020 | $25,895.00 | Deductibles:<br>• $1,000.00 Transit<br>• $1,000.00 Salesperson's Samples<br>• $15,000.00 Inventory Except;<br>• $50,000.00 Earthquake<br>• $50,000.00 Windstorm<br>• $50,000.00 Flood |
| Property – General | Continental Casualty Company. | RMP 6023369992 | 3/25/2018-3/25/2019 | $200,755.00 | Deductibles: $50,000 Per Occurrence, EXCEPT:<br>• Earth Movement at Locations in the |

| Type of Coverage | Insurer(s) | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| | | | | | States of Alaska, California, Hawaii, and Puerto Rico - 5% of value per location, subject to minimum of $250,000.00 per occurrence;<br>• Earth Movement at all other locations - $100,000.00 per occurrence.<br>• Flood in 100 Year Flood Plains (per occurrence and per location) - $500,000.00 for Real Property / $500,000.00 for Personal Property / $500,000.00 for Time Element;<br>• Flood in 500 Year Flood Plains (per occurrence and per location) - $250,000.00 for Real Property / $250,000.00 for Personal Property / $250,000.00 for Time Element;<br>• Flood at All Other Locations - $100,000.00 Per Occurrence.<br>• Wind or Hail from Named Storm in Puerto Rico, SU Virgin Islands and other US Territories and Possessions – 5% of value per location, subject to a minimum of $250,000.00 per occurrence;<br>• Wind or Hail from Named Storm in the States of Florida and Hawaii and in First Tier Areas of all other States – 5% of value per location, subject to a minimum of $250,000.00 per occurrence;<br>• Wind or Hail from Named Storm at all other locations - $50,000.00<br>• Equipment Breakdown - $50,000.00 combined direct damage and time element. (24 hour waiting period applies as respects time element & spoilage and then the equipment breakdown deductible applies.) |

2

| Type of Coverage | Insurer(s) | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| D&O Program | • Houston Casualty Company<br>• Illinois National Insurance Company<br>• Endurance Assurance Corporation<br>• Executive Risk Indemnity Inc<br>• ACE American Insurance Company<br>• Endurance Assurance Corporation<br>• Allianz | • 14-MG-18-A14004<br>• 01-970-39-01<br>• DOX300007984 00<br>• 8240-4398<br>• G23682333004<br>• ADX300007989 00<br>• USF00220018 | • 9/30/2018-9/30/2019<br>• 9/30/2018-9/30/2019<br>• 9/30/2018-9/30/2019<br>• 9/30/2018-9/30/2019<br>• 9/30/2018-9/30/2019<br>• 9/30/2018-9/30/2019<br>• 10/3/2018-9/30/2019 | $500,040.00 | Retention: $250,000.00 |
| D&O Program – Sales and Use Tax Coverage | • AIG Specialty Insurance Company<br>• Ambridge Partners LLC | • 18251033<br>• AMB02651 | • 10/16/2018-10/16/2025<br>• 10/16/2018-10/16/2025 | $2,077,000.00 | Retention: $250,000.00 |
| Employee Liability – In-House Counsel Liability | Illinois National Insurance Company | 36056811 | 09/30/2018-09/30/2019 | $12,418 | Retention:<br>• $0.00 Non-Indemnifiable Loss<br>• $10,000.00 Indemnifiable Loss |
| Employee Liability – Employment Practices Liability | Houston Casualty Company | 14-MG-18-A14004 | 9/30/2018-9/30/2019 | $0* | Deductibles: $150,000.00 |
| Discrete Risk Coverage – Contamination Exposure | Commerce & Industry Insurance Company | 3776634 | 7/28/2019-7/28/2019 | $666.00 | Deductible: $5,000.00 |
| Discrete Risk Coverage – Crime Protection | Houston Casualty Company | 64-MG-18-A14009 | 9/30/2018-9/30/2019 | $10,458.00 | $100,000.00 Single Loss Deductible |

---

* This program is a D&O Employee Liability Program; the premium for this program is included in the D&O Program premium.

| Type of Coverage | Insurer(s) | Policy Number(s) | Policy Term | Annual Premium | Deductible |
|---|---|---|---|---|---|
| | | | | | |
| Discrete Risk Coverage – Corporate Crisis | U.S. Specialty Insurance Company | U716-85920 | 9/30/2016-9/30/2019 | $5,404.00[**] | NIL |

---

[**] Premium for three (3) years.

RLF1 20430302V.1