**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- X
                               :

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **CHECKOUT HOLDING CORP.**, *et al.*, | : | **Case No. 18-[_____] (___)** |
| | : | |
| Debtors.[1] | : | **Joint Administration Requested** |
| | : | |

---------------------------------------------------------- X

### MOTION OF DEBTORS PURSUANT TO
### 11 U.S.C. §§ 105(a), 363(b), 507(a), AND 541 FOR
### <u>AUTHORITY TO PAY CERTAIN PREPETITION TAXES AND FEES</u>

Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### <u>Background</u>

1.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

2.       Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.       Before the Petition Date, the Debtors, with the support of their secured lenders, began the solicitation of votes on their *Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* (the "**Prepackaged Plan**"), through their *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtors expect that the Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.   Consistent with their obligations under that certain *Restructuring Support Agreement*, dated as of December 11, 2018 (as amended from time to time and including all exhibits thereto, the "**RSA**"), the Debtors are seeking to emerge from chapter 11 on an expedited timeframe.

4.       Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Del Genio* (the "**Del Genio Declaration**"), which has been filed with this Court contemporaneously with the Motion.

**Jurisdiction**

5.       The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013–1(f), the Debtors consent to the entry of

a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### **Relief Requested**

6.    By this Motion, pursuant to sections 105(a), 363(b), 507(a), and 541 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the Debtors request authority to pay, in the Debtors' sole discretion, certain prepetition taxes, fees, and other related obligations (collectively, the "**Taxes and Fees**"), whether asserted prior to or after the Petition Date, including all Taxes and Fees subsequently determined upon audit, or otherwise, to be owed.

7.    Such relief will be without prejudice to the Debtors' rights to contest the amounts of any Taxes and Fees on any grounds they deem appropriate or the Debtors' ability to request further relief related to the Taxes and Fees in the future.

8.    The Debtors propose that prior to making a payment to a Taxing Authority (as defined below) under the Motion, the Debtors be authorized, in their absolute discretion, to settle all or some of the prepetition claims of such Taxing Authority for less than their face amount without further notice or hearing.

9.    No party in interest will be prejudiced by the relief requested by this Motion because the prepetition obligations related to the Taxes and Fees are unimpaired under the Prepackaged Plan and will be paid in full.  Thus, the relief requested herein seeks to alter only the timing, not the amount or priority, of such payments.

10.    A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**") and, pending a

final hearing on the relief requested herein, on a final basis as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

**Debtors' Tax and Fee Obligations**

11.    In connection with the normal operation of their business, the Debtors collect, withhold, or incur an assortment of Taxes and Fees that they remit periodically to various federal, state, county, and city taxing and licensing authorities (collectively, the "**Taxing Authorities**").

12.    The Taxes and Fees generally fall into the following categories, each of which is discussed in more detail below: Sales and Use Taxes, Property Taxes, Income Taxes, Franchise Taxes, Business License Fees, Annual Report Taxes, and Other Taxes and Fees.

13.    The Debtors seek to pay certain Taxes and Fees, among other reasons, to prevent Taxing Authorities from taking actions that may interfere with the Debtors' administration of their chapter 11 cases.  Such interference could include the assertion of liens against the Debtors' property or assessment of penalties or significant interest on past-due Taxes and Fees.  Additionally, non-payment of the Taxes and Fees may give rise to priority claims pursuant to section 507(a)(8) of the Bankruptcy Code.  Accordingly, the Debtors submit that the relief requested herein is in the best interest of the Debtors' estates.

14.    The Debtors, in the ordinary course of their businesses, have generally paid the Taxes and Fees as they became due on a monthly, quarterly, or annual basis, in each case, as required by law.  In the last twelve months, the Debtors paid approximately $2.14 million in Taxes and Fees.  The Debtors estimate that approximately $1.571 million in prepetition Taxes and Fees will become due and owing to the Taxing Authorities during the course of these chapter 11 cases, including approximately $85,000 in Taxes and Fees that will become due and owing within twenty-one (21) days of the Petition Date (the "**Interim Period**").

