## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                                                             :

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **CHECKOUT HOLDING CORP.**, *et al.*, | : | **Case No. 18-[_____] (___)** |
| | : | |
| Debtors.[1] | : | **Joint Administration Requested** |
| | : | |

-------------------------------------------------------- X

### MOTION OF DEBTORS PURSUANT
### TO 11 U.S.C. §§ 105(a) AND 363(b) FOR
### INTERIM AND FINAL AUTHORITY TO (I) MAINTAIN
### AND ADMINISTER PREPETITION CUSTOMER PROGRAMS
### AND (II) PAY AND HONOR RELATED PREPETITION OBLIGATIONS

Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1. On the date hereof (the "**Petition Date**"), the Debtors each commenced with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

2.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.     Before the Petition Date, the Debtors, with the support of their secured lenders, began the solicitation of votes on their *Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* (the "**Prepackaged Plan**"), through their *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtors expect that the Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.   Consistent with their obligations under that certain *Restructuring Support Agreement*, dated as of December 11, 2018 (as amended from time to time and including all exhibits thereto, the "**RSA**"), the Debtors are seeking to emerge from chapter 11 on an expedited timeframe.

4.     Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Del Genio* (the "**Del Genio Declaration**"), which has been filed with this Court contemporaneously with the Motion.

## Jurisdiction

5.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013–1(f), the Debtors consent to the entry of

2

a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

6.    By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors request authority to, in the ordinary course of business and consistent with past practice, (i) maintain and administer prepetition customer programs, promotions, and practices, as necessary and appropriate in the Debtors' business judgment, and (ii) to pay and otherwise honor their obligations to customers relating thereto, whether arising prior to or after the Petition Date.

7.    A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**") and, pending a final hearing on the relief requested herein, on a final basis as **Exhibit B** (the "**Proposed Final Order**").

8.    No party in interest will be prejudiced by the relief requested by this Motion because the customers are unimpaired under the Prepackaged Plan and will be paid in full.  Thus, the relief requested herein seeks to alter only the timing, not the amount or priority, of such payments.

## The Debtors' Customer Programs

9.    The Debtors' businesses depend upon the loyalty of their customers.  As explained in the Del Genio Declaration, one of the Debtors' primary lines of business is the development and deployment of targeted marketing campaigns (the "**Campaigns**") to drive product sales, typically by generating coupons at a consumer's point of sale.  The Debtors'

3

primary customers in connection with the Campaigns are the owners and distributors of consumer packaged goods (the "**CPGs**") and retailers of consumer goods seeking to drive sales of their private label products or in some cases consumer packaged goods that are sold in their stores (in their capacity as such, the "**Retailers**" and together with the CPGs, the "**Customers**").

10.    To develop and maintain positive customer relationships and to maximize customer loyalty, in the ordinary course of business, the Debtors provide certain incentives, discounts, and other accommodation to Customers (collectively, the "**Customer Programs**" and the obligations incurred thereunder, the "**Customer Obligations**").  Maintaining the goodwill of Customers is critical to the Debtors' ongoing operations and the preservation and maximization of stakeholder value.  Without the ability to continue their Customer Programs and to satisfy prepetition obligations in connection therewith, the Debtors risk losing market share and value of their businesses.  The Customer Programs are as follows:

A.    **Make Good Program**

11.    In certain instances, a Campaign will suffer from execution issues that prevent the full realization of the Campaign objectives.  In these circumstances, to maintain customer goodwill, the Debtors may apply a "make good" policy to compensate the Customer (the "**Make Good Program**").  In the vast majority of circumstances, the Debtors will respond to Campaign execution issues by (i) re-running the Campaign at no charge to the Customer, or (ii) if re-running the Campaign will no longer be effective, implementing, at no charge, a new Campaign for the Customer.  In limited circumstances where a Campaign execution issue results in a Customer incurring significant out-of-pocket costs, the Debtors may reimburse the Customer for such costs.

12.    As of the Petition Date, the Debtors believe that they owe Customers (i) campaign services valued at approximately $1,027,000 on account of the Make Good

Program and (ii) approximately $456,000 on account of outstanding amounts due under the Make Good Program, $188,000 of which will become due and owing within twenty-one days of the Petition Date (the "**Interim Period**").

