## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ X
                                               :

In re                                    :          **Chapter 11**
                                                :

**CHECKOUT HOLDING CORP.,** *et al.,*    :         **Case No. 18-[_____] (___)**
                                                :

            **Debtors.**[1]                 :          **Joint Administration Requested**
                                                :

------------------------------------------------------------ X

## MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 REQUESTING ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS, (II) ESTABLISHING PROCEDURES PROVIDING ADEQUATE ASSURANCE AND RESOLVING OBJECTIONS BY UTILITY PROVIDERS, AND (III) PROHIBITING UTILITY PROVIDERS FROM <u>ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICE</u>

Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Background

1.       On the date hereof (the "**Petition Date**"), the Debtors each commenced with the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

2.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of the chapter 11 cases pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

3.     Before the Petition Date, the Debtors, with the support of their secured lenders, began the solicitation of votes on their *Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* (the "**Prepackaged Plan**"), through their *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. The Debtors expect that the Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code. Consistent with their obligations under that certain *Restructuring Support Agreement*, dated as of December 11, 2018 (as amended from time to time and including all exhibits thereto, the "**RSA**"), the Debtors are seeking to emerge from chapter 11 on an expedited timeframe.

4.     Information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Del Genio* (the "**Del Genio Declaration**"), which has been filed with this Court contemporaneously with the Motion.

## Jurisdiction

5.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013–1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **Relief Requested**

6.      To ensure the uninterrupted supply of electricity, natural gas, water, sewer, telecommunications, and other utility services (collectively, the "**Utility Services**"), as that term is used in section 366 of the Bankruptcy Code, which are critical to the operations of the Debtors' businesses, by the Motion, the Debtors request, pursuant to sections 366 and 105(a) of the Bankruptcy Code, entry of interim and final orders (i) approving the Debtors' proposed form of adequate assurance of payment for postpetition Utility Services, (ii) establishing procedures for providing adequate assurance and resolving objections by Utility Providers (as hereinafter defined) relating to the adequacy of the proposed adequate assurance, and (iii) prohibiting the Utility Providers from altering, refusing, or discontinuing service to, or discriminating against, the Debtors because of the commencement of these chapter 11 cases or a debt that is owed by the Debtors for Utility Services rendered prior to the Petition Date.

7.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**") and, pending a final hearing on the relief requested herein, on a final basis as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

### Debtors' Utilities

**A.    Utility Providers**

8.    In the ordinary course of their businesses, the Debtors incur expenses for various Utility Services.  Approximately twenty-one (21) utility providers (collectively, the "**Utility Providers**") provide Utility Services to the Debtors as of the Petition Date.  A non-exclusive list of the Debtors' Utility Providers (the "**Utility Service List**") is attached hereto as **Exhibit C**.[2]  On average, the Debtors spend approximately $250,000 each month on utility costs. The Debtors have a good payment history with the Utility Providers.  To the best of the Debtors' knowledge, there are no defaults or material arrearages for the Debtors' undisputed invoices for prepetition Utility Services other than payment interruptions that may be caused by the commencement of these cases.

9.    Uninterrupted Utility Services are essential to the Debtors' ongoing operations and, therefore, the success of the Debtors' reorganization.  The Debtors' business operations require them to maintain constant communications with their offices, data centers, and retail partners, which requires, among other things, uninterrupted electricity and telecommunications services.  Should any Utility Provider alter, refuse, or discontinue service, even briefly, the Debtors' business operations could be severely disrupted, which would jeopardize the Debtors' reorganization efforts and negatively impact the Debtors' businesses (which, in turn, could impair the recoveries of the Debtors' primary creditor constituencies).

10.    Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse, or discontinue a debtor's utility service if the utility does not receive from the debtor

---

[2]  The Debtors reserve the right to amend or supplement the Utility Service List to include any Utility Provider omitted. The inclusion (or exclusion) of any entity on the Utility Service List is not an admission that such entity is (or is not) a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

within thirty (30) days of the commencement of the debtor's chapter 11 case "adequate assurance of payment" for postpetition utility services.  Section 366(c)(1) of the Bankruptcy Code defines "assurance of payment" of postpetition charges as "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee."  As set forth in detail below, the Debtors propose to provide the Utility Providers adequate assurance of payment for postpetition utility services.

**B.      Proposed Adequate Assurance**

11.    The Debtors intend to pay postpetition obligations owed to the Utility Providers in a timely manner and expect sufficient cash flows from operations and the Debtors' proposed debtor-in-possession financing (the "**DIP Financing**") to pay such obligations in the ordinary course of business.  Nevertheless, to provide the Utility Providers with adequate assurance pursuant to section 366 of the Bankruptcy Code, the Debtors also propose to deposit into a newly-created, segregated, interest-bearing bank account (the "**Adequate Assurance Account**") a sum equal to the cost of two (2) weeks' worth of the average utility cost for each Utility Provider (less any amounts already on deposit with any such Utility Provider that exceed outstanding prepetition amounts owed to such Utility Provider)[3] (collectively, the "**Adequate Assurance Deposit**").  As of the Petition Date, the Debtors estimate that the Adequate Assurance Deposit would total approximately $120,000.

12.    The Adequate Assurance Deposit will be held by the Debtors in the Adequate Assurance Account for the benefit of the Utility Providers identified on the Utility Service List during the pendency of these chapter 11 cases.

