## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- X
                                                               :
In re                                                          :          **Chapter 11**
                                                               :
**CHECKOUT HOLDING CORP.**, *et al.*,                          :          **Case No. 18-[_____] (___)**
                                                               :
            **Debtors.**[1]                                    :          **(Joint Administration Requested)**
                                                               :
-------------------------------------------------------------- X

## MOTION OF DEBTORS FOR
## ORDER (I) SCHEDULING COMBINED HEARING
## TO CONSIDER (A) APPROVAL OF DISCLOSURE STATEMENT,
## (B) APPROVAL OF SOLICITATION PROCEDURES AND FORMS OF
## BALLOTS, AND (C) CONFIRMATION OF PREPACKAGED PLAN;
## (II) ESTABLISHING AN OBJECTION DEADLINE TO
## OBJECT TO DISCLOSURE STATEMENT AND PLAN; (III)
## APPROVING THE FORM AND MANNER OF NOTICE
## OF COMBINED HEARING, OBJECTION DEADLINE, AND
## NOTICE OF COMMENCEMENT; (IV) CONDITIONALLY
## WAIVING REQUIREMENT OF FILING STATEMENT OF
## FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES;
## (V) CONDITIONALLY WAIVING REQUIREMENT TO CONVENE THE
## SECTION 341 MEETING OF CREDITORS; AND (VI) GRANTING RELATED
## RELIEF PURSUANT TO SECTIONS 105(A), 341, 521(A), 1125, 1126, AND 1128 OF
## THE BANKRUPTCY CODE AND BANKRUPTCY RULES 1007, 2002, 3017, AND 3018

Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter

11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully

represent as follows in support of this motion (the "**Motion**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); CellFire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

## Relief Requested

1.       Pursuant to sections 105(a), 341, 521(a), 1125, 1126, and 1128 and of title
11 of the United States Code (the "**Bankruptcy Code**"), rules 1007, 2002, 3017, and 3018 of the
Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 1007–1, 1007–2,
3017-1, and 3018-2, of the Local Rules of Bankruptcy Practice and Procedure of the United
States District Court for the District of Delaware (the "**Local Rules**"), the Debtors request entry
of an order:

  i. scheduling a combined hearing (the "**Combined Hearing**") to (a) approve the
Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Checkout
Holding Corp. and Its Affiliated Debtors (as may be amended, modified, or
supplemented from time to time, the "**Disclosure Statement**") and
(b) consider confirmation of the Joint Prepackaged Chapter 11 Plan of
Checkout Holding Corp. and Its Affiliated Debtors (as may be amended,
modified, or supplemented from time to time, the "**Prepackaged Plan**[2]");

  ii. establishing an objection deadline (the "**Objection Deadline**") to object to the
adequacy of the Disclosure Statement or confirmation of the Prepackaged
Plan;

  iii. approving the Solicitation Procedures (as defined herein) with respect to the
Prepackaged Plan, including the forms of Ballots (as defined herein);

  iv. approving the form and manner of notice of the Combined Hearing, the
Objection Deadline, and notice of commencement;

  v. extending the time for the Debtors to file schedules of assets and liabilities
and statements of financial affairs (collectively, the "**Schedules and
Statements**") through and including March 7, 2018 (the "**SOAL/SOFA
Deadline**"), and conditionally waiving the requirement that the Debtors file
the Schedules and Statements upon confirmation of the Prepackaged Plan;

  vi. conditionally waiving the requirement to convene the meeting of creditors
under section 341 of the Bankruptcy Code if the Prepackaged Plan becomes
effective on or before the SOAL/SOFA Deadline; and

---

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to such terms in the
Prepackaged Plan.

2.      A proposed form of order granting the relief requested herein is annexed

hereto as **Exhibit A** (the "**Proposed Order**").

3.      The following table summarizes proposed dates related to relief requested

in the Motion (subject to the Court's calendar), which comply with the milestones contained in

the Restructuring Support Agreement (as defined herein).

| Event | Deadline |
|---|---|
| Voting Record Date | December 10, 2018 |
| Commencement of Solicitation | December 11, 2018 |
| Petition Date | December 12, 2018 |
| Mailing of Combined Notice | December 14, 2018 |
| Plan Supplement Filing Deadline | January 16, 2019 |
| Plan and Disclosure Statement Objection Deadline | January 23, 2019, at 4:00 p.m. (Eastern Standard Time) |
| Plan Voting Deadline | January 23, 2019, at 5:00 p.m. (Eastern Standard Time) |
| Reply Deadline | January 28, 2019, at 5:00 p.m. (Eastern Standard Time) |
| Combined Hearing | January 30, 2019, at 10:00 a.m. (Eastern Time) |
| Section 341(a) Meeting / Schedules and Statements Deadline | March 7, 2019, at 10:00 a.m. (Eastern Standard Time) |

4.      Also, summarized below are the attachments and exhibits cited throughout

this Motion:

| Pleading | Exhibit |
|---|---|
| Proposed Order | Exhibit A to this Motion |
| Combined Notice | Exhibit 1 to the Proposed Order |
| Forms of Beneficial Ballot for First Lien Debt Claims and Second Lien Debt Claims | Exhibits B-1 through B-2 to this Motion |

## Jurisdiction and Venue

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§

157 and 1334, and the *Amended Standing Order of Reference from the United States District*

*Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant

to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      Pursuant to Local Rule 9013–1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## Background

7.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

8.      Before the Petition Date, the Debtors, with the support of their secured lenders began the solicitation of votes on their *Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors* (the "**Prepackaged Plan**"), through their Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtors expect that the Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.  Consistent with their obligations under that certain *Restructuring Support Agreement*, dated as of December 11, 2018, (as amended from time to time and including all exhibits thereto, the "**RSA**"), the Debtors are seeking to emerge from chapter 11 on an expedited timeframe.

9.      Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert A. Del Genio* (the "**Del Genio Declaration**"), which has been filed with this Court contemporaneously herewith.

## The Prepackaged Plan

10.      As described in more detail in the Del Genio Declaration, the Debtors engaged in extensive discussions in late 2017, to explore, in partnership with its creditors, various combinations of cost-rationalization processes and consensual modifications to the Debtors' capital structure that would allow it to continue modernizing its platform and to reverse revenue losses. In the early Spring of 2018, certain holders of claims (the "**First Lien Debt Claims**") arising under that certain First Lien Credit Agreement, dated as of April 9, 2014 (the "**First Lien Agreement**") and certain holders of claims (the "**Second Lien Debt Claims**") arising under that certain Second Lien Credit Agreement, dated as of April 9, 2014 (the "**Second Lien Agreement**") began discussing potential restructuring transactions with a shifted the focus to the terms of a chapter 11 restructuring.  As a result of these negotiations, on December 11, 2018, approximately 93% of the holders of certain First Lien Debt Claims and approximately 78% holders of certain Second Lien Debt Claims (together the, "**Restructuring Support Parties**") entered into a restructuring support agreement (the "**Restructuring Support Agreement**") with the Debtors.  Under the terms of the Restructuring Support Agreement, the Restructuring Support Parties agreed to enter into a deleveraging transaction to restructure the existing debt and other obligations of the Debtors through the Prepackaged Plan (the "**Restructuring**").

RLF1 20430310V.1

11.     In accordance with the terms of the Restructuring Support Agreement, on December 11, 2018, the Debtors commenced a solicitation of votes from all classes entitled to vote under the Bankruptcy Code.  The forty-three (43) day solicitation will end on January 23, 2019 (the "**Solicitation Period**").    Pursuant to the terms of the Restructuring Support Agreement, the Restructuring Support Parties agreed to vote in favor of, and otherwise support, the Prepackaged Plan, provided that certain conditions and milestones are satisfied.

12.     Under the terms of the Prepackaged Plan, the Debtors are proposing a restructuring, with the support of each of the voting classes of claims and interests and certain other interested parties, that, among other things, provides the following:

(i)     An agreement with certain holders of the First Lien Debt Claims to provide financing during the chapter 11 cases in the form of a $275 million debtor-in-possession financing consisting of the both money loans and roll-up loans;

(ii)    Holders of First Lien Debt Claims will receive their pro rata share of 90% of the equity (the "**New Common Stock**") in the reorganized Debtors and the holders of Second Lien Debt Claims will receive their pro rata share of 10% of the New Common Stock, in each case subject to dilution by a contemplated management incentive plan following the effective date of the Prepackaged Plan;

(iii)   Payment in full, in the ordinary course, of the Debtors' general unsecured creditors;

(iv)    Holders of existing equity interests will not receive a recovery under the Prepackaged Plan;

(v)     Negotiation of the Debtors' agreement with The Nielsen Company (US), LLC ("**NCS**") to the satisfaction of its prepetition secured lenders, and if no consensual resolution can be reached, the rejection of the NCS agreement with no recovery to NCS; and

(vi)    Holders of notes issued pursuant to the note purchase agreement, dated as of April 9, 2014 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time) pursuant to which $230 million in aggregate principal amount of unsecured notes issued by PDM Intermediate Holdings B Corporation will receive no distribution.

13.     The Restructuring will leave the Debtors' businesses intact and will substantially delever it by reducing its balance sheet liabilities from approximately $1.9 billion in secured and unsecured debt to approximately $275 million in secured debt upon emergence.

**Basis for Relief Requested**

**I.      Scheduling a Combined Hearing**

14.     The Debtors seek a Combined Hearing to consider approval of the Disclosure Statement, the Solicitation Procedures, and the Prepackaged Plan.  Bankruptcy Rule 3017(a) provides, in part, that "the court shall hold a hearing on at least twenty-eight (28) days' notice . . . to consider the disclosure statement and any objections or modifications thereto." Section 1128(a) of the Bankruptcy Code provides, "After notice, the court shall hold a hearing on confirmation of a plan."   In addition, Bankruptcy Rule 3017(c) provides, "On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of the related plan.

15.     The most sensitive and difficult tasks required to effectuate a successful reorganization—the negotiation of consensual agreements with the Debtors' primary lenders, and the ultimate formulation of a chapter 11 plan of reorganization—have already been concluded in advance of the Petition Date.  As set forth in greater detail in the Del Genio Declaration, the Debtors have begun soliciting votes on the Prepackaged Plan from all classes of holders of Claims entitled to vote to accept or reject the Prepackaged Plan.  It is anticipated that the votes tabulated and received from these classes will be sufficient to confirm the Prepackaged

Plan.  A Combined Hearing would promote judicial economy and is in the best interests of the Debtors and their estates and creditors by enabling all parties in interest to proceed with the confirmation process as expeditiously as possible.

16.     Accordingly, the Debtors respectfully request that the Court schedule the Combined Hearing on January 30, 2019, or as soon thereafter as is practicable in light of the Court's calendar.  The relief sought herein is necessary to the efficient administration of these chapter 11 cases and will protect the rights of all of the Debtors' creditors and interest holders. In addition to the reasons set forth above, it is appropriate to enter the Proposed Order at this time so that parties in interest may be informed as promptly as possible of the anticipated schedule of events for confirmation of the Prepackaged Plan.