4

A.      **Sales and Use Taxes**

15.      In the ordinary course of their business, the Debtors incur and remit sales and use taxes (the "**Sales and Use Taxes**").  The Sales and Use Taxes are incurred on account of the purchase of certain supplies or other goods utilized by the Debtors in maintaining certain of the Debtors' networking and printing hardware used in the ordinary course of business.  Sales and Use Taxes arise when the Debtors purchase inventory, supplies, or other goods for which no sales tax was charged by the applicable vendor because such vendor does not have business operations within the jurisdictions in which the goods were procured.  The Debtors are required to remit Sales and Use Taxes to the applicable Taxing Authorities on a monthly, quarterly, semi-annual, or annual basis, depending on the jurisdiction.  The Debtors estimate that the accrued prepetition liability for Sales and Use Taxes that have not yet become due and payable to be approximately $21,000, of which approximately $5,300 of Sales and Use Taxes will become due and owing during the Interim Period.

B.      **Property Taxes**

16.      Various state and local governments in jurisdictions where the Debtors' operations are located have the authority to levy property taxes against the Debtors' leased and owned real and personal property ("**Property Taxes**").  The Debtors pay Property Taxes for real and personal property that they lease and own located in approximately thirty-three (33) states. The Debtors typically pay Property Taxes annually, quarterly, or bi-annually depending on how the relevant tax is assessed.  The Debtors estimate that the accrued prepetition liability for Property Taxes that have not yet become due and payable to be approximately $1.127 million, of which approximately $31,500 of Property Taxes will become due and owing during the Interim Period.

C.    **Income Taxes**

17.    Under certain applicable laws, federal, state, and local Taxing Authorities levy taxes based on the Debtors' revenues and profits generated through operation of their business ("**Income Taxes**").   The Debtors estimate that the accrued prepetition liability for Income Taxes that have not yet become due and payable to be approximately $185,000, of which approximately $25,000 of Income Taxes will become due and owing during the Interim Period.

D.    **Franchise Taxes**

18.    The Debtors must pay franchise taxes to certain of the Taxing Authorities so that they can operate their businesses in the applicable taxing jurisdiction ("**Franchise Taxes**").   Some states assess a flat Franchise Tax on all businesses and other states assess a Franchise Tax based upon some measure of income, gross receipts, net worth, or other measure of value.  Franchise Taxes are typically paid annually to the applicable Taxing Authorities.

19.    The Debtors estimate that the accrued prepetition liability for Franchise Taxes that have not yet become due and payable to be approximately $215,000, of which approximately $23,000 of Franchise Taxes will become due and owing during the Interim Period.

E.    **Business License Fees, Annual Report Taxes, and Other Taxes and Fees**

20.    The Debtors must pay fees for various business licenses, permits, and certificates that the Debtors need to operate (collectively, "**Business License Fees**").  Various Taxing Authorities also require the Debtors to pay annual report taxes ("**Annual Report Taxes**") to remain in good standing for purposes of conducting business within the state.  In addition to the Business License Fees and the Annual Report Taxes, the Debtors also pay certain other Taxes and Fees, such as filing fees for Taxes, on an annual basis in the ordinary course of business ("**Other Taxes and Fees**").

21.     The Debtors estimate that the accrued prepetition liability for Business License Fees, Annual Report Taxes, and Other Taxes and Fees that have not yet become due and payable to be approximately $23,000, of which approximately $500 of Business License Fees, Annual Report Taxes, and Other Taxes and Fees will become due and owing during the Interim Period.

## Basis for Relief Requested

22.     Ample cause exists to authorize the payment of the Taxes and Fees, including that (i) the failure to pay the Taxes and Fees may interfere with the Debtors' continued operations and chapter 11 strategy; (ii) the failure to pay prepetition Property Taxes may increase the scope of secured and priority claims held by the applicable Taxing Authorities against the Debtors' estates; (iii) the payment of the Taxes and Fees affects only the timing of payments because most, if not all, of the Taxes and Fees are afforded priority status under the Bankruptcy Code; and (iv) the Court has authority to grant the requested relief under sections 105(a) and 363(b) of the Bankruptcy Code.