###### B.    Rebate Program

13.    The Debtors' rebate program (the "**Rebate Program**") is designed to entice Customers to enter into agreements for large-scale Campaigns.    Under the Rebate Program, the Debtors and a Customer contractually agree that if the Customer spends in excess of a set threshold, such Customer will be entitled to a rebate based on a percentage of Customer spend beyond the threshold.    In circumstances where the Rebate Program is triggered, the Debtors will typically remit to the Customer a cash rebate payment within ninety (90) days of the obligation being incurred.    The Rebate Program is an important means for the Debtors to increase Customer spending as well as build Customer goodwill.    The Rebate Program is limited in scope and, as of the Petition Date, the Debtors estimate that they owe approximately $126,200 on account of prepetition obligations incurred under the Rebate Program.

###### C.    Advanced Payment Campaign Obligations

14.    In addition to the foregoing campaign services that the Debtors owe their Customers in connection with the other Customer Programs, the Debtors owe campaign services to certain Customers that pay for Campaigns in advance (the "**Advanced Payment Campaign Obligations**").    In the ordinary course of their businesses, the Debtors collect advanced payments from many of their Customers, which allow the Debtors to pay Campaign set-up expenses and maintain appropriate amounts of liquidity.    As of the Petition Date, the Debtors estimate that they owe Advanced Payment Campaign Obligations valued at approximately $3,130,533.

**Basis for Relief Requested**

**A.** **Ample Authority Exists to Support Payment of the Customer Obligations**

15.     The Court may grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so.  *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring that debtor show a "sound business purpose" to justify its actions under section 363 of Bankruptcy Code); *see also In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

16.     In addition, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries holding the bankruptcy estate and operating the business for the benefit of creditors and, if the value justifies, equity owners.  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Consistent with such fiduciary duties, courts have authorized payment of prepetition obligations where a sound business purpose justifies the payment of such claims.  *See Ionosphere Clubs*, 98 B.R. at 175 (holding that section 363(b) gives the court "broad flexibility" to authorize a debtor to expend funds on account of prepetition

6

claims).   Indeed, in some instances, a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *CoServ*, 273 B.R. at 297.

17.     The Court may also authorize the payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code and the doctrine of necessity when such payment is essential to the continued operation of a debtor's business.  *See*, *e.g.*, *Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides a statutory basis for payment of prepetition claims under doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that doctrine of necessity is standard in Third Circuit for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

18.     Allowing a debtor to honor prepetition obligations under this authority is appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing property available to satisfy creditors.  *See Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).   When retaining the loyalty and patronage of customers is critical to successful chapter 11 cases, courts in this district have granted relief similar to that requested herein.  *See, e.g., In re Mattress Firm, Inc.*, Case 18-12241 (CSS) (Bankr. D. Del. Nov. 7, 2018) (authorizing debtors to continue customer programs and pay prepetition customer obligations); *In re Southeastern Grocers, LLC,* Case No. 18-10700 (MFW) (Bankr. D. Del. Mar. 28, 2018) (same); *In re Claire's Stores, Inc.*, Case No. 18-10584 (MFW) (Bankr. D. Del. Mar. 20, 2018)

(same); *In re Central Grocers, Inc.* Case No. 17-10996 (LSS) (Bankr. D. Del. May 5, 2017) (same); *In re Herald Media Holdings, Inc*., Case No. 17-12881 (LSS) (Bankr. D. Del. Jan 5, 2018) (same).

  **B.**  **Continuing the Customer Programs and Honoring the Customer Obligations Is in the Best Interests of the Debtors' Businesses and Estates**

   19.  The ability to continue administering the Customer Programs without interruption is absolutely critical to the Debtors' valuable Customer relationships and goodwill, which will inure to the benefit of all of the Debtors' stakeholders.  If the Debtors are unable to continue the Customer Programs postpetition or honor obligations thereunder, the Debtors risk alienating certain Customer constituencies, which may then form relationships with the Debtors' competitors, and could suffer corresponding losses in Customer loyalty and goodwill that will harm their prospects for maximizing recoveries to their creditors.