---

[3] To the extent that any Utility Provider holds or will hold any cash deposit from the Debtors that is in excess of two (2) weeks' worth of the average utility cost, the Debtors reserve their right to demand such excess amounts.

13.    The Adequate Assurance Deposit may be increased or decreased by the Debtors if, among other things, the Debtors terminate any of the utility services provided by a Utility Provider, make alternative arrangements with a Utility Provider for adequate assurance of payment, determine that an entity listed on the Utility Service List is not a "utility provider" as defined by section 366 of the Bankruptcy Code, or supplement the Utility Service List to include additional Utility Providers.

14.    The Debtors further request authority to cause the Adequate Assurance Deposit and any funds held in the Adequate Assurance Account to be returned to the Debtors (or the Reorganized Debtors, as the case may be) upon the effective date of a chapter 11 plan or such other time as these cases may be closed without further order of the Court.

15.    The Debtors submit that the Adequate Assurance Deposit, in conjunction with cash flow from operations, cash on hand, the use of the Debtors' DIP Financing, and any existing cash deposits held by the Utility Providers, demonstrates the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively, the "**Proposed Adequate Assurance**"), constitute sufficient adequate assurance to the Utility Providers.

C.    **Proposed Adequate Assurance Procedures and the Resolution of Objections**

16.    The Debtors propose that the procedures described below (the "**Adequate Assurance Procedures**") be utilized in connection with the Proposed Adequate Assurance:

    a.    The Debtors will fax, e-mail, serve by overnight mail, or otherwise expeditiously cause a copy of this Motion, the Proposed Interim Order, and the Proposed Final Order (upon entry of the Proposed Final Order, the "**Utilities Order**"), which include the proposed Adequate Assurance Procedures, to be served on each Utility Provider within two (2) business days after entry of the Utilities Order.

    b.    The Debtors will deposit the Adequate Assurance Deposit in the Adequate Assurance Account within twenty (20) calendar days after entry of the Utilities Order; provided that to the extent any Utility Provider receives any other value from the Debtors as adequate assurance of payment (such

as deposits held by a Utility Provider), the Debtors may, upon agreement with the Utility Provider, reduce the Adequate Assurance Deposit maintained in the Adequate Assurance Account on account of such Utility Provider by the amount of such other value.

c.     Any Utility Provider seeking additional assurances of payment in the form of deposits, prepayments or otherwise must serve a request for additional assurance (an "**Additional Assurance Request**") so that it is actually received by the Adequate Assurance Notice Parties (as defined below) at the following addresses: (i) Checkout Holding Corp., 200 Carillon Parkway, St. Petersburg, FL 33716, (Attn: David Glogoff, Esq.); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, (Attn: Gary T. Holtzer, Esq., Ronit J. Berkovich, Esq., and Kevin Bostel, Esq.); and (iii) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801, (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.); (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.); (v) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.); (vi) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Robert A. Britton, Esq. and Miriam Levi, Esq.); and (vii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.) (collectively, the "**Adequate Assurance Notice Parties**").

d.     Any Additional Assurance Request must (i) be made in writing and actually received by the Debtors and the other Adequate Assurance Notices Parties, (ii) set forth the location for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including the amounts of any security deposits, and (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

e.     If a Utility Provider believes it is entitled to additional adequate assurance but fails to serve on the Adequate Assurance Notice Parties an Additional Assurance Request, such Utility Provider shall be (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (ii) prohibited from discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of the commencement of the Debtors' chapter 11 cases and/or any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

f.     Upon receipt of any Additional Assurance Request as provided herein, the Debtors shall have until the later of (i) twenty (20) days after receipt of

such Additional Assurance Request, (ii) thirty (30) days after entry of the Utilities Order, or (iii) such date as may be agreed to by the Debtors and the relevant Utility Provider (collectively, the "**Resolution Period**") to negotiate with such Utility Provider to resolve its Additional Assurance Request.

g.      The Debtors may, in their sole discretion and without further order of the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and may, in connection with any such agreement, in their sole discretion, provide a Utility Provider with additional adequate assurance of future payment, which may include, but shall not be limited to, cash deposits, prepayments or other forms of security, in each case, without further order of the Court.

h.      If the Debtors are not able to reach a resolution with a Utility Provider that has submitted an Adequate Assurance Request during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurance of payment with respect to the Utility Provider (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code, and such Determination Hearing shall be scheduled for the next omnibus hearing date for which shortened notice is not required.

i.      Pending resolution of such dispute at the Determination Hearing, the relevant Utility Provider shall be prohibited from discontinuing, altering, or refusing service to the Debtors on account of the commencement of these chapter 11 cases, any unpaid charges for prepetition services provided to any of the Debtors by the Utility Provider, or any objections to the Proposed Adequate Assurance.

j.      Absent compliance with the Adequate Assurance Procedures and the terms of the Utilities Order, the Debtors' Utility Providers are prohibited from altering, refusing, or discontinuing service on account of the commencement of these chapter 11 cases and/or any unpaid charges for prepetition services provided to any of the Debtors and are deemed to have received adequate assurance of payment in accordance with section 366 of the Bankruptcy Code.