17.     The proposed schedule affords creditors and all other parties in interest ample notice of these chapter 11 cases and the Combined Hearing.  The proposed schedule provides a period of fifty (50) days after service of notice of the Confirmation Hearing, during which parties may evaluate the Prepackaged Plan prior to the proposed Combined Hearing thereon.  Consequently, no party in interest will be prejudiced by the requested relief.

## II.     Approval of the Disclosure Statement

18.     The Debtors will also request, at the Confirmation Hearing, that the Court find that the Disclosure Statement contains "adequate information" as defined in section 1125(a) and required by section 1126(b) of the Bankruptcy Code.  *See* 11 U.S.C. §§ 1125(a), 1126(b). The Disclosure Statement contains adequate information to permit holders of Impaired Claims against the Debtors to make an informed judgment about the Prepackaged Plan.  In addition to the Prepackaged Plan itself, the Disclosure Statement includes disclosures regarding (i) the operation of the Debtors' businesses; (ii) key events leading to the commencement of these

chapter 11 cases; (iii) the Debtors' significant prepetition indebtedness; (iv) the proposed capital structure of the Reorganized Debtors; (v) financial information and valuations that would be relevant to creditors' determinations of whether to accept or reject the Prepackaged Plan; (vi) a liquidation analysis setting forth the estimated return that holders of claims and interests would receive in a hypothetical chapter 7 liquidation; (vii) risk factors affecting the Prepackaged Plan; and (viii) federal tax law consequences of the Prepackaged Plan.

19.    The Disclosure Statement and the Solicitation Procedures instituted in connection therewith, including the ballots, are in full compliance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules as well as any applicable nonbankruptcy laws, rules, or regulations governing the adequacy of disclosure in connection with such solicitation. Accordingly, the Debtors will respectfully request that this Court find that the information contained in the Disclosure Statement is "adequate information" as such term is defined in section 1125(a) of the Bankruptcy Code.

### III.    Approval of Solicitation Procedures and Forms of Ballots

20.    The Debtors request that the Court approve the solicitation, balloting, tabulation, and related activities undertaken in connection with the Prepackaged Plan (collectively, the "**Solicitation Procedures**") at the Combined Hearing.

### A.  Classes Presumed to Accept or Deemed to Reject the Prepackaged Plan

21.    Section 1126(f) of the Bankruptcy Code provides that

Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

11 U.S.C. § 1126(f).

22.     The Prepackaged Plan provides that each holder of a Claim or Interest in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims Claims), Class 8 (Intercompany Claims), and Class 11 (Intercompany Interests) are unimpaired.   Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims or interests in each of the foregoing classes are conclusively presumed to have accepted the Prepackaged Plan and, thus, are not entitled to vote.  Accordingly, the Debtors have not solicited votes from such holders.

23.     Section 1126(g) of the Bankruptcy Code provides that

> Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the Prepackaged Plan on account of such claims or interests.

11 U.S.C. § 1126(g).

24.     The holders of claims in Class 6 (NCS Rejection Claims), Class 7 (General Unsecured PDM Claims), Class 9 (Subordinated Claims), and Class 10 (Existing Equity Interests) are impaired and receiving no distributions under the Prepackaged Plan. Pursuant to section 1126(g) of the Bankruptcy Code, the holders of claims or interests in each of the foregoing classes are conclusively presumed to have rejected the Prepackaged Plan and, thus, are not entitled to vote. Accordingly, the Debtors have not solicited votes from such holders.

25.     Additionally, the holders of claims in Class 3 (First Lien Debt Claims) and Class 4 (Second Lien Debt Claims) are impaired, receiving distributions under the Prepackaged Plan, and, thus, entitled to vote.

26.     With respect to the specific Classes of Claims and Interests against the Debtors that were presumed to accept or deemed to reject the Prepackaged Plan, the Solicitation

Procedures undertaken by the Debtors and described herein comply with the Bankruptcy Code and should be approved.  The Debtors respectfully request that the Court consider approval of the Solicitation Procedures with respect to these Classes at the Combined Hearing.

**B.   Solicitation of Classes Entitled to Vote to Accept or Reject the Prepackaged Plan**

27.    Section 1126(b) of the Bankruptcy Code expressly permits a debtor to solicit votes from holders of claims or interests prepetition and without a court-approved disclosure statement if the solicitation complies with applicable non-bankruptcy law—including generally applicable federal and state securities laws or regulations—or, if no such laws exist, the solicited holders receive "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code.

28.    The Solicitation Procedures comply with all applicable non-bankruptcy laws governing the adequacy of disclosure in connection with the solicitation.  The Debtors' prepetition Solicitation Procedures are exempt from registration pursuant to Regulation D of the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa (as amended from time to time, the "**Securities Act**") and under state "Blue Sky" laws, or any similar rules, regulations, or statutes and/or Section 4(a)(2) of the Securities Act.  Specifically, Section 4(a)(2) of the Securities Act creates an exemption from the registration requirements under the Securities Act for transactions not involving a "public offering."  Section 4(a)(2) exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2).  The Solicitation is being made prior to the Petition Date only to holders of First Lien Debt Claims and Second Lien Debt Claims who are "accredited investors" within the meaning of Rule 501(a) of Regulation D of the Securities Act and/or who are "Qualified Institutional Buyers" (as defined in rule 144a of the Securities Act), "Institutional Accredited Investors" (within the meaning  of Rule 501(a) of Regulation D of the Securities Act), or are non-"US Persons" (as defined in

Regulation S of the Securities Act).    Accordingly, the Debtors have complied with the requirements of the Securities Act and Section 4(a)(2) and/or Regulation D thereunder, as the prepetition solicitation of acceptances would constitute a private placement of securities. Accordingly, the Debtors' prepetition solicitation complies with the requirements of section 1126(b)(1).

29.    Bankruptcy Rule 3018(b) provides, among other things, that prepetition acceptances or rejections of a plan are valid only if the Prepackaged Plan was "transmitted to substantially all creditors and equity security holders of the same class" and that the time for voting was not "unreasonably short."    On December 11, 2018, the Disclosure Statement, the Prepackaged Plan, and one or more of the forms of ballots (the "**Ballots**," and collectively with the Disclosure Statement and the Prepackaged Plan, the "**Solicitation Package**") were served on holders of Claims in Class 3 (First Lien Debt Claims) and Class 4 (Second Lien Claims).    The Solicitation Package established December 10, 2018 as the record date (the "**Record Date**") for determining which creditors were entitled to vote on the Prepackaged Plan, and advised recipients that the voting period will end at 5:00 p.m. (Eastern Standard Time) on January 23, 2019 (the "**Voting Deadline**").

30.    The Prepackaged Plan is the product of several months of extensive negotiations among the Debtors, the Restructuring Support Parties, and other key stakeholders. As a result, the Debtors commenced solicitation shortly before commencing these chapter 11 cases and set the Voting Deadline 43 days after solicitation.  The Solicitation Period will provide a sufficient period within which the holders of Claims entitled to vote may make an informed decision to accept or reject on the Prepackaged Plan.

RLF1 20430310V.1

31.     Bankruptcy Rule 3017(d) requires that the Debtors use a form of ballot substantially conforming to Official Form No. 314.  The Ballots are based on Official Form No. 314, but were modified to address the particular aspects of these chapter 11 cases and to be relevant and appropriate for each Class of Impaired Claims entitled to vote on the Prepackaged Plan.  To be counted as votes to accept or reject the Prepackaged Plan, the Ballots must be properly executed, completed, and delivered to Catalina Marketing Corporation Ballot Processing, c/o Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022 so that they are received no later than the Voting Deadline.  Alternatively, holders in Class 3 or Class 4 may submit their Ballots via Prime Clerk's online E-Balloting Portal by visiting https://cases.primeclerk.com/catalina, clicking on the "Submit E-Ballot" section of the website, and following the instructions to submit the Ballot.  Additionally, each of the Ballots was specifically designed to conform to the Prepackaged Plan.  The Debtors submit that the Ballots satisfy the requirements of Bankruptcy Rule 3017(d).

32.     In consideration of the foregoing, the Solicitation Procedures and Ballots are in full compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and all applicable nonbankruptcy laws, rules, and regulations.  Consequently, the Debtors respectfully request that this Court approve the Solicitation Procedures and Ballots.

## C.  Continuation of the Debtors' Prepetition Solicitation After the Petition Date

33.     The Debtors distributed the Disclosure Statement and Ballots prior to the Petition Date in accordance with sections 1125 and 1126 of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(g) ("[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.").  Although the Debtors do not believe that the Disclosure Statement must

RLF1 20430310V.1

be conditionally approved for the Debtors' prepetition solicitation to continue postpetition, the Debtors, out of an abundance of caution, request that the Court conditionally approve the Disclosure Statement if the Court deems it necessary to do so.

34.    Courts in this district have recognized that debtors may "straddle" solicitation by commencing solicitation prior to the petition date and continuing postpetition. *See, e.g., In re Southeastern Grocers, LLC*, No. 18-10700 (MFW) (Bankr. D. Del. March 29, 2018) (D.I. 131) (solicitation commenced prior to the petition date and continued postpetition); *In re Ascent Resources Marcellus Holdings, LLC*; No. 18-10265(LSS) (Bankr. D. Del. Feb. 9, 2018) (D.I. 43) (same); *In re Tidewater Inc., No. 17*-11132 (BLS) (Bankr. D. Del. May 17, 2017) (D.I. 378) (same); *In re Homer City Generation, L.P.*, No. 17-10086 (MFW) (Bankr. D. Del. Feb. 15, 2017) (D.I. 157) (same); *In re Basic Energy Servs., Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Oct. 25, 2016); *In re Dex Media, Inc.*, Ch. 11 Case No. 16-11200 (KG) (Bankr. D. Del. May 16, 2016) (D.I. 52) (same); *In re Offshore Grp. Inv. Ltd.*, Ch. 11 Case No. 15-12422 (BLS) (Bankr. D. Del. Dec. 4, 2015) (D.I. 37) (same); *In re Allen Sys. Grp., Inc.*, Ch. 11 Case No. 15-10332 (KJC) (Bankr. D. Del. Feb. 20, 2015) (D.I. 63) (same); *In re Everyware Global, Inc.*, Ch. 11 Case No. 15-10743 (LSS) (Bankr. D. Del. Apr. 7, 2015) (D.I. 51) (same); *In re Sorenson Commc'ns, Inc.*, Ch. 11 Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (D.I. 43) (same); *In re CHL, LTD.*, Ch. 11 Case No. 12-12437 (KJC) (Bankr. D. Del. Aug. 31, 2012) (D.I. 58) (same).  Courts in other districts have also approved "straddled" solicitations.  *See, e.g. In re Atlas Res. Partners, L.P.*, Ch. 11 Case No. 16-12149 (SHL) (Bankr. S.D.N.Y. July 25, 2016) (D.I. 41) (approving continued postpetition solicitation commenced prior to petition date); *In re Fairway Grp. Holdings Corp.*, Ch. 11 Case No. 16-11241 (MEW) (Bankr. S.D.N.Y. May 5, 2016) (D.I. 51) (same); *In re Southcross Holdings LP*, Ch. 11 Case No. 16-20111 (MI) (Bankr.