## A.     Many of the Taxes and Fees are Priority Claims, the Payment of Which Will Affect Only the Timing of Payments

23.     Claims for most or all of the Taxes and Fees owed by the Debtors may be entitled to priority status under section 507(a)(8) of the Bankruptcy Code and thus payment of such Taxes and Fees would give the Taxing Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and will save the Debtors potential interest expense, legal expense, and penalties that otherwise might accrue on, or be incurred in connection with, such Taxes and Fees.

24.     Section 507(a)(8) of the Bankruptcy Code provides that claims entitled to priority status include unsecured claims of governmental units for (i) taxes on or measured by

income or gross receipts for a taxable year ending on or before the Petition Date, for which a return, if required, is last due after three years prior to the Petition Date, and which is assessed within 240 days before the Petition Date, *see* 11 U.S.C. § 507(a)(8)(A) and (ii) property taxes incurred before the Petition Date and last payable without penalty after one year before the Petition Date, *see* 11 U.S.C. § 507(a)(8)(B).  Moreover, to the extent that the Taxes and Fees are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the governmental unit may attempt to assess penalties that may also be accorded priority status.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth-priority status to "a penalty related to a claim of a kind specified in [section 507(a)(8)] and in compensation for actual pecuniary loss").

25.    Accordingly, payment of certain of the Taxes and Fees likely will give the Taxing Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and will save the Debtors potential interest expense, legal expense, and penalties that otherwise might accrue on, or be incurred in connection with, the Taxes and Fees for the benefit of all of the Debtors' stakeholders.

**B.    Certain of the Taxes and Fees May Be Secured or Entitled to Special Treatment**

26.    Certain of the Taxes and Fees may be subject to tax liens.  Arguably, the relation back of a tax lien to the assessment or tax status date generally does not affect the enforceability of the tax lien against a debtor or violate the automatic stay imposed by section 362(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 362(b)(3).  In fact, the creation and perfection of such a lien may not violate the automatic stay—even if the lien arises under applicable law for taxes due after the Petition Date.  *See* 11 U.S.C. § 362(b)(18) (automatic stay does not apply to "the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition[.]"); *see also In re*

*Gifaldi*, 207 B.R. 54, 56 n.1 (Bankr. W.D.N.Y. 1997) (noting that section 362(b)(18) of the Bankruptcy Code reversed case law that had held that the creation of a statutory lien against ad valorem property taxes violated the automatic stay). Thus, the Debtors' failure to pay the Property Taxes, for example, may inadvertently increase the scope of secured claims held against the Debtors' estates.

27. Indeed, absent the granting of the relief requested herein, many Taxing Authorities may hold oversecured claims against the Debtors' estates related to the Taxes and Fees. The Bankruptcy Code provides that oversecured claims may accrue interest during a chapter 11 case. *See* 11 U.S.C. § 506(b); *U.S. v. Ron Pair Enters.*, 489 U.S. 235, 241–43 (1989) (nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code); *see also Lincoln Sav. Bank v. Suffolk Cty. Treasurer* (*In re Parr Meadows Racing Ass'n*), 880 F.2d 1540, 1549 (2d Cir. 1989) (citing *Ron Pair* and holding that oversecured liens entitled a tax authority to postpetition interest). If the Debtors are required to pay interest on such tax claims, section 511(a) of the Bankruptcy Code provides that "the rate of interest shall be the rate determined under applicable nonbankruptcy law," which may exceed prevailing market interest rates. Accordingly, prompt payment of the Taxes and Fees may eliminate claims for interest at potentially above-market rates for any resulting secured claims.

## C.    Ample Authority Exists to Support Payment of the Taxes and Fees

28. This Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."

*In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

        29.     In addition, this Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see Ionosphere Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefits, and business expense claims to debtor's employees); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims).

        30.     In a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C&S W.R.*

*Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied* 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

31.    This "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See, e.g.*, *Just for Feet*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides statutory basis for payment of prepetition claims under the doctrine of necessity particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

32.    The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  Accordingly, the Debtors submit that the proposed relief with respect to the payment of the Taxes and Fees are warranted in these chapter 11 cases.