   20.  The Customer Programs also are essential strategies for attracting new Customers and increasing sale volumes among existing Customers.  Failure to continue the Customer Programs and offer even basic programs such as the Make Good Program will place the Debtors at a significant – and potentially insurmountable – competitive disadvantage in the marketplace, amplifying the negative effect of Customer uncertainty that may arise from these chapter 11 filings.  Such uncertainty could erode the Debtors' hard-earned reputation, which, in turn, could adversely impact their ability to successfully administer their chapter 11 cases and maximize recoveries to their creditors.  The relief requested herein will pay dividends with respect to their businesses, both in terms of profitability and the engendering of goodwill, especially at this critical time following the filing of these chapter 11 cases.  Accordingly, the Debtors have shown cause sufficient to warrant the authority to continue administering the Customer Programs and to honor any Customer Obligations relating thereto.

**Reservation of Rights**

21.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Applicable Financial Institutions**
**Should Be Authorized, At the Debtors' Direction, to Receive, Process, Honor,**
**and Pay Checks Issued and Transfers Requested to Pay Customer Obligations**

22.     The Debtors further request that the Court authorize applicable financial institutions (the "**Banks**") to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by or on behalf of the Debtors relating to the prepetition Customer Obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payment.   The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Customer Obligations.  Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.   Any such financial institution may rely on the representations of such Debtors as to which checks are issued or wire transfers are made (or, as applicable, requested to be issued or made) and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.   The Debtors also seek authority to issue new postpetition checks or effect new postpetition electronic funds transfers in replacement of any checks or funds transfer requests on

account of prepetition Customer Obligations dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

## The Debtors Satisfy Bankruptcy Rule 6003(b)

23.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b).  As described above, the Customer Programs are integral to the Debtors' continued operations because they are necessary to maintain the confidence and goodwill of the Debtors' customer base.  The Debtors are at a critical juncture at which they must make every effort to retain customer support, drive revenues, and maximize cash flow.  The Debtors' inability to continue the Customer Programs could materially – and perhaps fatally – impair their efforts and thwart the Debtors' chapter 11 cases before they have had a chance to begin.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

## Bankruptcy Rules 6004(a) and (h)

24.     The Debtors believe that, under the circumstances of these chapter 11 cases, notice of the Motion, as set forth below, is adequate under Bankruptcy Rule 6004(a). Notwithstanding any applicability of the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), the Debtors respectfully request that the Motion be approved and the relief requested be immediately effective and enforceable.

## Notice

25.    Notice of this Motion shall be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.), as counsel to the DIP lenders and the ad hoc group of lenders under the First Lien Credit Agreement; (v) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq. and Robert A. Britton, Esq.) and Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn: Pauline K. Morgan, Esq.), as counsel to an ad hoc group of certain holders of term loans under the Second Lien Term Loan, dated as of April 9, 2014; (vi) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M. Resnick, Esq.) and Landis Rath & Cobb LLP, 919 Market Street, Wilmington, DE 19801 (Attn: Adam Landis, Esq. and Kerri Mumford, Esq.), as counsel to JPMorgan Chase Bank, N.A., as administrative agent under the First Lien Credit Agreement; (vii) Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007 (Attn: Andrew N. Goldman, Esq.), as counsel to Wilmington Savings Fund Society, FSB, as administrative agent under the Second Lien Credit Agreement; (viii) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.), as counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation; (ix) the Internal Revenue Service; (x) the United States Attorney's Office for the District of Delaware; (xi) the Banks; and (xii) any other party entitled to notice pursuant to Local

Rule 9013-1(m) (collectively, the "**Notice Parties**").  As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of the Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

26.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank.]*

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and, following the Final Hearing (if one is required), the Proposed Final Order, in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as this Court may deem just and appropriate.

Dated: December 12, 2018
      Wilmington, Delaware

*/s/ Jason M. Madron*
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Gary T. Holtzer (*pro hac vice* admission pending)
Ronit J. Berkovich (*pro hac vice* admission pending)
Jessica Liou (*pro hac vice* admission pending)
Kevin Bostel (*pro hac vice* admission pending)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