## D.      Subsequent Modifications of Utility Service List

17.      The Debtors have made an extensive and good-faith effort to identify all of their Utility Providers and include them on the Utility Service List.  Nonetheless, to the extent that the Debtors subsequently identify additional Utility Providers or determine that any such party listed on the Utility Service List is not in fact a Utility Provider, the Debtors seek authority,

in their sole discretion, to amend the Utility Service List as appropriate.  The Debtors further request that the Court's order approving this Motion be deemed to apply to any such subsequently identified Utility Provider, regardless of when such Utility Provider is added to the Utility Service List.  The Debtors will serve a copy of this Motion and order on any such Utility Provider subsequently added to the Utility Service List and, as soon as commercially practicable (and only to the extent necessary), deposit two weeks' worth of estimated utility costs in the Adequate Assurance Account for the benefit of such Utility Provider (less any amounts on deposit with any such subsequently added Utility Provider that exceed outstanding prepetition amounts).  Subsequently added Utility Providers shall make an Additional Assurance Request in accordance with the Adequate Assurance Procedures.

18.    Any Utility Provider subsequently added to the Utility Service List that objects to the entry of the order approving this Motion with respect to such Utility Provider must file an objection in accordance with the Bankruptcy Rules, the Local Rules, and the Adequate Assurance Procedures.

19.    The Debtors request that all Utility Providers, including Utility Providers subsequently added to the Utility Service List, be prohibited from altering, refusing, or discontinuing utility services to the Debtors absent further order of the Court.

**<u>Basis for Relief Requested</u>**

20.    The relief requested will ensure that the Debtors' operations will not be disrupted, which would severely impact their business and prospects for a successful reorganization.  The relief requested also provides the Utility Providers with a fair and orderly procedure for determining requests for Additional Adequate Assurance, without which the Debtors could be forced to address myriad requests by Utility Providers in a disorganized

manner at a critical period in these chapter 11 cases when the Debtors' efforts should be more productively focused on operations for the benefit of all parties in interest.

21.     Congress enacted section 366 of the Bankruptcy Code to protect debtors from being cut off from utility services upon a bankruptcy filing while providing utility companies with adequate assurance that debtors will be able to pay for postpetition services.  *See* H.R. Rep. No. 95-595 at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306.  To that end, pursuant to section 366(c) of the Bankruptcy Code, during the first thirty (30) days of a chapter 11 case, a utility company may not alter, refuse, or discontinue service to a debtor solely because of any unpaid prepetition amounts, but after the first thirty (30) days, the utility company may alter, refuse, or discontinue service if a debtor does not provide "adequate assurance" of payment for postpetition services in satisfactory form.

22.     Section 366(c)(3)(B) of the Bankruptcy Code provides a list of factors that courts are *not* to consider when evaluating whether a proposed adequate assurance payment is in fact adequate.  These factors not to be considered are: (i) the absence of security before the petition date; (ii) a debtor's history of timely payments; and (iii) the availability of administrative expense priority.  Although section 366(c) clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress, in enacting that section, did not divest this Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Provider.  *See* 11 U.S.C. § 366(c)(3)(A).  Specifically, section 366(c)(3)(A) states that, "[o]n request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment . . . ."  Thus, there is nothing to prevent a court from deciding that, on the facts of the case before it, the amount required of the debtor to provide adequate assurance of

payment to a utility company should be nominal or even zero. *See, e.g.*, *In re Pac-West Telecomm., Inc.*, Case No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) (D.I. 39) (approving adequate assurance in the form of a one-time supplemental prepayment to each utility company equal to the prorated amount of one week's charges).

   23. Although section 366(c)(2) of the Bankruptcy Code allows a utility provider to take action if a debtor fails to provide adequate assurance of payment that is "satisfactory" to the utility, it is this Court and not the utility provider that ultimately determines what constitutes "satisfactory" assurance. *See, e.g.*, *In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposit was necessary if such deposit would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"). Indeed, section 366 only requires that assurance of payment be "adequate" and courts have not construed section 366 to require an absolute guarantee of a debtor's ability to pay. *See, e.g.*, *In re Caldor, Inc. – N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc. – N.Y.*, 117 F.3d 646 (2d Cir. 1997); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008) ("Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment.") (citation omitted); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment . . . .").

24.     Furthermore, courts consider what is "need[ed] of the utility for assurance, and . . . require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power*, 117 F.3d at 650 (emphasis in original); *see also In re Penn Central*, 467 F.2d at 103–04.  Indeed, "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full."  *In re The Great Atl. & Pac. Tea Co.*, Case No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (citations omitted).

25.     Based upon the foregoing, the Debtors believe that most, if not all, of their Utility Providers have adequate assurance of payment even without the Adequate Assurance Deposit.  The Debtors anticipate having sufficient resources to pay, and intend to pay, all valid postpetition obligations for utility services in a timely manner.  In addition, the Debtors' reliance on utility services for the operation of their business and preservation of value of their assets provides them with a powerful incentive to stay current on their utility obligations.  These factors, which the Court may consider when determining the amount of any adequate assurance payments, justify finding that the Debtors are not required to make any additional adequate assurance payments in these chapter 11 cases beyond what is provided for herein.  In light of the foregoing, the Debtors respectfully submit that the Proposed Adequate Assurance is more than sufficient to assure the Utility Providers of future payment.

26.     Absent the approval of the Adequate Assurance Procedures, Utility Providers could discontinue service, without warning, thirty (30) days from the Petition Date, if they claim they have not yet received a "satisfactory" adequate assurance payment.  Under the Adequate Assurance Procedures, however, any Utility Provider that fails to file a timely

Additional Assurance Request shall be deemed to consent to the Adequate Assurance Procedures and shall be bound by the Proposed Order. *See In re Syroco, Inc.*, 374 B.R. 60, 62 (Bankr. D.P.R. Aug. 22, 2007) (a utility provider's lack of objection, response or counter-demand after receiving notice of hearing on a utilities motion, notice of interim order and notice of final hearing constitutes tacit acceptance of the debtor's proposed two-week cash deposit as adequate assurance of payment as such term is used in section 366 of the Bankruptcy Code).

27.    The Adequate Assurance Procedures are necessary for the Debtors to effectuate a successful reorganization.  If the Adequate Assurance Procedures are not approved, the Debtors likely will be confronted with and forced to address myriad requests by their Utility Providers at a critical point in their chapter 11 cases.  Moreover, the Debtors could be blindsided by a Utility Provider unilaterally deciding—on or after the thirtieth (30th) day following the Petition Date—that it is not adequately protected and, therefore, either will make an exorbitant demand for payment to continue service or discontinue providing service to the Debtors altogether.  Such an outcome could seriously jeopardize the health of the Debtors' businesses and their ability to maximize recoveries for their stakeholders.

28.    Under the circumstances of these cases, the Debtors believe that the establishment of a cash reserve in a bank account, in an amount that is substantial, relative to the Debtors' average usage, constitutes adequate assurance of payment under section 366(c) of the Bankruptcy Code.

29.    The Court has the authority to approve these Adequate Assurance Procedures pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, which provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  The Adequate Assurance

Procedures are necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code without prejudicing the Utility Providers.  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

30.    Based on the foregoing, the Debtors respectfully submit that the relief requested herein is necessary and appropriate, is in the best interest of the Debtors' estates, and should be granted in all respects.

### <u>Reservation of Rights</u>

31.    Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) an agreement or obligation to pay any claims, (iii) an admission as to the validity of any liens satisfied pursuant to this Motion, (iv) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (v) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### The Debtors Satisfy Bankruptcy Rule 6003

32.    Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  Fed. R. Bankr. P. 6003(b).  As described above, the Debtors require utility services to maintain their business operations and would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.  Any lapse in utility services could severely disrupt the Debtors' business operations, essentially bringing their operations to a standstill, and thus jeopardize the Debtors' ability to successfully reorganize.  If any Utility Provider were to refuse or discontinue service, even for a brief period, the Debtors' estates would suffer immediate and irreparable harm if the relief sought herein were not promptly granted.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

### Bankruptcy Rules 6004(a) and (h)

33.    The Debtors believe that, under the circumstances of these chapter 11 cases, notice of the Motion, as set forth below, is adequate under Bankruptcy Rule 6004(a). Notwithstanding any applicability of the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), the Debtors respectfully request that the Motion be approved and the relief requested be immediately effective and enforceable.

### Notice

34.    Notice of this Motion shall be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the thirty (30) largest unsecured

claims against the Debtors (on a consolidated basis); (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.), as counsel to the DIP lenders and the ad hoc group of lenders under the First Lien Credit Agreement; (v) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq. and Robert A. Britton, Esq.) and Young Conaway Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.), as counsel to an ad hoc group of certain holders of term loans under the Second Lien Term Loan, dated as of April 9, 2014; (vi) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M. Resnick, Esq.) and Landis Rath & Cobb LLP, 919 Market Street, Wilmington, DE 19801 (Attn: Adam Landis, Esq. and Kerri Mumford, Esq.), as counsel to JPMorgan Chase Bank, N.A., as administrative agent under the First Lien Credit Agreement; (vii) Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007 (Attn: Andrew N. Goldman, Esq.), as counsel to Wilmington Savings Fund Society, FSB, as administrative agent under the Second Lien Credit Agreement; (viii) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.), as counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation; (ix) the Internal Revenue Service; (x) the United States Attorney's Office for the District of Delaware; (xi) the Banks; and (xii) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**"). As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of the Motion as

required by Local Rule 9013-1(m).    The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

35.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of Page Intentionally Left Blank.*]

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and, following the Final Hearing (if one is required), the Proposed Final Order, in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as this Court may deem just and appropriate.

Dated: December 12, 2018
      Wilmington, Delaware

<div style="margin-left:40%">

*/s/ Jason M. Madron*

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

Gary T. Holtzer (*pro hac vice* admission pending)
Ronit J. Berkovich (*pro hac vice* admission pending)
Jessica Liou (*pro hac vice* admission pending)
Kevin Bostel (*pro hac vice* admission pending)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

</div>

RLF1 20430306V.1

**<u>Exhibit A</u>**

**Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- X
                                           :
In re                                      :          **Chapter 11**
                                           :
**CHECKOUT HOLDING CORP.**, *et al.*,      :          **Case No. 18-[_____] (___)**
                                           :
                    Debtors.[1]            :          **Joint Administration Requested**
                                           :
----------------------------------------------------------- X

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS, (II) ESTABLISHING PROCEDURES PROVIDING ADEQUATE ASSURANCE AND RESOLVING OBJECTIONS BY UTILITY PROVIDERS, AND (III) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICE

Upon the motion (the "**Motion**")[2] of Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a) and 366 of the Bankruptcy Code, for an order (i) approving the Debtors' proposed form of adequate assurance of payment for postpetition Utility Services; (ii) establishing procedures for providing adequate assurance and resolving objections by Utility Providers relating to the adequacy of the proposed adequate assurance; and (iii) prohibiting the Utility Providers from altering, refusing, or discontinuing service to, or discriminating against, the Debtors because of the commencement of these chapter

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

11 cases or a debt that is owed by the Debtors for Utility Services rendered prior to the Petition Date, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided to the Notice Parties, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the Del Genio Declaration, filed contemporaneously with the Motion, the record of the Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

<div align="center">

**IT IS HEREBY ORDERED THAT:**

</div>

1.  The Motion is granted on an interim basis.

2.  Absent compliance with the procedures set forth in the Motion and this Interim Order, the Debtors' utility providers (the "**Utility Providers**"), including without

<div align="center">3</div>

limitation those listed on **Exhibit C** of the Motion (the "**Utility Service List**"), are prohibited from altering, refusing, or discontinuing service on account of the commencement of these chapter 11 cases and/or any unpaid prepetition charges and are deemed to have received adequate assurance of payment in accordance with section 366 of the Bankruptcy Code.

3.      As adequate assurance, the Debtors shall deposit $145,468 (the "**Adequate Assurance Deposit**") into a segregated bank account (the "**Adequate Assurance Account**"); provided that to the extent any Utility Provider receives any other value from the Debtors on account of adequate assurance, upon agreement with the Utility Provider, the Debtors may reduce the Adequate Assurance Deposit maintained in the Adequate Assurance Account by such amount.

4.      The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors on the effective date of a plan of reorganization in these chapter 11 cases or such other time as these cases may be closed without further Court order, if not applied earlier; provided that there are no outstanding disputes relating to postpetition amounts due to such Utility Provider.

5.      The Adequate Assurance Deposit, in conjunction with the Debtors' cash on hand, cash flow from operations, the Debtors' proposed debtor-in-possession financing, and any existing cash deposits held by the Utility Providers, demonstrate the Debtors' ability to pay for future utility services in the ordinary course of business (together, the "**Proposed Adequate Assurance**") and constitute sufficient adequate assurance to the Utility Providers.

6.      The following Adequate Assurance Procedures are hereby approved:

a.      The Debtors will fax, e-mail, serve by overnight mail, or otherwise expeditiously cause a copy of the Motion, this Proposed Interim Order, and the Proposed Final Order (upon entry of the Proposed Final Order, the "**Utilities Order**"), which include the proposed Adequate Assurance

4

Procedures, to be served on each Utility Provider within two (2) business days after entry of the Utilities Order.

b.    The Debtors will deposit the Adequate Assurance Deposit in the Adequate Assurance Account within twenty (20) calendar days after entry of the Utilities Order; provided that to the extent any Utility Provider receives any other value from the Debtors as adequate assurance of payment (such as deposits held by a Utility Provider), the Debtors may, upon agreement with the Utility Provider, reduce the Adequate Assurance Deposit maintained in the Adequate Assurance Account on account of such Utility Provider by the amount of such other value.

c.    Any Utility Provider seeking additional assurances of payment in the form of deposits, prepayments or otherwise must serve a request for additional assurance (an "**Additional Assurance Request**") so that it is actually received by the Adequate Assurance Notice Parties (as defined below) at the following addresses: (i) Checkout Holding Corp., 200 Carillon Parkway, St. Petersburg, FL 33716, (Attn: David Glogoff, Esq.); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, (Attn: Gary T. Holtzer, Esq., Ronit J. Berkovich, Esq., and Kevin Bostel, Esq.); and (iii) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801, (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.); (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.); (v) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.); (vi) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Robert A. Britton, Esq. and Miriam Levi, Esq.); and (vii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.) (collectively, the "**Adequate Assurance Notice Parties**").

d.    Any Additional Assurance Request must (i) be made in writing and actually received by the Debtors and the other Adequate Assurance Notice Parties, (ii) set forth the location for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including the amounts of any security deposits, and (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

e.    If a Utility Provider believes it is entitled to additional adequate assurance but fails to serve on the Adequate Assurance Notice Parties an Additional Assurance Request, such Utility Provider shall be (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (ii) prohibited from discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of the commencement of

the Debtors' chapter 11 cases and/or any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

f.      Upon receipt of any Additional Assurance Request as provided herein, the Debtors shall have until the later of (i) twenty (20) days after receipt of such Additional Assurance Request, (ii) thirty (30) days after entry of the Utilities Order, or (iii) such date as may be agreed to by the Debtors and the relevant Utility Provider (collectively, the "**Resolution Period**") to negotiate with such Utility Provider to resolve its Additional Assurance Request.

g.      The Debtors may, in their sole discretion and without further order of the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and may, in connection with any such agreement, in their sole discretion, provide a Utility Provider with additional adequate assurance of future payment, which may include, but shall not be limited to, cash deposits, prepayments or other forms of security, in each case, without further order of the Court.

h.      If the Debtors are not able to reach a resolution with a Utility Provider that has submitted an Adequate Assurance Request during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurance of payment with respect to the Utility Provider (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code, and such Determination Hearing shall be scheduled for the next omnibus hearing date for which shortened notice is not required.

i.      Pending resolution of such dispute at the Determination Hearing, the relevant Utility Provider shall be prohibited from discontinuing, altering, or refusing service to the Debtors on account of the commencement of these chapter 11 cases, any unpaid charges for prepetition services provided to any of the Debtors by the Utility Provider, or any objections to the Proposed Adequate Assurance.

j.      Absent compliance with the Adequate Assurance Procedures and the terms of the Utilities Order, the Debtors' Utility Providers are prohibited from altering, refusing, or discontinuing service on account of the commencement of these chapter 11 cases and/or any unpaid charges for prepetition services provided to any of the Debtors and are deemed to have received adequate assurance of payment in accordance with section 366 of the Bankruptcy Code.

7.      The Debtors are authorized, in their sole discretion, to amend the Utility

Service List to add or delete any Utility Provider, and this Interim Order shall apply to any

Utility Provider that is subsequently added to the Utility Service List.  Any such amended Utility Service List shall be filed with the Court.

8.    The inclusion of any entity on, or the omission of any entity from, the Utility Service List shall not be deemed an admission by the Debtors that such entity is or is not a "utility" within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights and defenses with respect thereto.

9.    For those Utility Providers that are subsequently added to the Utility Service List, the Debtors will serve a copy of this Interim Order on the subsequently added Utility Provider and deposit two (2) weeks' worth of estimated utility costs in the Adequate Assurance Account for the benefit of such Utility Provider (less any amounts already on deposit with any such Utility Provider), and any such subsequently added entities shall make any Additional Assurance Requests in accordance with the Adequate Assurance Procedures.

10.    The Debtors may terminate the services of any Utility Provider and are immediately authorized to reduce the Adequate Assurance Deposit by the amount held on account of such terminated Utility Provider.

11.    Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

12.    Notwithstanding anything contained in the Motion or this Interim Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "**DIP Order**"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession

financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms of any DIP Order and any action taken or proposed to be taken by the Debtors hereunder, the terms of the DIP Order shall control.

13.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

14.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Local Rules.

15.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

16.     The Final Hearing on the Motion shall be held on  _____, **2018, at _____ (Eastern Standard Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq., Ronit J. Berkovich, Esq., and Kevin Bostel, Esq.) and (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.),  and (ii) the Notice Parties; in each case, so as to be actually received on or prior to **4:00 p.m. (Eastern Standard Time) on** _____**, 2018**.

17.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

18.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Interim Order.

19.     The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

Dated: _____, 2018
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Proposed Final Order**

RLF1 20430306V.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
                                      :

In re                                :           **Chapter 11**
                                        :

**CHECKOUT HOLDING CORP.**, *et al.*,     :        **Case No. 18-[_____] (___)**
                                        :

                Debtors.[1]             :        **Joint Administration Requested**
                                        :

-------------------------------------------------------- X

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS, (II) ESTABLISHING PROCEDURES PROVIDING ADEQUATE ASSURANCE AND RESOLVING OBJECTIONS BY UTILITY PROVIDERS, AND (III) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICE

Upon the motion (the "**Motion**")[2] of Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a) and 366 of the Bankruptcy Code, for an order (i) approving the Debtors' proposed form of adequate assurance of payment for postpetition Utility Services; (ii) establishing procedures for providing adequate assurance and resolving objections by Utility Providers relating to the adequacy of the proposed adequate assurance; and (iii) prohibiting the Utility Providers from altering, refusing, or discontinuing service to, or discriminating against, the Debtors because of the commencement of these chapter

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

11 cases or a debt that is owed by the Debtors for Utility Services rendered prior to the Petition Date, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided to the Notice Parties, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; this Court having held a hearing to consider the relief requested in the Motion on a final basis (the "**Hearing**"); and this Court having entered an order granting the relief requested in the Motion; and upon the Del Genio Declaration, filed contemporaneously with the Motion, the record of the Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

<div align="center">

**IT IS HEREBY ORDERED THAT:**

</div>

1.      The Motion is granted on a final basis.

2.      Absent compliance with the procedures set forth in the Motion and this Final Order, the Debtors' utility providers (the "**Utility Providers**"), including without limitation those listed on **<u>Exhibit C</u>** of the Motion (the "**Utility Service List**"), are prohibited from altering, refusing, or discontinuing service on account of the commencement of these chapter 11

<div align="center">2</div>

cases and/or any unpaid prepetition charges and are deemed to have received adequate assurance of payment in accordance with section 366 of the Bankruptcy Code.

3.     As adequate assurance, the Debtors shall deposit $145,468 (the "**Adequate Assurance Deposit**") into a segregated bank account (the "**Adequate Assurance Account**"); provided that to the extent any Utility Provider receives any other value from the Debtors on account of adequate assurance, upon agreement with the Utility Provider, the Debtors may reduce the Adequate Assurance Deposit maintained in the Adequate Assurance Account by such amount.

4.     The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors on the effective date of a plan of reorganization in these chapter 11 cases or such other time as these cases may be closed without further Court order, if not applied earlier; provided that there are no outstanding disputes relating to postpetition amounts due to such Utility Provider.

5.     The Adequate Assurance Deposit, in conjunction with the Debtors' cash on hand, cash flow from operations, the Debtors' proposed debtor-in-possession financing, and any existing cash deposits held by the Utility Providers, demonstrate the Debtors' ability to pay for future utility services in the ordinary course of business (together, the "**Proposed Adequate Assurance**") and constitute sufficient adequate assurance to the Utility Providers.

6.     The following Adequate Assurance Procedures are hereby approved:

a.     The Debtors will fax, e-mail, serve by overnight mail, or otherwise expeditiously cause a copy of the Motion, the Proposed Interim Order, and this Proposed Final Order (upon entry of the Proposed Final Order, the "**Utilities Order**"), which include the proposed Adequate Assurance Procedures, to be served on each Utility Provider within two (2) business days after entry of the Utilities Order.

b.     The Debtors will deposit the Adequate Assurance Deposit in the Adequate Assurance Account within twenty (20) calendar days after entry of the

Utilities Order; provided that to the extent any Utility Provider receives any other value from the Debtors as adequate assurance of payment (such as deposits held by a Utility Provider), the Debtors may, upon agreement with the Utility Provider, reduce the Adequate Assurance Deposit maintained in the Adequate Assurance Account on account of such Utility Provider by the amount of such other value.

c.    Any Utility Provider seeking additional assurances of payment in the form of deposits, prepayments or otherwise must serve a request for additional assurance (an "**Additional Assurance Request**") so that it is actually received by the Adequate Assurance Notice Parties (as defined below) at the following addresses: (i) Checkout Holding Corp., 200 Carillon Parkway, St. Petersburg, FL 33716, (Attn: David Glogoff, Esq.); (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, (Attn: Gary T. Holtzer, Esq., Ronit J. Berkovich, Esq., and Kevin Bostel, Esq.); and (iii) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, DE 19801, (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.); (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.); (v) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.); (vi) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Robert A. Britton, Esq. and Miriam Levi, Esq.); and (vii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.) (collectively, the "**Adequate Assurance Notice Parties**").

d.    Any Additional Assurance Request must (i) be made in writing and actually received by the Debtors and the other Adequate Assurance Notice Parties, (ii) set forth the location for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including the amounts of any security deposits, and (iv) set forth why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

e.    If a Utility Provider believes it is entitled to additional adequate assurance but fails to serve on the Adequate Assurance Notice Parties an Additional Assurance Request, such Utility Provider shall be (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (ii) prohibited from discontinuing, altering, or refusing service to, or discriminating against, the Debtors on account of the commencement of the Debtors' chapter 11 cases and/or any unpaid prepetition charges, or requiring additional assurance of payment other than the Proposed Adequate Assurance.

RLF1 20430306V.1

f.     Upon receipt of any Additional Assurance Request as provided herein, the Debtors shall have until the later of (i) twenty (20) days after receipt of such Additional Assurance Request, (ii) thirty (30) days after entry of the Utilities Order, or (iii) such date as may be agreed to by the Debtors and the relevant Utility Provider (collectively, the "**Resolution Period**") to negotiate with such Utility Provider to resolve its Additional Assurance Request.

g.     The Debtors may, in their sole discretion and without further order of the Court, resolve any Additional Assurance Request by mutual agreement with a Utility Provider, and may, in connection with any such agreement, in their sole discretion, provide a Utility Provider with additional adequate assurance of future payment, which may include, but shall not be limited to, cash deposits, prepayments or other forms of security, in each case, without further order of the Court.

h.     If the Debtors are not able to reach a resolution with a Utility Provider that has submitted an Adequate Assurance Request during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before the Court to determine the adequacy of assurance of payment with respect to the Utility Provider (the "**Determination Hearing**") pursuant to section 366(c)(3) of the Bankruptcy Code, and such Determination Hearing shall be scheduled for the next omnibus hearing date for which shortened notice is not required.

i.     Pending resolution of such dispute at the Determination Hearing, the relevant Utility Provider shall be prohibited from discontinuing, altering, or refusing service to the Debtors on account of the commencement of these chapter 11 cases, any unpaid charges for prepetition services provided to any of the Debtors by the Utility Provider, or any objections to the Proposed Adequate Assurance.

j.     Absent compliance with the Adequate Assurance Procedures and the terms of the Utilities Order, the Debtors' Utility Providers are prohibited from altering, refusing, or discontinuing service on account of the commencement of these chapter 11 cases and/or any unpaid charges for prepetition services provided to any of the Debtors and are deemed to have received adequate assurance of payment in accordance with section 366 of the Bankruptcy Code.

7.     The Debtors are authorized, in their sole discretion, to amend the Utility Service List to add or delete any Utility Provider, and this Final Order shall apply to any Utility Provider that is subsequently added to the Utility Service List. Any such amended Utility Service List shall be filed with the Court.

RLF1 20430306V.1

8.      The inclusion of any entity on, or the omission of any entity from, the Utility Service List shall not be deemed an admission by the Debtors that such entity is or is not a "utility" within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights and defenses with respect thereto.

9.      For those Utility Providers that are subsequently added to the Utility Service List, the Debtors will serve a copy of this Final Order on the subsequently added Utility Provider and deposit two (2) weeks' worth of estimated utility costs in the Adequate Assurance Account for the benefit of such Utility Provider (less any amounts already on deposit with any such Utility Provider), and any such subsequently added entities shall make any Additional Assurance Requests in accordance with the Adequate Assurance Procedures.

10.     The Debtors may terminate the services of any Utility Provider and are immediately authorized to reduce the Adequate Assurance Deposit by the amount held on account of such terminated Utility Provider.

11.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

12.     Notwithstanding anything contained in the Motion, the Interim Order, or this Final Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "**DIP Order**"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.    To the extent there is any

RLF1 20430306V.1

inconsistency between the terms of any DIP Order and any action taken or proposed to be taken by the Debtors hereunder, the terms of the DIP Order shall control.

13.    Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Local Rules.

14.    Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

15.    This Final Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Final Order.

16.    The Debtors are authorized to take all actions necessary to implement the relief granted in this Final Order.

17.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order.

Dated: _____, 2018
       Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit C</u>**

**Utility Service List**

| Utility Provider | Provider Address | Type of Service | Account Number | Current Deposit (If Any) | Adequate Assurance Deposit |
|---|---|---|---|---|---|
| American Registry For Internet | PO Box 232290 Centreville, VA 20120 | Phone | CMC-6 | | $6 |
| ACC Business | 400 West Ave. Rochester, NY 14611 | Internet | 00001200888 | | $789 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Phone | 879034249 | | $17 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Internet | 831-000-2437 019 | | $2,991 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Internet | 8002-458-4668 | | $3,709 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Internet | 8002-482-4288 | | $4,423 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Internet | 831-000-6782 885 | | $928 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Phone | 1800-001-3617 | | $4,276 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Phone | 408 324-0601 704 4 | | $55 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Phone | 999 009-6157 478 | | $97 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Phone | 407 352-0927 001 3141 | | $184 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Phone | 847 619-5818 367 5 | | $114 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | Phone | 05956669-00001 | | $10,428 |
| AT&T | 4331 Communications Dr. Floor 4W Dallas, TX 75211 | VPN Service | 831-000-7600-317 | | $5,464 |
| CenturyLink | 1025 Eldorado Blvd. Broomfield, CO 80021 | Internet | 1-9LVLDB | | $4,081 |
| CenturyLink | 1025 Eldorado Blvd. Broomfield, CO 80021 | Internet | 1-DHJ31X | | $195 |
| CenturyLink | 1025 Eldorado Blvd. Broomfield, CO 80021 | Internet | 306316 | | $4,748 |
| CenturyLink | 1025 Eldorado Blvd. Broomfield, CO 80021 | Internet | 0205313692 | | $33,757 |
| Cincinnati Bell | P.O. Box 787 Florence, KY 41022-0787 | Phone | 513P43-3772772 | | $267 |
| Comcast | One Comcast Center, | Cable | 8773 10 313 | | $147 |

| Utility Provider | Provider Address | Type of Service | Account Number | Current Deposit (If Any) | Adequate Assurance Deposit |
|---|---|---|---|---|---|
| | 1701 John F Kennedy Blvd. Philadelphia, PA 19103-2838 | | 0932601 | | |
| Comcast | One Comcast Center, 1701 John F Kennedy Blvd. Philadelphia, PA 19103-2838 | Cable | 8771 30 011 1637207 | | $151 |
| ComEd | PO Box 805379 Chicago, IL 60680-5379 | Electric | 3795486031 | | $155 |
| ComEd | PO Box 805379 Chicago, IL 60680-5379 | Electric | 3795487047 | | $354 |
| ComEd | PO Box 805379 Chicago, IL 60680-5379 | Electric | 7143165018 | | $250 |
| DirectTV | P.O. Box 410347 Charlotte, NC 28241 | Cable | 008970306 | | $89 |
| Duke Energy | PO Box 14042 St. Petersburg, FL 33733 | Electric | 01443 14269 | $93,415 (Florida Power & Duke) | $16,803 |
| Frontier Communications | PO Box 5157 Tampa, FL 33675-5157 | Phone | 727-571-1376-050306-5 | | $421 |
| Jersey Central Power & Light | 76 S. Main St., A-RPC Akron, OH 44308-1890 | Electric | 100 111 711 360 | $250 | $118 |
| Jersey Central Power & Light | 76 S. Main St., A-RPC Akron, OH 44308-1890 | Electric | 1000 111 711 378 | $250 | $150 |
| Masergy | 2740 N. Dallas Pkwy., Ste. 260 Plano, TX 75093 | Internet | MC000391 | | $20,644 |
| Masergy | 2740 N. Dallas Pkwy., Ste. 260 Plano, TX 75093 | Internet | MC000391_1 | | $12,603 |
| Optimum | 6 Corporate Center Dr. Melville, NY 11747 | Cable | 07870-053374-02-2 | | $52 |
| Optimum | 6 Corporate Center Dr. Melville, NY 11747 | Cable | 07866-186595-03-1 | | $68 |
| T-Mobile | PO Box 53410 Bellevue, WA 98015-3410 | Phone | 948734570 | | $661 |
| T-Mobile | PO Box 53410 Bellevue, WA 98015-3410 | Phone | 477983416 | | $30 |
| utiliVisor | 135 W. 35th St. New York, NY 11018 | Electric | #80WP1/CAT | | $40 |
| Verizon | 500 Technology Dr., Ste. 550 Weldon Spring, MO 63304 | Phone | 970762526-00001 | | $64 |
| Verizon | 500 Technology Dr., Ste. 550 Weldon Spring, MO 63304 | Phone | 91398658 | | $933 |
| vXchnge | 1501 W. Cleveland St. Tampa, FL 33606 | Internet | 6370 | | $38 |
| West IP Communications | 401 S. Fourth Street, Ste. 200 Louisville, KY 40202 | Phone | 390CAT | | $4,020 |
| West Safety Services | 1601 Dry Creek Dr. Longmont, CO 80503-6493 | Phone | 19809 | | $125 |
| World One | 15438 N. Florida Ave., Ste. 120 Tampa, FL 33675-5508 | Water Sewer | Catalina Marketing | | $2,859 |

3