S.D. Tex. Mar. 29, 2016) (D.I. 75) (same); *In re Revel AC, Inc.*, Ch. 11 Case No. 13-16253 (JHW) (Bankr. D.N.J. Mar. 28, 2013) (D.I. 69) (same); *In re CIT Grp.*, Inc., Ch. 11 Case No. 09-16565 (AG) (Bankr. S.D.N.Y. Nov. 3, 2009) (D.I. 45) (same); *In re Reddy Ice Holdings, Inc.*, Ch. 11 Case No. 12-32349 (Bankr. N.D. Tex. Apr. 12, 2012) (court approved solicitation commenced on the eve prior to filing and continued postpetition).  Furthermore, it is important that these chapter 11 cases proceed as expeditiously as possible.

IV.    **Deadline and Procedures for Objections to the Disclosure Statement and the Prepackaged Plan**

35.    Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of a disclosure statement and Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to a plan of reorganization.  Further, Bankruptcy Rule 2002(b) requires at least twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement and confirmation of a plan of reorganization.  Local Rule 3017-1 similarly provides that "the hearing date [to consider approval of the disclosure statement] shall be at least thirty-five (35) days following the service of the disclosure statement and the objection deadline shall be at least twenty-eight (28) days from service of the disclosure statement."  The Debtors further request that the Proposed Order provide that the Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing, and that notice of such adjourned date(s) will be available on the electronic case filing docket.

36.    The Debtors request that the Court set January 23, 2019 at 4:00 p.m. (Eastern Standard Time) as the Objection Deadline.  This date will provide holders of Claims no less than forty-three (43) days' notice of the deadline for filing objections to the Disclosure

Statement and the Prepackaged Plan while still affording the Debtors and other parties in interest time to file a responsive brief and, if possible, resolve any objections received. The Debtors also request that the Court set the reply deadline of January 28, 2019.

37.    The Debtors further request that the Court direct that any objections to the Disclosure Statement and/or the Prepackaged Plan be: (i) in writing, (ii) filed with the Clerk of Court together with proof of service thereof, (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection, and (iv) conform to the applicable Bankruptcy Rules and the Local Rules. In addition to being filed with the Clerk of the Court, any such objections should be served upon the following parties so as to be received by the Objection Deadline:  (i) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Gary Holtzer and Ronit J. Berkovich); (ii) co-attorneys for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, Delaware 19899 (Attn:  Mark D. Collins and Jason M. Madron); (iii) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.), as counsel to the DIP lenders and the ad hoc group of certain holders of the First Lien Term Loans; (iv) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq., and Robert A. Britton, Esq.), and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.), as counsel to the DIP lenders and the ad hoc group of certain holders of the Second Lien Term Loans; (v) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M.

Resnick, Esq.), as counsel to JPMorgan Chase Bank, N.A., as administrative agent under the First Lien Credit Agreement; (vi) Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007 (Attn.: Andrew N. Goldman, Esq.), as counsel to Wilmington Savings Fund Society, FSB, as administrative agent under the Second Lien Credit Agreement; (vii) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.), as counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation; (viii) the Internal Revenue Service; (ix) the United States Attorney's Office for the District of Delaware; (x) and the United States Trustee for the District of Delaware; and (xii) any other party entitled to notice pursuant to Local Rule 9013-1(m)..

## V.    Form and Manner of Notice of the Combined Hearing and the Commencement of These Chapter 11 Cases

38.    The Debtors propose to serve a notice and summary of the Prepackaged Plan (the "**Combined Notice**") immediately upon entry of the Proposed Order substantially in the form annexed as **<u>Exhibit 1</u>** to the Proposed Order, upon all parties in interest. The Combined Notice sets forth (i) the date, time, and place of the Combined Hearing, (ii) instructions for obtaining copies of the Disclosure Statement and Prepackaged Plan, (iii) the Objection Deadline and the procedures for filing objections to the Disclosure Statement and the confirmation of the Prepackaged Plan, and (iv) notice of commencement of these chapter 11 cases.

39.    In addition, Bankruptcy Rule 2002(l) permits a court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." The Debtors request that this Court authorize the Debtors, in their discretion, to give supplemental publication notice of the Combined Hearing on a date no less than twenty-

eight (28) days prior to the Combined Hearing.  The proposed notice schedule, as described above, affords parties in interest ample notice of these proceedings.

40.     The Debtors request that the Court determine that they are not required to distribute copies of the Prepackaged Plan or the Disclosure Statement to any holder of a Claim against or Interest in the Debtors within a Class under the Prepackaged Plan that is deemed to accept or is deemed to reject the Prepackaged Plan, unless such party makes a specific request in writing for the same.  Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

> If the court orders that the disclosure statement and the Prepackaged Plan or a summary of the Prepackaged Plan shall not be mailed to any unimpaired class, notice that the class is designated in the Prepackaged Plan as unimpaired and notice of the name and address of the person from whom the Prepackaged Plan or summary of the Prepackaged Plan and disclosure statement may be obtained upon request and at the Prepackaged Plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.

Fed. R. Bankr. P. 3017(d). The Prepackaged Plan provides that holders of Claims in Class 5 (General Unsecured Claims), Class 8 (Intercompany Claims), and Class 11 (Intercompany Interests) are deemed accept. Accordingly, holders of Claims in each of the above-mentioned unimpaired Classes are conclusively presumed to accept the Prepackaged Plan and were not solicited.

41.     The Debtors request that the Court apply the same rationale to Class 6 (NCS Rejection Claims), Class 7 (General Unsecured PDM Claims), Class 9 (Subordinated Claims), and Class 10 (Existing Equity Interests), all of which are deemed to reject the Prepackaged Plan and waive the requirement that the Debtors send a copy of the Prepackaged Plan and Disclosure Statement to members of such Classes.  In lieu of furnishing each such holder of a Claim against or Interest in the Debtors that is either deemed to accept or is deemed

to reject the Prepackaged Plan with a copy of the Prepackaged Plan and the Disclosure Statement, the Debtors propose to send to such holders the Combined Notice, which sets forth the manner in which a copy of the Prepackaged Plan and the Disclosure Statement may be obtained. In addition, the Debtors have made the Disclosure Statement and the Prepackaged Plan available at no cost on Prime Clerk LLC's website at https://cases.primeclerk.com/Catalina. The Debtors submit that such notice satisfies the requirements of Bankruptcy Rule 3017(d).

**VI.    Extensions and Conditional Waivers of the 341 Meeting and the Filing of the Schedules and Statements**

42.    The Debtors also request that the Court grant an extension of time to file the Schedules and Statements and to waive the requirement to file the Schedules and Statements in the event the Prepackaged Plan is confirmed. Section 521 of the Bankruptcy Code requires a debtor to file schedules of assets and liabilities and statements of financial affairs unless the Court orders otherwise. 11 U.S.C. § 521(a)(1)(A)–(B). These schedules and statements must be filed within 14 days after the petition date unless the bankruptcy court grants an extension of time "on motion for cause shown." Fed. R. Bankr. P. 1007(c). As a matter of course, the Debtors are already entitled to an extension to thirty (30) days from the Petition Date because the Debtors' claims agent is maintaining the consolidated creditor matrix as of the Petition Date, and the Debtors have over 200 creditors. *See* Local Rule 1007-1(b). The Court is authorized to grant the Debtors' further extension "for cause" pursuant to Bankruptcy Rule 1007(c) and Local Rule 1007-1(b).

43.    Sufficient cause exists here for such further extension through and including the SOAL/SOFA Deadline. The purposes of filing the Schedules and Statements are to provide notice to creditors and to disclose information about the debtor to holders of claims. Here, however, the benefits of filing the Schedules and Statements are heavily outweighed by

their costs.  Requiring the Debtors to complete the Schedules and Statements would be time consuming, distracting to the Debtors' advisers and management, and costly to the Debtors' estates, while providing little benefit to most parties in interest in these chapter 11 cases at that point.  No party in interest would be prejudiced by the Court granting the Debtors' request for an extension through and including the SOAL/SOFA Deadline because the Debtors have proposed the Prepackaged Plan, under which trade claims and other general unsecured claims (other than the NCS Rejection Claims and the General Unsecured PDM Claims) will ride through the bankruptcy unimpaired and be enforceable against the Reorganized Debtors.  Therefore, the Court should extend the deadline for filing the Schedules and Statements through and including the SOAL/SOFA Deadline, and waive the requirement altogether if the Prepackaged Plan is confirmed in accordance with the timetable proposed by the Debtors.

44.     Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  In light of the facts and circumstances surrounding these prepackaged chapter 11 cases, this Court has authority, consistent with section 521(a) of the Bankruptcy Code, to grant the requested relief.  *See, e.g.*, *In re Mattress Firm, Inc.*, No. 18-12241 (CSS) (Bankr. D. Del. Oct. 9, 2018) (D.I. 21); *In re Southeastern Grocers, LLC,* No. 18-10700 (MFW) (Bankr. D. Del. March 29, 2018) (D.I. 131); *In re Remington Outdoor Company, Inc.*, No. 18-10684 (BLS) (Bankr. D. Del. March 27, 2018) (D.I. 64); *In re Tidewater Inc.*, No. 17-11132 (BLS) (Bankr. D. Del. May 17, 2017) (D.I. 378); *In re Basic Energy Servs., Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Oct. 25, 2016); *In re Halcón Res. Corp.*, No. 16-11724 (BLS) (Bankr. D. Del. July 29, 2016) (D.I. 50); *In re RCS Capital Corp.*, Ch. 11 Case No. 16-0223 (MFW) (Bankr. D. Del. Mar. 29, 2016) (D.I. 423);

*In re Offshore Grp. Inv. Ltd.,* Ch. 11 Case No., 15-12422 (BLS) (Bankr. D. Del. Dec. 4, 2015) (D.I. 37); *In re Hercules Offshore, Inc.*, Ch. 11 Case No. 15-11685 (KJC) (Bankr. D. Del. Aug. 14, 2015) (D.I. 42); *In re EveryWare Glob., Inc.*, Ch. 11 Case No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015) (D.I. 46); *In re The Dolan Co.*, Ch. 11 Case No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (D.I. 69); *In re Dex One Corp.*, Ch. 11 Case No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (D.I. 54); *In re Sorenson Commc'ns, Inc.*, Ch. 11 Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (D.I. 48); *In re Physiotherapy Holdings, Inc.*, Ch. 11 Case No. 13-12965 (KG) (Bankr. D. Del. Dec. 6, 2013) (D.I. 103); *In re Maxcom Telecomunicaciones, S.A.B. de C.V.*, Ch. 11 Case No. 13-11839 (PJW) (Bankr. D. Del. Aug. 15, 2013) (D.I. 115); *In re Dex One Corp.*, Ch. 11 Case No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013), (D.I. 54); *In re Hawkeye Renewables, LLC*, Ch. 11 Case No. 09-19961 (KK), 2010 WL 2745975, at *24 (Bankr. D. Del. June 2, 2010); *In re Elec. Components Int'l, Inc.*, 2010 WL 3350305, at *25 (Bankr. D. Del. May 11, 2010).

45.    Accordingly, the Debtors respectfully request that the Court extend the time for filing the Schedules and Statements to March 7, 2019, and, if confirmation of the Prepackaged Plan is obtained before that date, waive this requirement.

46.    Additionally, the Debtors request that the Court direct the U.S. Trustee not to convene a meeting of the creditors under section 341 of the Bankruptcy Code unless the Prepackaged Plan is not confirmed on or prior to the SOAL/SOFA Deadline.  Section 341(a) of the Bankruptcy Code requires the U.S. Trustee to convene and preside over a meeting of creditors (a "**Section 341(a) Meeting**"), and section 341(b) of the Bankruptcy Code authorizes the U.S. Trustee to convene a meeting of equity security holders (a "**Section 341(b) Meeting**"

and collectively with a Section 341(a) Meeting, a "**Section 341 Meeting**").    However, Bankruptcy Code section 341(e) provides that

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).

47.    The purpose of the Section 341 Meeting is to provide parties in interest with a meaningful opportunity to obtain and examine important information about the debtor.    In these chapter 11 cases, however, the solicitation of the Prepackaged Plan was commenced prior to the Petition Date, and the Debtors expect that the Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.    The Debtors intend to proceed expeditiously to confirm the Prepackaged Plan and emerge from chapter 11 as quickly as possible.    Therefore, parties are not likely to receive any benefit from the Section 341 Meeting.

48.    This Court has granted the requested waiver in other prepackaged chapter 11 cases.    *See, e.g.*, *In re Mattress Firm, Inc.*, No. 18-12241 (CSS) (Bankr. D. Del. Oct. 9, 2018) (D.I. 21); *In re Southeastern Grocers, LLC,* No. 18-10700 (MFW) (Bankr. D. Del. March 29, 2018) (D.I. 131); *In re Remington Outdoor Company, Inc.*, No. 18-10684 (BLS) (Bankr. D. Del. March 27, 2018) (D.I. 64); *In re Tidewater Inc.*, No. 17-11132 (BLS) (Bankr. D. Del. May 17, 2017) (D.I. 378); *In re Basic Energy Servs., Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Oct. 25, 2016); *In re Halcón Res. Corp.*, No. 16-11724 (BLS) (Bankr. D. Del. July 29, 2016) (D.I. 50); *In re RCS Capital Corp.*, Ch. 11 Case No. 16-0223 (MFW) (Bankr. D. Del. Mar. 29, 2016) (D.I. 423); *In re Offshore Grp. Inv. Ltd.*, Ch. 11 Case No. 15-12422 (BLS) (Bankr. D. Del. Dec.

4, 2015) (D.I. 37); *In re Seegrid Corp.*, Ch. 11 Case No. 14-12391 (BLS) (Bankr. D. Del. Oct. 22, 2014) (D.I. 26); *In re The Dolan Co.*, Ch. 11 Case No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (D.I. 80); *In re Sorenson Commc'ns, Inc.*, Ch. 11 Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (D.I. 43); *In re Physiotherapy Holdings, Inc.*, Ch. 11 Case No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013) (D.I. 49).

49.    Accordingly, the Debtors respectfully request that the Court direct the U.S. Trustee not to convene a Section 341 Meeting unless the Prepackaged Plan is not confirmed on or prior to the SOAL/SOFA Deadline.

**Notice**

50.    Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.), as counsel to the DIP lenders and the ad hoc group of lenders under the First Lien Credit Agreement; (v) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq and Robert A. Britton, Esq.), and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.), as counsel to the DIP lenders and an ad hoc group of certain holders of the Second Lien Term Loans; (vi)  Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.), as counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation; (viii) the Internal Revenue Service; (ix) the Internal Revenue Service; (x) the United States Attorney's

Office for the District of Delaware; (xi) the Banks; and (xii) any other party entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").   As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of the Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

51.     No previous request for relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 12, 2018
      Wilmington, Delaware

                                    */s/ Jason M. Madron*
                                RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)

-and-

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Gary T. Holtzer (*pro hac vice* admission pending)
Ronit J. Berkovich (*pro hac vice* admission pending)
Jessica Liou (*pro hac vice* admission pending)
Kevin Bostel (*pro hac vice* admission pending)

*Proposed Attorneys for Debtors
and Debtors in Possession*

25

**Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------- X
                    :
In re                  :      **Chapter 11**
                    :
**CHECKOUT HOLDING CORP.**, *et al.*,  :      **Case No. 18-[_____] (___)**
                    :
      Debtors.[1]      :      **(Joint Administration Requested)**
                    :
---------------------------------------------------------- X

**ORDER (I) SCHEDULING COMBINED HEARING
TO CONSIDER (A) APPROVAL OF DISCLOSURE STATEMENT,
(B) APPROVAL OF SOLICITATION PROCEDURES AND FORMS OF
BALLOTS, AND (C) CONFIRMATION OF PREPACKAGED PLAN;
(II) ESTABLISHING AN OBJECTION DEADLINE TO OBJECT TO DISCLOSURE
STATEMENT AND PLAN; (III) APPROVING THE FORM AND MANNER OF
NOTICE OF COMBINED HEARING, OBJECTION DEADLINE,
AND NOTICE OF COMMENCEMENT; (IV) CONDITIONALLY
WAIVING REQUIREMENT OF FILING STATEMENT OF FINANCIAL
AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES;
(V) CONDITIONALLY WAIVING REQUIREMENT TO CONVENE THE SECTION
341 MEETING OF CREDITORS; AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), for entry of an order (i) scheduling a combined hearing to consider (a) approval of the Disclosure Statement (b) the Solicitation Procedures, and (c) confirmation of the Prepackaged Plan, (ii) establishing an objection deadline to object to the adequacy of the Disclosure Statement or confirmation of the Prepackaged Plan, (iii) approving

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); CellFire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to such terms in the Motion.

the form and manner of notice of the Combined Hearing, the Objection Deadline, and notice of commencement, (iv) extending the deadline for the Debtors to file schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules and Statements**") through and including March 7, 2019 (the "**SOAL/SOFA Deadline**"), and conditionally waiving the requirement that the Debtors file the Schedules and Statements upon confirmation of the Prepackaged Plan, (v) conditionally waiving the requirement to convene the Section 341 Meeting, and (vi) granting related relief; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the *Del Genio Declaration* filed contemporaneously with the Motion, the record of the Hearing, and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.       The Motion is granted as set forth herein.

2.    A hearing to consider compliance with disclosure and solicitation requirements and confirmation of the Debtors' Plan (the "**Combined Hearing**") is hereby scheduled to be held before this Court on _____ ___, 2019 at __:__ (Eastern Standard Time) or as soon thereafter as counsel may be heard.  The Combined Hearing may be adjourned from time to time without further notice other than an announcement of the adjourned date or dates in open court or at the Combined Hearing and notice of such adjourned date(s) will be available on the electronic case filing docket.

3.    Any objections to the Disclosure Statement and/or the Prepackaged Plan shall be in writing, filed with the Clerk of the United States Bankruptcy Court for the District of Delaware together with proof of service thereof, set forth the name of the objecting party, and the nature and amount of any Claim or Interest asserted by the objecting party against the estate or property of the Debtors, state the legal and factual basis for such objection, conform to the applicable Bankruptcy Rules and Local Rules, and be served upon the following so as to be received no later than 4:00 p.m. (Eastern Standard Time) on January ___, 2019 (the "**Objection Deadline**"): The Debtors further request that the Court direct that any objections to the Disclosure Statement and/or the Prepackaged Plan be: (i) in writing, (ii) filed with the Clerk of Court together with proof of service thereof, (iii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, and state the legal and factual basis for such objection, and (iv) conform to the applicable Bankruptcy Rules and the Local Rules.  In addition to being filed with the Clerk of the Court, any such objections should be served upon the following parties so as to be received by the Objection Deadline:  (i) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Gary Holtzer, Esq. and

Ronit J. Berkovich, Esq.); (ii) co-attorneys for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19899 (Attn:  Mark D. Collins, Esq. and Jason M. Madron, Esq.); (iii) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.), as counsel to the DIP lenders and the ad hoc group of lenders under the First Lien Credit Agreement; (iv) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq. and Robert A. Britton, Esq.), and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn: Pauline K. Morgan, Esq.), as counsel to the DIP lenders and the ad hoc group of certain holders of the Second Lien Term Loans; (v) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M. Resnick, Esq.), as counsel to JPMorgan Chase Bank, N.A., as administrative agent under the First Lien Credit Agreement; (vii) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.), as counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation; (viii) the Internal Revenue Service; (ix) the United States Attorney's Office for the District of Delaware; (x) and the United States Trustee for the District of Delaware.

4.      Any objections not timely filed and served in the manner set forth in this Order may, in the Court's discretion, not be considered and may be overruled.

5.      Notice of the Combined Hearing as proposed in the Motion and the form of notice annexed hereto as **Exhibit 1** shall be deemed good and sufficient notice of the Combined Hearing and no further notice need be given; *provided*, *however*, that any provision of

Bankruptcy Rule 3017(d) requiring the Debtors to distribute the Disclosure Statement and the Prepackaged Plan to parties not entitled to vote, whether because they are unimpaired or because they are deemed to reject the Prepackaged Plan, or any parties in interest other than as prescribed in this Order, shall be waived; *provided further*, *however*, the Disclosure Statement and Prepackaged Plan shall be remain posted in .PDF format to the following page at https://cases.primeclerk.com/Catalina and shall be provided in either electronic or paper form to any parties in interest upon written request to the Debtors.  The Debtors shall also serve a copy of the Combined Notice on all known creditors, interest holders, and interested parties.

6.      Service of the Combined Notice as set forth in the Motion and herein is sufficient notice of the Petition Date, the Combined Hearing, the Objection Deadline, and procedures for objecting to the adequacy of the Disclosure Statement and to confirmation of the Prepackaged Plan.

7.      To the extent that section 1125(b) of the Bankruptcy Code requires the Debtors' prepetition solicitation of acceptances for the Prepackaged Plan to be pursuant to an approved disclosure statement in order to continue on a postpetition basis, the Court conditionally approves the Disclosure Statement as having adequate information as required by section 1125 of the Bankruptcy Code without prejudice to any party in interest objecting to the Disclosure Statement at the Confirmation Hearing.

8.      The Debtors are authorized, pursuant to Bankruptcy Rule 2002(*l*), to give supplemental publication notice of the Combined Hearing by publication in a newspaper designated by the Debtors in their sole discretion and on a date no less than twenty-eight days prior to the Combined Hearing.

RLF1 20430310V.1

9.	The time within which the Debtors shall file the Schedules and Statements is extended through and including March 7, 2019 without prejudice to the Debtors' right to seek further extensions of the time within which to file the Schedules and Statements or to seek additional relief from this Court regarding the filing of, or waiver of the requirement to file, the Schedules and Statements.

10.	The requirement that the Debtors file the Schedules and Statements is permanently waived effective upon the date of confirmation of the Prepackaged Plan, provided confirmation occurs on or before the SOAL/SOFA Deadline.

11.	To the extent the automatic stay provisions of section 362 of the Bankruptcy Code would otherwise apply, such provisions are vacated and modified to effectuate all of the terms and provisions of the Backstop Agreement and this Order, including, without limitation, permitting the Backstop Parties to exercise all rights and remedies under the Backstop Agreement in accordance with its terms, terminate the Backstop Agreement in accordance with its terms, and deliver any notice contemplated thereunder, in each case, without further order of the Court.

12.	The Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted pursuant to this Order in accordance with the Motion.

13.	This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.


Dated: _____, 2018
	Wilmington, Delaware


	_____
	UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Combined Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-------------------------------------------------------  X
                                                         :
In re                                                    :     Chapter 11
                                                         :
CHECKOUT HOLDING CORP., et al.,                          :     Case No. 18-[_____] (___)
                                                         :
              Debtors.¹                                  :     (Joint Administration Requested)
                                                         :
-------------------------------------------------------  X
```

**NOTICE OF COMMENCEMENT OF CASES
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**-AND-**

**SUMMARY OF JOINT PREPACKAGED CHAPTER 11 PLAN AND NOTICE OF
HEARING TO CONSIDER (A) DEBTORS' COMPLIANCE WITH DISCLOSURE
REQUIREMENTS AND (B) CONFIRMATION OF PLAN OF REORGANIZATION**

**NOTICE IS HEREBY GIVEN** as follows:

1.    On December 12, 2018 (the "**Petition Date**") Checkout Holding Corp. and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), each commenced a case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

2.    On the Petition Date, the Debtors filed a "prepackaged" plan of reorganization (the "**Prepackaged Plan**") and a proposed disclosure statement (the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  Copies of the Prepackaged Plan and the Disclosure Statement may be obtained free of charge by visiting the website maintained by the Debtors' voting agent, Prime Clerk, LLC (the "**Voting Agent**"), at Prime Clerk, LLC.  Copies of the Prepackaged Plan and Disclosure Statement may also be obtained by calling the Voting Agent at (844) 205-4337 (toll free or (917) 460-0912 (international hotline), emailing the Voting Agent at CatalinaBallots@primeclerk.com, or emailing Debtors' counsel at Collins@rlf.com or Madron@rlf.com.

On December 11, 2018, the Debtors commenced solicitation of votes to accept the Prepackaged Plan from the holders of Class 3 Claims (First Lien Debt Claims) and Class 4 Claims (Second Lien Debt Claims) of record as of December 10, 2018.  Only holders of Class 3 Claims and Class 4 Claims, are

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); CellFire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

entitled to vote to accept or reject the Prepackaged Plan.  All other classes of claims were either deemed to accept or reject the Prepackaged Plan and, therefore, are not entitled to vote.  **The deadline for the submission of votes to accept or reject the Prepackaged Plan is January [__], 2019 at 5:00 p.m. (Prevailing Eastern Time).**

The Debtors are proposing a Restructuring that, pursuant to the Prepackaged Plan, will provide substantial benefits to the Debtors and all of their stakeholders.  The Restructuring will leave the Debtors' business intact and substantially de-levered, providing for the reduction of $1.6 billion of the Debtors' existing debt.  The Prepackaged Plan also enhances the Debtors' near term liquidity through certain existing secured lenders' funding of a $40 million exit facility.  This deleveraging and recapitalization will enhance the Debtors' long-term growth prospects and competitive position and allow the Debtors to emerge from their chapter 11 cases (the "**Chapter 11 Cases**") as reorganized entities better positioned to withstand the current cycle of marketing-spend allocation, upgrade their software and hardware platforms, and shore up their existing network infrastructure.  The Restructuring will allow the Debtors' management team to focus on operational performance and value creation, execute on growth initiatives to leverage the Debtors' network across digitally active consumers, and continue to provide their customers with the uniquely efficient services that are their hallmark.

**Summary of the Prepackaged Plan**[2]

3.      Solicitation of votes on the Prepackaged Plan commenced prior to the Petition Date.  The following chart summarizes the treatment provided by the Prepackaged Plan to each class of Claims and Interests:

---

[2] The statements contained herein are summaries of the provisions contained in the Disclosure Statement and the Prepackaged Plan and do not purport to be precise or complete statements of all the terms and provisions of the Prepackaged Plan or documents referred to therein.  For a more detailed description of the Prepackaged Plan, please refer to the Disclosure Statement.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Prepackaged Plan.

2

| Class | Claim or Equity Interest | Treatment | Impaired or Unimpaired | Entitlement to Vote on the Prepackaged Plan | Approx. Percentage Recovery[3] |
|---|---|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to different treatment, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Priority Non-Tax Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Priority Non-Tax Claim shall receive, on account of such Allowed Claim, at the option of the Reorganized Debtors: (i) Cash in an amount equal to the Allowed amount of such Claim or (ii) other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. | Unimpaired | No (Deemed to accept) | Estimated Percentage Recovery: 100% |
| Class 2 | Other Secured Claims | Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is ten (10) Business Days after the date such Other Secured Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Secured Claim shall receive, on account of such Allowed Claim, at the option of the Reorganized Debtors: (i) Cash in an amount equal to the Allowed amount of such Claim, (ii) reinstatement or such other treatment sufficient to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code, or (iii) return of the applicable Collateral in satisfaction of the Allowed amount of such Other Secured Claim. | Unimpaired | No (Deemed to accept) | Estimated Percentage Recovery: 100% |
| Class 3 | First Lien Debt Claims | On the Effective Date, each holder of an Allowed First Lien Debt Claim shall be entitled to receive from (and on behalf of) CHC, in full and final satisfaction of such Claim, its Pro Rata share of 90% of the New Common Stock issued on the Effective Date (subject to dilution by the Management Incentive Plan). | Impaired | Yes | Estimated Percentage Recovery: 17.4% - 43.6% |
| Class 4 | Second Lien Debt Claims | On the Effective Date, each holder of an Allowed Second Lien Debt Claim shall be entitled to receive from (and on behalf of) CHC, in full and final satisfaction of such Claim, its Pro Rata share of 10% of the New Common Stock issued on the Effective Date (subject to dilution by the Management Incentive Plan). | Impaired | Yes | Estimated Percentage Recovery: 3.8% - 9.5% |
| Class 5 | General Unsecured | Except to the extent that a holder of a General Unsecured Claim agrees to different treatment, on and | Unimpaired | No (Deemed to | Estimated Percentage |

[3] The ranges set forth under Approximate Percentage Recovery are based on the range of reorganized equity value of the Debtors as described in the Valuation Analysis set forth in the Disclosure Statement.

3

| | | | | |
|---|---|---|---|---|
| | Creditor Claims | after the Effective Date, the Debtors shall continue to pay or dispute each General Unsecured Claim in the ordinary course of business as if the Chapter 11 Cases had never been commenced. | accept) | Recovery: 100% |
| Class 6 | NCS Rejection Claims | The holders of NCS Rejection Claims shall not receive or retain any property under the Prepackaged Plan on account of such Claims, and the obligations of the Debtors and the Reorganized Debtors on account of the NCS Rejection Claims shall be discharged. | Impaired | No (Deemed to reject) | 1. Estimated Percentage Recovery: 0% |
| Class 7 | General Unsecured PDM Claims | The holders of General Unsecured PDM Claims shall not receive or retain any property under the Prepackaged Plan on account of such Claims, and the obligations of the Debtors and the Reorganized Debtors on account of the General Unsecured PDM Claims shall be discharged. | Impaired | No (Deemed to reject) | 2. Estimated Percentage Recovery: 0% |
| Class 8 | Intercompany Claims | On or after the Effective Date, all Intercompany Claims shall be paid, adjusted, continued, settled, reinstated, discharged, or eliminated, in each case to the extent determined to be appropriate by the Debtors or Reorganized Debtors, as applicable, in their sole discretion.   All Intercompany Claims between any Debtor and a non-Debtor affiliate shall be Unimpaired under the Prepackaged Plan. | Unimpaired | No (Deemed to accept) | 3. Estimated Percentage Recovery: 100% |
| Class 9 | Subordinated Claims | Subordinated Claims are subordinated pursuant to the Prepackaged Plan and section 510 of the Bankruptcy Code.  The holders of Subordinated Claims shall not receive or retain any property under the Prepackaged Plan on account of such Claims, and the obligations of the Debtors and the Reorganized Debtors on account of Subordinated Claims shall be discharged. | Impaired | No (Deemed to reject) | 4. Estimated Percentage Recovery: 0% |
| Class 10 | Existing Equity Interests | On the Effective Date, the Existing Equity Interests will be cancelled without further action by or order of the Bankruptcy Court. | Impaired | No (Deemed to reject) | 5. Estimated Percentage Recovery: 0% |
| Class 11 | Intercompany Interests | Intercompany Interests are Unimpaired.   On the Effective Date, all Intercompany Interests will be treated as set forth in Section 5.9 of the Prepackaged Plan. | Unimpaired | No (Deemed to accept) | 6. Estimated Percentage Recovery: 100% |

4

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION AND INJUNCTION PROVISIONS IN THE PREPACKAGED PLAN**

PLEASE BE ADVISED THAT THE PREPACKAGED PLAN CONTAINS CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, INCLUDING:

**As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service and contributions of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, the Released Parties are deemed forever released and discharged by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the DIP Facility, the Amended and Restated First Lien Credit Facility, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement and any exhibits or documents relating thereto, and this Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to this Plan, any other act or omission, transaction, agreement, event, or other occurrence, or any other relief obtained by the Debtors in the Chapter 11 Case, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud.**

**OTHER RELEASE, EXCULPATION AND INJUNCTION PROVISIONS ARE FOUND IN SECTION X OF THE PREPACKAGED PLAN. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PREPACKAGED PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**Hearing to Consider Compliance with Disclosure
Requirements and Confirmation of the Prepackaged Plan**

4.      A combined hearing to consider compliance with the Bankruptcy Code's disclosure requirements and any objections thereto and to consider confirmation of the Prepackaged Plan

and any objections thereto will be held before the Honorable _____, United States Bankruptcy Judge, in Room _____ of the United States Bankruptcy Court, 824 Market Street, _____ Floor, Wilmington, Delaware 19801, on , January __, 2019 at __:__ _.m. (Prevailing Eastern Time) or as soon thereafter as counsel may be heard (the "**Combined Hearing**").  The Combined Hearing may be adjourned from time to time without further notice other than by filing a notice on the Bankruptcy Court's docket indicating such adjournment and/or an announcement of the adjourned date or dates at the Combined Hearing. The adjourned date or dates will be available on the electronic case filing docket and the Voting Agent's website at https://cases.primeclerk.com/Catalina.

     5.     Any objections to the Disclosure Statement and/or the Prepackaged Plan must (i) be in writing, filed with the Clerk of the United States Bankruptcy for the District of Delaware together with proof of service thereof, (ii) set forth the name of the objecting party, and the nature and amount of any claim or interest asserted by the objecting party against the estate or property of the Debtors, (iii) state the legal and factual basis for such objection, and (iv) **be served upon the following so as to be received no later than 4:00 p.m. (Eastern Time) on January __, 2019:**

    (i)     Catalina Marketing Corporation, 200 Carillon Parkway, St. Petersburg, FL 33716 (Attn. David Glogoff, Chief Legal Officer);

    (ii)     proposed counsel to the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn. Gary Holtzer and Ronit J. Berkovich);

    (iii)     proposed co-counsel to the Debtors, Richard, Layton & Finger, P.A., 920 N. King Street, One Rodney Square, Wilmington, Delaware 19899 (Attn:  Mark D. Collins and Jason M. Madron);

    (iv)     the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Benjamin Hackman);

    (v)     counsel to the DIP lenders and the ad hoc group of lenders under the First Lien Credit Agreement, Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.);

    (vi)     co-counsel to the DIP lenders and the ad hoc group of lenders under the First Lien Credit Agreement, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.);

    (vii)     counsel to certain of the DIP lenders and an ad hoc group of certain holders of term loans under the Second Lien Term Loan, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq., and Robert A. Britton, Esq.);

    (viii)     co-counsel to certain of the DIP lenders and an ad hoc group of certain holders of term loans under the Second Lien Term Loan, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801 (Attn.: Pauline K. Morgan, Esq.);

    (ix)     counsel to JPMorgan Chase Bank, N.A., as administrative agent under the First Lien Credit Agreement, Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M. Resnick, Esq.);

(x)    counsel to Wilmington Savings Fund Society, FSV, as administrative agent under the Second Lien Credit Agreement, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007 (Attn.:  Andrew N. Goldman, Esq.); and

(xi)    counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation, Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.).

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AT THE COMBINED HEARING.**

### Section 341(a) Meeting

A meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "**Section 341(a) Meeting**") will be deferred until confirmation of the Prepackaged Plan.  **The Section 341(a) Meeting will not be convened if the Prepackaged Plan is confirmed within sixty (60) days after the Petition Date.** If the Section 341(a) Meeting will be convened, the Debtors will file, serve on the parties on whom it served this notice and any other parties entitled to notice pursuant to the Bankruptcy Rules, and post on the Website https://cases.primeclerk.com/Catalina not less than twenty-one (21) days before the date scheduled for such meeting, a notice of, among other things, the date, time, and place of the Section 341(a) Meeting.  The meeting may be adjourned or continued from time to time by notice at the meeting, without further notice to creditors.

Dated:  Wilmington, Delaware
_____, 2018                              BY ORDER OF THE COURT


WEIL, GOTSHAL & MANGES LLP                RICHARDS, LAYTON & FINGER, P.A.
767 Fifth Avenue                          One Rodney Square
New York, New York 10153                  920 North King Street
Telephone: (212) 310-8000                 Wilmington, Delaware 19801
Facsimile: (212) 310-8007                 Telephone: (302) 651-7700
Gary T. Holtzer (pro hac vice admission pending)    Facsimile: (302) 651-7701
Ronit J. Berkovich (pro hac vice admission          Mark D. Collins (No. 2981)
pending)                                  Jason M. Madron (No. 4431)
Jessica Liou (pro hac vice admission pending)
Kevin Bostel (pro hac vice admission pending)

                                          *Attorneys for Debtors and*
*Attorneys for Debtors and*               *Debtors in Possession*
*Debtors in Possession*

## **Exhibit B**

**Exhibit B-1 - Forms of Ballot for First Lien Debt Claims**

**Exhibit B-2 - Forms of Ballot for Second Lien Debt Claims**

*IMPORTANT: NO CHAPTER 11 CASES HAVE NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THE DEBTORS (AS DEFINED HEREIN) INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PREPACKAGED PLAN OF REORGANIZATION BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT. THIS BALLOT IS A COMPONENT OF THE PREPETITION SOLICITATION OF YOUR VOTE ON THE PREPACKAGED PLAN OF REORGANIZATION DESCRIBED BELOW. THE VOTING DEADLINE IS 5:00 P.M. EASTERN STANDARD TIME ON JANUARY 23, 2019.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**CHECKOUT HOLDING CORP.,** *et al.,*<br><br>          **Debtors.**[1] | **Chapter 11 (Voluntary)**<br><br>**IMPORTANT:** No chapter 11 case has been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization.<br>If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |

## BALLOT FOR FIRST LIEN DEBT CLAIM HOLDERS TO ACCEPT OR REJECT THE PLAN

### CLASS 3: FIRST LIEN DEBT CLAIMS

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M., EASTERN TIME, ON JANUARY 23, 2019 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); CellFire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

**First Lien Debt Claims**

> **YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE OR YOUR VOTE WILL NOT BE COUNTED.**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated Debtors (the "**Plan**") for Checkout Holding Corp**.** and certain other of its affiliated debtors (collectively, the "**Debtors**").  Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings given to them in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 10, 2018 (the "**Voting Record Date**"), (i) a holder of a claim (a "**Holder**") against the Debtors arising under that certain First Lien Credit Agreement (such claims against the Debtors arising under the First Lien Credit Agreement, the "**First Lien Debt Claims**"), and (ii) are also an "accredited investor" within the meaning of Rule 501 of the Securities Act of 1933, as amended (an "**Eligible Holder**").  Only Eligible Holders holding First Lien Debt Claims may vote to accept or reject the Plan using this Ballot.  If you hold one or more First Lien Debt Claims but you are not an Eligible Holder, you may not use this Ballot or any other ballot to vote to accept or reject the Plan.

The Plan is attached as **Exhibit A** to the Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors (the "**Disclosure Statement**"), which accompanies this Ballot.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan.  If you do not have a Disclosure Statement, you may obtain a copy from Prime Clerk, LLC (the "**Voting Agent**") by visiting the Voting Agent's website at https://cases.primeclerk.com/Catalina, calling (844) 205-4337 (toll free) or (917) 460-0912 (international hotline), or sending an email to Catalinaballots@primeclerk.com.  You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

The Debtors intend to commence voluntary cases under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you

**First Lien Debt Claims**    3

vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign and return this Ballot to the Voting Agent by the Voting Deadline.

**Your rights are described in the Disclosure Statement and the Plan annexed as Exhibit A thereto. Both the Disclosure Statement and the Plan are included in the packet you received with this Ballot. You should carefully and thoroughly review the Disclosure Statement and Plan prior to voting. You may wish to obtain legal advice.**

**PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. THESE PROVISIONS ARE FOUND IN ARTICLE X OF THE PLAN. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

---

**IMPORTANT NOTICE REGARDING**
**TREATMENT FOR CLASS 3**

Claims in Class 3 (First Lien Debt Claims) consist solely of Claims arising under that certain First Lien Credit Agreement, dated as of April 9, 2014.

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 cases are commenced, the Plan is confirmed and the Effective Date occurs, each holder of a First Lien Debt Claim shall be entitled to receive, in full and final satisfaction of such Claim, its Pro Rata share of 90% of the New Common Stock issued on the Effective Date (subject to dilution by the Management Incentive Plan).

PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.

---

**First Lien Debt Claims    5**

### PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claim**.  The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a First Lien Debt Claim in the aggregate unpaid <u>principal</u> amount inserted into the box below, without regard to any accrued but unpaid interest.[2]

$ 

---

[2] Please note that the First Lien Debt Claim amount as of the Voting Record Date (as listed herein) may be different than the Allowed First Lien Debt Claim on the Effective Date to the extent that any portion of the First Lien Debt Claim is converted into DIP Facility Roll-Up Loans prior to the Effective Date.

**First Lien Debt Claims   6**

**Item 2.  Votes on Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims in Class 3 below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in sections 10.6, 10.7, and 10.8 of the Plan and attached hereto as <u>Exhibit 1</u>.**

**If you (i) do not vote either to accept or reject the Plan, or (ii) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.7 of the Plan and attached hereto as <u>Exhibit 1</u>.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

---

**First Lien Debt Claim Holder's Vote on Plan**.  The undersigned Holder of a Class 3 First Lien Debt Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan                    ☐ **Reject** the Plan

**First Lien Debt Claims**

**Item 3.  Optional Release Election**.  If you voted to reject the Plan in Item 2 above, check this box if you elect <u>not</u> to grant the releases contained in Section 10.7 of the Plan.  Election to withhold consent is at your option.  If you submit your Ballot without this box checked, or you do not vote either to accept or reject the Plan, you will be deemed to consent to the releases contained in Section 10.7 of the Plan to the fullest extent permitted by applicable law.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Section 10.7 of the Plan to the fullest extent permitted by applicable law.

☐    The undersigned has voted to reject the Plan in Item 2 and elects <u>not</u> to grant the releases contained in Section 10.7 of the Plan.

**First Lien Debt Claims**

**Item 4.  Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the First Lien Debt Claim described in Item 1 as of the Voting Record Date, (iii) it is an "accredited investor" within the meaning of Rule 501(a) under Regulation D of the Securities Act of 1933, as amended, (iv) it has not submitted any other Ballots for other Class 3 First Lien Debt Claims held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the same vote to accept or reject the Plan, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

_____

Name of Holder

_____

Signature

_____

Name of Signatory and Title

_____

Name of Institution (if different than Holder)

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

**First Lien Debt Claims**    9

Ballot for Holders of First Lien Debt Claims<br>in Class 3

IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.  PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE RETURN ENVELOPE PROVIDED OR AS FOLLOWS:

---

**By First Class Mail, Overnight Courier or Personal Delivery:**

**Catalina Marketing Corporation Ballot Processing**
**c/o Prime Clerk LLC**
**830 Third Avenue, 3rd Floor**
**New York, NY 11030**

---

### If Submitting Your Vote through the E-Balloting Portal

Prime Clerk will accept Ballots if properly completed through the E-Balloting Portal.  To submit your Ballot via the E-Balloting Portal, visit **https://cases.primeclerk.com/catalina**, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

    Unique E-Ballot ID#:_____

Prime Clerk's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in <u>Item 1</u> of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.  Creditors who cast a Ballot using the E-Balloting Portal should NOT also submit a paper Ballot.

If your Ballot is not received by Prime Clerk on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted.

---

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**TELEPHONE: (844) 205-4337 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M., EASTERN TIME, ON JANUARY 23, 2019.**

**First Lien Debt Claims**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (844) 205-4337 (TOLL FREE) OR  (917) 460-0912 (INTERNATIONAL HOTLINE), OR SENDING AN EMAIL TO CATALINABALLOTS@PRIMECLERK.COM.

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.      Complete the Ballot by providing all the information requested and sign, date, and return the Ballot in the envelope provided to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the holder, does not contain an original signature, or is unsigned will not be counted.

        **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**  Ballots may not be submitted to the Voting Agent by facsimile or email.

2.      If neither the "accept" nor the "reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted. If both the "accept" and the "reject" box are checked in Item 2, the Ballot will not be counted.

3.      You must vote all your Class 3 First Lien Debt Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different First Lien Debt Claims, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.      If your Claim is held in multiple accounts, you may receive more than one Ballot coded for each such account for which your Claims are held. Similarly, if you hold a Claim in more than one Class entitled to vote you may receive more than one Ballot for each such Claim. Each Ballot votes only your Claims indicated on that Ballot. Accordingly, you must complete and return each Ballot you receive to vote multiple Claims.

5.      If you voted to reject the Plan and elect <u>not</u> to grant the releases contained in Section 10.7 of the Plan, check the box in Item 3.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the releases set forth in Section 10.7 of the Plan to the fullest extent permitted by applicable law.

6.      If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the plan shall be deemed a consent to the releases set forth in Section 10.7 of the Plan to the fullest extent permitted by applicable law.

7.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

**First Lien Debt Claims**

8.   The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

9.   If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

10.   In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11.   There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

13.   PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE ENVELOPE PROVIDED.

14.   IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALLING THE VOTING AGENT AT (844) 205-4337 (TOLL FREE) OR  (917) 460-0912 (INTERNATIONAL HOTLINE), OR SENDING AN EMAIL TO CATALINABALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

15.   THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

16.   ALL BALLOTS MUST BE FULLY EXECUTED TO BE COUNTED. IF YOU ARE COMPLETING THIS BALLOT ON BEHALF OF ANOTHER PERSON OR ENTITY, INDICATE YOUR RELATIONSHIP WITH SUCH PERSON OR ENTITY AND THE CAPACITY IN WHICH YOU ARE SIGNING. YOU MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION OR DOCUMENTATION WITH RESPECT TO SUCH RELATIONSHIP.

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

**First Lien Debt Claims**   2

By First Class Mail, Overnight Courier or Personal Delivery:

> Catalina Marketing Corporation Ballot Processing
> c/o Prime Clerk LLC
> 830 Third Avenue, 3rd Floor
> New York, NY 11030

If submitting your vote through the E-Balloting Portal:

> Please visit https://cases.primeclerk.com/catalina and click on the "Submit
> E-Ballot" section of the website, and follow the instructions.

**TELEPHONE: (844) 205-4337 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M., EASTERN TIME, ON JANUARY 23, 2019.**

**<u>Exhibit 1</u>**

**First Lien Debt Claims**

**Plan Injunction, Releases, and Exculpation**

If you vote to accept the Plan or you, directly or indirectly, receive and accept a distribution under the Plan, you shall be deemed to have consented to the injunction and exculpation provisions set forth in sections 10.6, 10.7, and 10.8 of the Plan. If you are entitled to vote on the Plan and you (i) vote to accept the Plan, (ii) do not vote to either accept or reject the Plan, or (iii) vote to reject the Plan and do not check the box in Item 3 above, you shall be deemed to have consented to the release provisions set forth in Section 10.7 of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan Releases.

**10. 6    Plan Injunction.**

(a)    Except as otherwise provided in this Plan, in the Plan Documents, or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan, and the Plan Documents, to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan and the Plan Documents; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of this Plan and the Plan Documents.

**First Lien Debt Claims**

**(b)**      **By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, without limitation, the injunctions set forth in this Section.**

**10.7**      **Releases.**

**(a)**      **Releases by the Debtors.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service and contributions of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, the Released Parties are deemed forever released and discharged by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the DIP Facility, the Amended and Restated First Lien Credit Facility, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement and any exhibits or documents relating thereto, and this Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to this Plan, any other act or omission, transaction, agreement, event, or other occurrence, or any other relief obtained by the Debtors in the Chapter 11 Case, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud.**

**(b)**      **Releases by Holders of Claims and Interests.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of and contribution of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, the Released Parties are deemed**

forever released and discharged by the (i) the holders of all Claims and Interests who vote to accept this Plan, (ii) holders of Claims or Interests that are Unimpaired under this Plan, where the applicable Claims or Interests have been fully paid or otherwise satisfied in accordance with this Plan, (iii)  holders of Claims or Interests whose vote to accept or reject this Plan was solicited but who did not vote either to accept or to reject this Plan, (iv) holders of Claims or Interests who voted to reject this Plan but did not opt out of granting the releases set forth herein, (v) the Restructuring Support Parties, (vi) the First Lien Agent, (vii) the Second Lien Agent, (viii) the DIP Facility Agent, and (ix) the DIP Facility Lenders, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the DIP Facility, the Amended and Restated First Lien Credit Facility, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement and any exhibits or documents relating thereto, this Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to this Plan, any other act or omission, or any other relief obtained by the Debtors in the Chapter 11 Case, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct; *provided*, that solely for purposes of this section 10.7(b), the Berkshire Funds shall be excluded from the definition of Released Party if they have not executed the Restructuring Support Agreement on or before the deadline established in the Plan for filing the Plan Supplement and become a Consenting Sponsor.

**10.8    Exculpation.**

To the extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the DIP Facility, the Amended and Restated First Lien Credit Facility, the Management Incentive Plan, the Disclosure Statement, the Restructuring Support Agreement, the Restructuring Transactions, and this Plan (including the Plan Documents), or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of Securities

under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for intentional fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**First Lien Debt Claims    4**

*IMPORTANT: NO CHAPTER 11 CASES HAVE NOT BEEN COMMENCED AS OF THE DATE OF DISTRIBUTION OF THIS BALLOT. THE DEBTORS (AS DEFINED HEREIN) INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PREPACKAGED PLAN OF REORGANIZATION BY THE BANKRUPTCY COURT SHORTLY THEREAFTER AS DESCRIBED IN GREATER DETAIL IN THE ACCOMPANYING DISCLOSURE STATEMENT. THIS BALLOT IS A COMPONENT OF THE PREPETITION SOLICITATION OF YOUR VOTE ON THE PREPACKAGED PLAN OF REORGANIZATION DESCRIBED BELOW. THE VOTING DEADLINE IS 5:00 P.M. EASTERN STANDARD TIME ON JANUARY 23, 2019.*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re:**<br><br>**CHECKOUT HOLDING CORP.,** *et al.,*<br><br>            **Debtors.**[1] | **Chapter 11 (Voluntary)**<br><br>**IMPORTANT:** No chapter 11 case has been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization.<br>If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |

**BALLOT FOR SECOND LIEN DEBT CLAIM HOLDERS TO ACCEPT OR REJECT THE PLAN**

**CLASS 4: SECOND LIEN DEBT CLAIMS**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M., EASTERN TIME, ON JANUARY 23, 2019 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY THE DEBTORS.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); CellFire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

**Second Lien Debt Claims**

> **YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE OR YOUR VOTE WILL NOT BE COUNTED.**

This ballot (the "**Ballot**") is provided to you to solicit your vote to accept or reject the Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated Debtors (the "**Plan**") for Checkout Holding Corp**.** and certain other of its affiliated debtors (collectively, the "**Debtors**"). Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined herein shall have the meanings given to them in the Plan.

Please use this Ballot to cast your vote to accept or reject the Plan if you are, as of December 10, 2018 (the "**Voting Record Date**"), (i) a holder of a claim (a "**Holder**") against the Debtors arising under that certain Second Lien Credit Agreement, (such claims against the Debtors arising under the Second Lien Credit Agreement, the "**Second Lien Debt Claims**"), and (ii) are also an "accredited investor" within the meaning of Rule 501 of the Securities Act of 1933, as amended (an "**Eligible Holder**"). Only Eligible Holders holding Second Lien Debt Claims may vote to accept or reject the Plan using this Ballot. If you hold one or more Second Lien Debt Claims but you are not an Eligible Holder, you may not use this Ballot or any other ballot to vote to accept or reject the Plan.

The Plan is attached as **Exhibit A** to the Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and Its Affiliated Debtors (the "**Disclosure Statement**"), which accompanies this Ballot. The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Plan. If you do not have a Disclosure Statement, you may obtain a copy from Prime Clerk, LLC (the "**Voting Agent**") by visiting the Voting Agent's website at https://cases.primeclerk.com/Catalina, calling (844) 205-4337 (toll free) or (917) 460-0912 (international hotline), or sending an email to Catalinaballots@primeclerk.com. You may wish to seek independent legal advice concerning the Plan and your classification and treatment under the Plan.

The Debtors intend to commence voluntary cases under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Plan can thereafter be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class, and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan, and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

**Second Lien Debt Claims**   6

If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or if you vote to reject the Plan.  To have your vote counted, you must complete, sign and return this Ballot to the Voting Agent by the Voting Deadline.

**Your rights are described in the Disclosure Statement and the Plan annexed as Exhibit A thereto.  Both the Disclosure Statement and the Plan are included in the packet you received with this Ballot. You should carefully and thoroughly review the Disclosure Statement and Plan prior to voting. You may wish to obtain legal advice.**

**PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. THESE PROVISIONS ARE FOUND IN ARTICLE X OF THE PLAN. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

---

**IMPORTANT NOTICE REGARDING
TREATMENT FOR CLASS 4**

Claims in Class 4 (Second Lien Debt Claims) consist solely of Claims arising under that certain Second Lien Credit Agreement, dated as of April 9, 2014.

As described in more detail in the Disclosure Statement and Plan, if the Chapter 11 cases are commenced, the Plan is confirmed and the Effective Date occurs, each holder of a Second Lien Debt Claim shall be entitled to receive, in full and final satisfaction of such Claim, its Pro Rata share of 10% of the New Common Stock issued on the Effective Date (subject to dilution by the Management Incentive Plan).

PLEASE READ THE DISCLOSURE STATEMENT AND PLAN FOR MORE DETAILS.

---

**Second Lien Debt Claims**   8

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ALL APPLICABLE ITEMS BELOW.  PLEASE FILL IN ALL
OF THE INFORMATION REQUESTED UNDER ITEM 4.  IF THIS BALLOT HAS NOT
BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Principal Amount of Claim**.  The undersigned hereby certifies that as of the Voting
Record Date, the undersigned was the Holder (or authorized signatory of such Holder) of a
Second Lien Debt Claim in the aggregate unpaid <u>principal</u> amount inserted into the box below,
without regard to any accrued but unpaid interest.

$

**Second Lien Debt Claims**   9

**Item 2.  Votes on Plan**.  Please vote either to accept or to reject the Plan with respect to your Claims in Class 4 below.  Any Ballot not marked either to accept or reject the Plan, or marked both to accept and to reject the Plan, shall not be counted in determining acceptance or rejection of the Plan.

---

**Prior to voting on the Plan, please note the following:**

**If you vote to accept the Plan, you shall be deemed to have consented to the release, injunction, and exculpation provisions set forth in sections 10.6, 10.7, and 10.8 of the Plan and attached hereto as <u>Exhibit 1</u>.**

**If you (i) do not vote either to accept or reject the Plan, or (ii) vote to reject the Plan and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Section 10.7 of the Plan and attached hereto as <u>Exhibit 1</u>.**

**The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation.**

---

**Second Lien Debt Claim Holder's Vote on Plan**.  The undersigned Holder of a Class 4 Second Lien Debt Claim votes to (check <u>one</u> box):

☐ **Accept** the Plan          ☐ **Reject** the Plan

**Second Lien Debt Claims**

**Item 3.  Optional Release Election**.  If you voted to reject the Plan in Item 2 above, check this box if you elect <u>not</u> to grant the releases contained in Section 10.7 of the Plan.  Election to withhold consent is at your option.  If you submit your Ballot without this box checked, or you do not vote either to accept or reject the Plan, you will be deemed to consent to the releases contained in Section 10.7 of the Plan to the fullest extent permitted by applicable law.  If you voted to accept the Plan in Item 2 above, you will be deemed to consent to the releases contained in Section 10.7 of the Plan to the fullest extent permitted by applicable law.

☐    The undersigned has voted to reject the Plan in Item 2 and elects <u>not</u> to grant the releases contained in Section 10.7 of the Plan.

**Second Lien Debt Claims**

**Item 4.  Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (i) it has the power and authority to vote to accept or reject the Plan, (ii) it was the Holder (or is entitled to vote on behalf of such Holder) of the Second Lien Debt Claim described in Item 1 as of the Voting Record Date, (iii) it is an "accredited investor" within the meaning of Rule 501(a) under Regulation D of the Securities Act of 1933, as amended, (iv) it has not submitted any other Ballots for other Class 4 Second Lien Debt Claims held in other accounts or other record names, or if it has submitted Ballots for other such Claims held in other accounts or other record names, then such Ballots indicate the <u>same</u> vote to accept or reject the Plan, and (v) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.  The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot failing to indicate either acceptance or rejection of the Plan, or indicating both acceptance and rejection of the Plan, will not be counted.

_____

Name of Holder

_____

Signature

_____

Name of Signatory and Title

_____

Name of Institution (if different than Holder)

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Date Completed

**Second Lien Debt Claims**   2

IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.  PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE RETURN ENVELOPE PROVIDED OR AS FOLLOWS:

---

**By First Class Mail, Overnight Courier or Personal Delivery:**

          **Catalina Marketing Corporation Ballot Processing**
          **c/o Prime Clerk LLC**
          **830 Third Avenue, 3rd Floor**
          **New York, NY 11030**

---

**If Submitting Your Vote through the E-Balloting Portal**

Prime Clerk will accept Ballots if properly completed through the E-Balloting Portal.  To submit your Ballot via the E-Balloting Portal, visit https://cases.primeclerk.com/catalina, click on the "Submit E-Ballot" section of the website, and follow the instructions to submit your Ballot.

IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:

    Unique E-Ballot ID#:_____

Prime Clerk's E-Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in **Item 1** of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.  Creditors who cast a Ballot using the E-Balloting Portal should NOT also submit a paper Ballot.

If your Ballot is not received by Prime Clerk on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted.

---

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**TELEPHONE: (844) 205-4337 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M., EASTERN TIME, ON JANUARY 23, 2019.**

**Second Lien Debt Claims**

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE VOTING AGENT BY CALLING (844) 205-4337 (TOLL FREE) OR (917) 460-0912 (INTERNATIONAL HOTLINE), OR SENDING AN EMAIL TO [CATALINABALLOTS@PRIMECLERK.COM](mailto:CATALINABALLOTS@PRIMECLERK.COM).

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.   Complete the Ballot by providing all the information requested and sign, date, and return the Ballot in the envelope provided to the Voting Agent.  Any Ballot that is illegible, contains insufficient information to identify the holder, does not contain an original signature, or is unsigned will not be counted.

     **The Voting Agent will tabulate all properly completed Ballots received on or before the Voting Deadline.**  Ballots may not be submitted to the Voting Agent by facsimile or email.

2.   If neither the "accept" nor the "reject" box is checked in Item 2, or the Ballot is otherwise not properly completed, executed, or timely returned, then the Ballot may not be counted. If both the "accept" and the "reject" box are checked in Item 2, the Ballot will not be counted.

3.   You must vote all your Class 4 Second Lien Debt Claims under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Second Lien Debt Claims the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan will likewise not be counted.

4.   If your Claim is held in multiple accounts, you may receive more than one Ballot coded for each such account for which your Claims are held. Similarly, if you hold a Claim in more than one Class entitled to vote you may receive more than one Ballot for each such Claim. Each Ballot votes only your Claims indicated on that Ballot. Accordingly, you must complete and return each Ballot you receive to vote multiple Claims.

5.   If you voted to reject the Plan and elect <u>not</u> to grant the releases contained in Section 10.7 of the Plan, check the box in Item 3.  Election to withhold consent is at your option.  If you submit your Ballot without the box in Item 3 checked, you will be deemed to consent to the releases set forth in Section 10.7 of the Plan to the fullest extent permitted by applicable law.

6.   If you vote to accept the Plan by checking the "accept" box in Item 2, but you also check the box in Item 3, your election not to grant the releases will not be counted, as your vote in favor of the plan shall be deemed a consent to the releases set forth in Section 10.7 of the Plan to the fullest extent permitted by applicable law.

**Second Lien Debt Claims**   2

7.      The Ballot does not constitute, and shall not be deemed to be, a proof of claim or interest or an assertion or admission of a Claim or Interest.

8.      The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.

9.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Voting Agent will supersede any prior Ballot.

10.     In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

11.     There may be changes made to the Plan that do not cause material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

12.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

13.     PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT IN THE ENVELOPE PROVIDED.

14.     IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALLING THE VOTING AGENT AT (844) 205-4337 (TOLL FREE) OR  (917) 460-0912 (INTERNATIONAL HOTLINE), OR SENDING AN EMAIL TO CATALINABALLOTS@PRIMECLERK.COM. PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

15.     THE VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

16.     ALL BALLOTS MUST BE FULLY EXECUTED TO BE COUNTED. IF YOU ARE COMPLETING THIS BALLOT ON BEHALF OF ANOTHER PERSON OR ENTITY, INDICATE YOUR RELATIONSHIP WITH SUCH PERSON OR ENTITY AND THE CAPACITY IN WHICH YOU ARE SIGNING. YOU MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION OR DOCUMENTATION WITH RESPECT TO SUCH RELATIONSHIP.

**Second Lien Debt Claims**   3

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR COMPLETED BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:**

---

**By First Class Mail, Overnight Courier or Personal Delivery:**

> **Catalina Marketing Corporation Ballot Processing**
> **c/o Prime Clerk LLC**
> **830 Third Avenue, 3rd Floor**
> **New York, NY 11030**

**If submitting your vote through the E-Balloting Portal:**

> **Please visit https://cases.primeclerk.com/catalina and click on the "Submit E-Ballot" section of the website, and follow the instructions.**

---

**TELEPHONE: (844) 205-4337 (TOLL FREE)**

**THE VOTING DEADLINE IS 5:00 P.M., EASTERN TIME, ON JANUARY 23, 2019.**

**Second Lien Debt Claims    4**

**Exhibit 1**

**Second Lien Debt Claims**

**Plan Injunction, Releases, and Exculpation**

       **If you vote to accept the Plan or you, directly or indirectly, receive and accept a distribution under the Plan, you shall be deemed to have consented to the injunction and exculpation provisions set forth in sections 10.6, 10.7, and 10.8 of the Plan. If you are entitled to vote on the Plan and you (i) vote to accept the Plan, (ii) do not vote to either accept or reject the Plan, or (iii) vote to reject the Plan and do not check the box in Item 3 above, you shall be deemed to have consented to the release provisions set forth in Section 10.7 of the Plan. The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation. Capitalized terms used in this Exhibit that are not otherwise defined herein shall have the meanings ascribed to them in the Plan Releases.**

**10. 6    <u>Plan Injunction.</u>**

       **(a)    Except as otherwise provided in this Plan, in the Plan Documents, or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan, and the Plan Documents, to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan and the Plan Documents; *provided*, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of this Plan and the Plan Documents.**

**Second Lien Debt Claims**

(b)    By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest will be deemed to have affirmatively and specifically consented to be bound by this Plan, including, without limitation, the injunctions set forth in this Section.

**10.7    Releases.**

(a)    **Releases by the Debtors.**  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service and contributions of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, the Released Parties are deemed forever released and discharged by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the DIP Facility, the Amended and Restated First Lien Credit Facility, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement and any exhibits or documents relating thereto, and this Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to this Plan, any other act or omission, transaction, agreement, event, or other occurrence, or any other relief obtained by the Debtors in the Chapter 11 Case, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud.

(b)    **Releases by Holders of Claims and Interests.**  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of and contribution of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, the Released Parties are deemed

forever released and discharged by the (i) the holders of all Claims and Interests who vote to accept this Plan, (ii) holders of Claims or Interests that are Unimpaired under this Plan, where the applicable Claims or Interests have been fully paid or otherwise satisfied in accordance with this Plan, (iii) holders of Claims or Interests whose vote to accept or reject this Plan was solicited but who did not vote either to accept or to reject this Plan, (iv) holders of Claims or Interests who voted to reject this Plan but did not opt out of granting the releases set forth herein, (v) the Restructuring Support Parties, (vi) the First Lien Agent, (vii) the Second Lien Agent, (viii) the DIP Facility Agent, and (ix) the DIP Facility Lenders, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the DIP Facility, the Amended and Restated First Lien Credit Facility, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement and any exhibits or documents relating thereto, this Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to this Plan, any other act or omission, or any other relief obtained by the Debtors in the Chapter 11 Case, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct; *provided*, that solely for purposes of this section 10.7(b), the Berkshire Funds shall be excluded from the definition of Released Party if they have not executed the Restructuring Support Agreement on or before the deadline established in the Plan for filing the Plan Supplement and become a Consenting Sponsor.

**10.8    Exculpation.**

To the extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the DIP Facility, the Amended and Restated First Lien Credit Facility, the Management Incentive Plan, the Disclosure Statement, the Restructuring Support Agreement, the Restructuring Transactions, and this Plan (including the Plan Documents), or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of Securities

**Second Lien Debt Claims    3**

under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for intentional fraud, gross negligence, or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.  The Exculpated Parties and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of Securities pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of Securities thereunder.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

**Second Lien Debt Claims    4**