RLF1 20430304V.1

**Reservation of Rights**

33.    Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) an agreement or obligation to pay any claims, (iii) an admission as to the validity of any liens satisfied pursuant to this Motion, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (v) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Applicable Banks Should Be Authorized, At the Debtors'
Direction, to Receive, Process, Honor, and Pay Checks
Issued and Transfers Requested to Pay the Taxes and Fees**

34.    The Debtors further request that this Court authorize applicable financial institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by or on behalf of the Debtors relating to the Taxes and Fees, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payment.  The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Taxes and Fees.  Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.  Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.  The Debtors also

seek authority to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or funds transfer requests on account of the Taxes and Fees dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

## The Debtors Satisfy Bankruptcy Rule 6003

35.     Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  As described herein and in the Del Genio Declaration, the Debtors' estates would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## Bankruptcy Rules 6004(a) and (h)

36.     The Debtors believe that, under the circumstances of these chapter 11 cases, notice of the Motion, as set forth below, is adequate under Bankruptcy Rule 6004(a). Notwithstanding any applicability of the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), the Debtors respectfully request that the Motion be approved and the relief requested be immediately effective and enforceable.

## Notice

37.     Notice of this Motion shall be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) Jones Day, 250 Vesey Street, New

York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.), as counsel to the DIP lenders and the ad hoc group of lenders under the First Lien Credit Agreement; (v) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq. and Robert A. Britton, Esq.) and Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.), as counsel to an ad hoc group of certain holders of term loans under the Second Lien Term Loan, dated as of April 9, 2014; (vi) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M. Resnick, Esq.) and Landis Rath & Cobb LLP, 919 Market Street, Wilmington, DE 19801 (Attn: Adam Landis, Esq. and Kerri Mumford, Esq.), as counsel to JPMorgan Chase Bank, N.A., as administrative agent under the First Lien Credit Agreement; (vii) Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007 (Attn: Andrew N. Goldman, Esq.), as counsel to Wilmington Savings Fund Society, FSB, as administrative agent under the Second Lien Credit Agreement; (viii) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.), as counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation; (ix) the Internal Revenue Service; (x) the United States Attorney's Office for the District of Delaware; (xi) the Banks; and (xii) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of the Motion as required by Local Rule 9013-1(m).   The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

38.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of Page Intentionally Left Blank.*]

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and, following the Final Hearing (if one is required), the Proposed Final Order, in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as this Court may deem just and appropriate.

Dated: December 12, 2018
      Wilmington, Delaware

*/s/ Jason M. Madron*
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Gary T. Holtzer (*pro hac vice* admission pending)
Ronit J. Berkovich (*pro hac vice* admission pending)
Jessica Liou (*pro hac vice* admission pending)
Kevin Bostel (*pro hac vice* admission pending)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                     :
In re                       :       **Chapter 11**
                     :
**CHECKOUT HOLDING CORP.**, *et al.*,   :       **Case No. 18-[_____] (___)**
                     :
         Debtors.[1]            :       **Joint Administration Requested**
                     :
-------------------------------------------------------- X

## INTERIM ORDER PURSUANT TO
## 11 U.S.C. §§ 105(a), 363(b), 507(a), AND 541 AUTHORIZING
## <u>DEBTORS TO PAY CERTAIN PREPETITION TAXES AND FEES</u>

Upon the motion (the "**Motion**")[2] of Checkout Holding Corp. and its affiliated

debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession

(collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b), 507(a), and 541 of title 11 of

the United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing the Debtors to

remit and pay certain taxes, assessments, fees, and charges in the ordinary course of business

(without regard to whether such obligations accrued or arose before or after the Petition Date),

including any such taxes, assessments, fees, and charges subsequently determined, upon audit or

otherwise, to be owed (collectively, the "**Taxes and Fees**") and (ii) granting related relief, all as

more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

*Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Del Genio Declaration filed contemporaneously with the Motion, the record of the Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, in the ordinary course of business as such obligations become due, to pay the Taxes and Fees (without regard to whether such Taxes and Fees accrued or arose before or after the Petition Date), including all of those Taxes and Fees subsequently determined, upon audit or otherwise, to be owed, provided that the Debtors are authorized, but not directed, to pay only amounts that become due and owing during the Interim Period, in an amount not to exceed $85,000 in the aggregate, unless otherwise

ordered by this Court.

3.      The Debtors are authorized, but not directed, in their absolute discretion, to settle some or all of the prepetition Taxes and Fees for less than their face amount without further notice or hearing.

4.      Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**").

5.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise and without liability for following the Debtors' instructions.

6.      The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

7.      Notwithstanding anything contained in the Motion or this Interim Order, any payment made, and any authorization contained herein shall be subject to the terms and

conditions contained in any orders entered by this Court authorizing the Debtors to obtain

debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a

"**DIP Order**"), the documentation in respect of any such debtor-in-possession financing or use

of cash collateral, and any budget in connection with any such debtor-in-possession financing

and/or use of cash collateral.  To the extent there is any inconsistency between the terms of any

DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order

shall control.

8.      Nothing contained in the Motion or this Interim Order or any payment

made pursuant to the authority granted by this Interim Order is intended to be or shall be

construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of

the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval

or assumption of any agreement, contract, program, policy, or lease under section 365 of the

Bankruptcy Code.

9.      Notwithstanding entry of this Interim Order, nothing herein shall create,

nor is intended to create, any rights in favor of or enhance the status of any claim held by, any

party.

10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11.     Under the circumstances of these chapter 11 cases, notice of the Motion is

adequate under Bankruptcy Rule 6004(a).

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of

this Interim Order shall be immediately effective and enforceable upon its entry.

13.     The Final Hearing on the Motion shall be held on [_____], **2018**

**at [_____]** (**Eastern Standard Time**) and any objections or responses to the Motion shall be

made in writing, filed with this Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T. Holtzer, Esq., Ronit J. Berkovich, Esq., and Kevin Bostel, Esq.), and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.); and (ii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Eastern Standard Time) on [_____], 2018**.

14.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; <u>provided</u> that this Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

15.     The Debtors are authorized to take all action necessary to implement the relief granted in this Interim Order.

16.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

Dated: _____, 2018
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                         :
In re                         :       **Chapter 11**
                         :
**CHECKOUT HOLDING CORP.,** *et al.,*   :       **Case No. 18-[_____] (___)**
                         :
           **Debtors.**[1]          :       **Joint Administration Requested**
                         :
-------------------------------------------------------- X

## FINAL ORDER PURSUANT TO
## 11 U.S.C. §§ 105(a), 363(b), 507(a), AND 541 AUTHORIZING
## DEBTORS TO PAY CERTAIN PREPETITION TAXES AND FEES

Upon the Motion (the "**Motion**")[2] of Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), sections 105(a), 363(b), 507(a), and 541 of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order (i) authorizing the Debtors to remit and pay certain taxes, assessments, fees, and charges in the ordinary course of business (without regard to whether such obligations accrued or arose before or after the Petition Date), including any such taxes, assessments, fees, and charges subsequently determined, upon audit or otherwise, to be owed (collectively, the "**Taxes and Fees**") and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held hearings to consider the relief requested in the Motion on an interim (the "**Interim Hearing**") and final basis (the "**Final Hearing**"); and this Court having entered an order granting the relief requested in the Motion on an interim basis; and upon the Del Genio Declaration filed contemporaneously with the Motion, the record of the Interim Hearing, the Final Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.    The Motion is granted on a final basis as set forth herein.

2.    The Debtors are authorized, but not directed, in the ordinary course of business as such obligations become due, to pay the Taxes and Fees (without regard to whether such Taxes and Fees accrued or arose before or after the Petition Date), including all of those Taxes and Fees subsequently determined, upon audit or otherwise, to be owed up to a maximum amount of $1.571 million.

3.      The Debtors are authorized, but not directed, in their absolute discretion, to settle some or all of the Taxes and Fees for less than their face amount without further notice or hearing.

4.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise and without liability for following the Debtors' instructions.

5.      The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

6.      Notwithstanding anything contained in the Motion, the Interim Order, or this Final Order, any payment made, and any authorization contained Debtors herein shall be subject to the terms and conditions contained in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "**DIP Order**"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.   To the extent there is any

3

inconsistency between the terms of any DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

7.      Nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

8.      Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

9.      Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all action necessary to carry out this Final Order.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

Dated: _____, 2018
        Wilmington, Delaware

        _____
        UNITED STATES BANKRUPTCY JUDGE