13

**<u>Exhibit A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ X
                                         :
In re                                    :        Chapter 11
                                         :
CHECKOUT HOLDING CORP., et al.,          :        Case No. 18-[_____] (____)
                                         :
                Debtors.[1]              :        Joint Administration Requested
                                         :
------------------------------------------------------------ X
```

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) FOR INTERIM AUTHORITY TO (I) MAINTAIN AND ADMINISTER PREPETITION CUSTOMER PROGRAMS AND (II) PAY AND HONOR RELATED PREPETITION OBLIGATIONS

Upon the motion (the "**Motion**")[2] of Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing the Debtors to, in the ordinary course of business and consistent with past practice, (i) maintain and administer their Customer Programs, and (ii) pay and otherwise honor their obligations to Customers relating thereto, whether arising prior to or after the Petition Date, as necessary and appropriate in the Debtors' business judgment, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the Del Genio Declaration filed contemporaneously with the Motion, the record of the Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to maintain and administer the Customer Programs and honor prepetition Customer Obligations (including the Advanced Payment Campaign Obligations) in the ordinary course of business and consistent with past practice, as necessary and appropriate in the Debtors' business judgment; provided that the Debtors are authorized, but not directed, to pay only amounts that are or become due and payable, with the aggregate value of such payments and services not to exceed $188,000, between the Petition Date and the date

2

that a final order on the Motion is entered, unless otherwise ordered by this Court.

3.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**").

4.     The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the Debtors relating to the obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise and without liability for following the Debtors' instructions.

5.     The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Interim Order.

6.     Notwithstanding anything contained in the Motion or this Interim Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "**DIP Order**"), the documentation in respect of any such debtor-in-possession financing

or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms of any DIP Order and any action taken or proposed to be taken by the Debtors hereunder, the terms of the DIP Order shall control.

7.    Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

8.    Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

9.    The requirements of Bankruptcy Rule 6003(b) have been satisfied.

10.    Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

11.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

12.    The Final Hearing on the Motion shall be held on [_____], 2018 at [_____] (**Eastern Standard Time**) and any objections or responses to the Motion shall be made in writing, filed with this Court, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Gary T.

Holtzer, Esq., Ronit J. Berkovich, Esq., and Kevin Bostel, Esq.) and Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.); and (ii) the Notice Parties, in each case so as to be received no later than **4:00 p.m. (Eastern Standard Time) on [_____], 2018**.

13.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; <u>provided</u> that this Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

14.     The Debtors are authorized to take all action necessary to implement the relief granted in this Interim Order.

15.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

Dated: _____, 2018
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- X
                                              :
In re                                       :       **Chapter 11**
                                              :
**CHECKOUT HOLDING CORP.**, *et al.*,    :       **Case No. 18-[_____] (____)**
                                              :
                       **Debtors.**[1]         :       **Joint Administration Requested**
                                              :
---------------------------------------------------------- X

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) FOR FINAL AUTHORITY TO (I) MAINTAIN AND ADMINISTER PREPETITION CUSTOMER PROGRAMS AND (II) PAY AND HONOR RELATED PREPETITION OBLIGATIONS

Upon the Motion (the "**Motion**")[2] of Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for an order authorizing the Debtors to, in the ordinary course of business and consistent with past practice, (i) maintain and administer their Customer Programs, and (ii) pay and otherwise honor their obligations to Customers relating thereto, whether arising prior to or after the Petition Date, as necessary and appropriate in the Debtors' business judgment, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held hearings to consider the relief requested in the Motion on an interim (the "**Interim Hearing**") and final basis (the "**Final Hearing**"); and this Court having entered an order granting the relief requested in the Motion on an interim basis; and upon the Del Genio Declaration, filed contemporaneously with the Motion, the record of the Interim Hearing, the Final Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their sole discretion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to maintain and administer the Customer Programs and honor prepetition Customer Obligations (including the Advanced Payment Campaign Obligations) in the ordinary course of business and consistent with past practice, as necessary and appropriate in the Debtors' business judgment.

3.      The Banks are authorized to receive, process, honor, and pay any and all checks issued, or to be issued, and electronic funds transfers requested, or to be requested, by the

Debtors relating to the obligations, to the extent that sufficient funds are on deposit and standing in the Debtors' credit in the applicable bank accounts to cover such payments.  The Banks are authorized to accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise and without liability for following the Debtors' instructions.

4.    The Debtors are further authorized, but not directed, to issue postpetition checks, or to effect postpetition funds transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to this Final Order.

5.    Notwithstanding anything contained in the Motion, the Interim Order or this Final Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "**DIP Order**"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms of any DIP Order and any action taken or proposed to be taken by the Debtors hereunder, the terms of the DIP Order shall control.

6.    Nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors'

or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

7.     Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

8.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

9.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are authorized to take all action necessary to carry out this Final Order.

11.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

Dated: _____, 2018
        Wilmington, Delaware

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE