# Exhibit A

(Final Financing Order)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---

| | |
|---|---|
| ------------------------------------------------------- x | |
| | : | |
| In re | : | **Chapter 11** |
| | : | |
| **CHECKOUT HOLDING CORP., et al.,** | : | **Case No. 18-12794 (KG)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |
| | : | **Re: D.I. 30, 106** |
| ------------------------------------------------------- x | |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364,**
**AND 507 AND BANKRUPTCY RULES 2002, 4001 AND 9014 FOR (I) AUTHORITY TO**
**(A) OBTAIN POST-PETITION SENIOR SECURED FINANCING, (B) USE CASH**
**COLLATERAL, (C) GRANT ADEQUATE PROTECTION TO PREPETITION**
**SECURED PARTIES, (D) GRANT LIENS AND SUPERPRIORITY CLAIMS, AND (E)**
**MODIFY THE AUTOMATIC STAY AND (II) RELATED RELIEF**

Upon the (the "**Motion**"),[2] of Checkout Holding Corp. (the "**DIP Borrower**") and the

other above-captioned debtors and debtors in possession (collectively, the "**Debtors**") seeking

entry of interim and final orders pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1),

364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503 and 507 of title 11 of the United States Code, 11

U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local

Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278).  The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion or the DIP Credit Agreement (as defined below), as applicable.

(i)        authorizing the DIP Borrower and the other Debtors to obtain senior secured post-petition financing (the "**DIP Facility**") in the aggregate principal amount of up to $275,000,000, of which $60,000,000 was made available upon entry of the order granting certain relief requested in the Motion on an interim basis [D.I. 106] (the "**Interim Order**") and the remainder of which shall be available upon entry of this order granting the relief sought in the Motion on a final basis (this "**Final Order**") and to otherwise incur the DIP Obligations (as defined below) on the terms and conditions set forth in this Final Order and the Senior Secured Super-Priority Debtor-in-Possession Credit Agreement (substantially in the form attached to the Motion as **Exhibit B** (as amended by that certain Amendment No. 1, substantially in the form attached as Exhibit C to the Notice of Filing of Proposed Form of "Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Bankruptcy Rules 2002, 4001 and 9014 for (I) Authority to (A) Obtain Post-Petition Senior Secured Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties, (D) Grant Liens and Superpriority Claims, and (E) Modify the Automatic Stay, and (II) Related Relief", dated January 16, 2019 [D.I. ___] (the "**DIP Amendment**"), and as may be further modified, amended, and/or supplemented, the "**DIP Credit Agreement**"), and together with all Loan Documents (as defined in the DIP Credit Agreement) and all other agreements, documents and instruments executed and delivered in connection with the DIP Credit Agreement, in each case, as amended, supplemented or otherwise modified from time to time, the "**DIP Documents**"), by and among the DIP Borrower, the DIP Facility Guarantors (as defined below), the lenders from time to time party thereto (collectively, the "**DIP Lenders**"), and JPMorgan Chase Bank. N.A., as administrative and collateral agent for the DIP Lenders (in such capacities, and, as applicable, in its capacity as

arranger of the DIP Facility, the "**DIP Agent**" and, together with the DIP Lenders and the other Secured Parties, the "**DIP Secured Parties**");

(ii)     authorizing each Debtor other than the DIP Borrower (collectively, the "**DIP Facility Guarantors**") to guarantee the DIP Obligations on a secured, and joint and several basis;

(iii)     authorizing the Debtors to execute and deliver the DIP Credit Agreement and the other DIP Documents to which they are a party and to perform their respective obligations thereunder and such other and further acts as may be necessary or appropriate in connection therewith;

(iv)     authorizing the Debtors to borrow up to an aggregate principal amount of $275,000,000, of which $150,000,000 shall be borrowed to permanently convert into DIP Obligations $150,000,000 of the outstanding Prepetition First Lien Loans (as defined below) under the First Lien Credit Agreement, dated as of April 9, 2014 (as amended, supplemented or otherwise modified as of the Petition Date, the "**Prepetition First Lien Credit Agreement**", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified as of the Petition Date, the "**Prepetition First Lien Documents**"), among PDM Holdings Corporation, as Holdings, Checkout Holding Corp., as borrower (the "**Prepetition First Lien Borrower**"), the guarantors from time to time party thereto (the "**Prepetition First Lien Guarantors**"), the lenders from time to time party thereto (the "**Prepetition First Lien Lenders**") and JPMorgan Chase Bank, N.A. as administrative agent (in such capacity, the "**Prepetition First Lien Agent**" and together with the Prepetition First Lien Lenders and the

3

other Secured Parties (as defined in the Prepetition First Lien Credit Agreement), the "**Prepetition First Lien Secured Parties**");

(v)       authorizing the Debtors to (a) use cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, the "**Cash Collateral**") pursuant to section 363 of the Bankruptcy Code, subject to the Approved Budget, which is subject to such variances as permitted in the DIP Credit Agreement, and the terms of this Final Order, and all other Prepetition Collateral (as defined below) and (b) provide adequate protection to the Prepetition First Lien Secured Parties;

(vi)      authorizing the DIP Agent to exercise remedies under, and in accordance with, the DIP Documents, and this Final Order upon the occurrence and during the continuance of an Event of Default (as defined below) and modification of the automatic stay to the extent necessary to permit such exercise of remedies;

(vii)      authorizing the Debtors to perform their obligations under, and pay the fees set forth in, the DIP Credit Agreement and the other DIP Documents;

(viii)     the waiver by the Debtors of any right to seek to surcharge against the DIP Collateral (as defined below) or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and the waiver by the Debtors of the equities of the case exception of section 552(b) of the Bankruptcy Code with respect to the DIP Collateral and the Prepetition Collateral; and

(ix)      waiving of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order and providing for the immediate effectiveness of this Final Order;

4

Notice of the Motion and of the interim hearing held on December 13, 2018 with respect thereto (the "**Interim Hearing**") having been served by the Debtors as set forth in the affidavit of service filed at D.I. 82, [and of entry of the Interim Order and the final hearing held on January [17], 2019 (the "**Final Hearing**")] having been served by the Debtors as set forth in the affidavit of service filed at D.I. 134; and such notice being sufficient under the circumstances; and the Court having reviewed the Motion; and the Interim Hearing [and Final Hearing] having been held before this Court; and upon the record made at the Interim Hearing [and Final Hearing]; and the Court having considered the Motion, the Del Genio Declaration, and the Puntus Declaration, and after due deliberation and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:**

A.    *Petition Date*.  On December 12, 2018 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    *Jurisdiction*.  This Court has core jurisdiction over the Debtors' chapter 11 cases (these "**Chapter 11 Cases**"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This Court may enter a final order consistent with Article III of the United States Constitution.  The legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014 and all applicable Local Rules.

C.    *Notice*.  Notice of the Motion, the Interim Hearing and the Final Hearing was served by the Debtors on (i) the United States Trustee for Region 3, J. Caleb Boggs Federal

5

Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin A. Hackman, Esq.); (ii) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (iii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iv) Jones Day, 250 Vesey Street, New York, NY 10281 (Attn: Scott J. Greenberg, Esq. and Michael J. Cohen, Esq.) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, Wilmington, DE 19801 (Attn: Laura Davis Jones, Esq.), as counsel to the DIP Lenders and the First Lien Ad Hoc Group; (v) Paul, Weiss, Rifkind, Wharton & Garrison LLP ("**Paul Weiss**"), 1285 Avenue of the Americas, New York, NY 10019 (Attn: Brian S. Hermann, Esq., and Robert A. Britton, Esq.), and Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**"), Rodney Square, 1000 N. King Street, Wilmington, DE 19801 (Attn: Pauline K. Morgan, Esq.), as counsel to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders; (vi) Davis Polk & Wardwell LLP, 450 Lexington Ave, New York, NY 10017 (Attn: Brian M. Resnick, Esq.) and Landis Rath & Cobb, 919 Market Street, Wilmington, DE 19801 (Attn: Adam Landis, Esq. and Kerri Mumford, Esq.), as counsel to JPMorgan Chase Bank, N.A., as Prepetition First Lien Agent and DIP Agent; (vii) Wilmer Cutler Pickering Hale & Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007 (Attn.: Andrew N. Goldman, Esq.), as counsel to Wilmington Savings Fund Society, FSB, as administrative agent under the Second Lien Credit Agreement; (viii) Debevoise & Plimpton LLP, 919 Third Avenue, New York, NY 10022 (Attn: My Chi To, Esq.), as counsel to an ad hoc group of holders of the HoldCo PIK Toggle Notes of PDM Intermediate Holdings B Corporation; (ix) the Internal Revenue Service; and (x) the United States Attorney's Office for the District of Delaware; (xi) the Banks; (xii) all parties known by the Debtors to hold or assert a lien on any asset of any

WEIL:\96861166\8\34225.0004

Debtor; and (xiii) any other party that has requested or is entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  Under the circumstances, the notice given by the Debtors of the Motion and the relief requested therein and the [Final Hearing] constitutes timely, adequate and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d) and all applicable Local Rules, and no further other or further notice of the relief sought at the [Final Hearing] was necessary or required.

D.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party, the Debtors, on behalf of themselves and their respective estates, admit, stipulate, and agree that:

(i)      *Prepetition First Lien Loans.*  Pursuant to the Prepetition First Lien Credit Agreement, the Prepetition First Lien Lenders provided to the Prepetition First Lien Borrower a term loan facility (the "**Prepetition First Lien Term Loan**") and a revolving credit facility (the "**Prepetition First Lien Revolving Facility**" and together with the Prepetition First Lien Term Loan, the "**Prepetition First Lien Loans**");

(ii)     *Prepetition First Lien Obligations*.  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition First Lien Revolving Facility was $55,000,000.00 and the aggregate principal amount outstanding under the Prepetition First Lien Term Loan was $1,002,750,000.00 (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition First Lien Documents, including all "Secured Obligations" as defined in the Prepetition First Lien Credit Agreement,

7

and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition First Lien Obligations**").  Under the Prepetition First Lien Revolving Facility, JPMorgan Chase Bank, N.A., in its capacity as L/C Issuer under the Prepetition First Lien Credit Agreement (the "**L/C Issuer**"), issued a letter of credit for the benefit of Epson America, Inc., a contract counterparty, in the amount of $5,000,000 (the "**JPM Letter of Credit**").  The JPM Letter of Credit is a Secured Obligation under the Prepetition First Lien Credit Agreement and is also secured by a separate first lien security interest in a cash collateral account maintained by Checkout Holding Corp. ("**CHC**") at JPMorgan Chase Bank, N.A. (the "**L/C Cash Collateral Account**") and all monies and funds deposited therein (as well as the proceeds thereof and investments and instruments related thereto) in an amount equal to 105% of the maximum amount available to be drawn by the beneficiary under the JPM Letter of Credit in accordance with the terms of that certain Cash Collateral Agreement, dated as of July 5, 2018, by and between CHC and the L/C Issuer (as amended, restated, amended and restated, supplemented or otherwise modified in accordance with the terms thereof, the "**L/C Cash Collateral Agreement**");

(iii)    *Prepetition Liens and Prepetition Collateral*.  As more fully set forth in the Prepetition First Lien Documents, prior to the Petition Date, the Debtors granted to the Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Lenders, a security interest in and continuing lien (the "**Prepetition Liens**") on certain of their assets and property, including, without limitation, a first priority security interest in and continuing lien on the Pledged Collateral and Article 9 Collateral (each as defined in the Prepetition First Lien Documents and collectively, the "**Prepetition Collateral**");

(iv)    the Prepetition First Lien Obligations constitute legal, valid, binding and

8

non-avoidable obligations against each of the Debtors and are not subject to any avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.  No payment or transfer made to or for the benefit of (or obligations incurred to or for the benefit of) the Prepetition First Lien Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with any of the Prepetition First Lien Documents is subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

(v)      the liens, security interests, and mortgages granted by the Debtors to the Prepetition First Lien Agent (for the ratable benefit of the Prepetition First Lien Secured Parties) to secure the Prepetition First Lien Obligations are (a) legal, valid, binding, perfected, enforceable, first priority liens on and security interests in the Prepetition Collateral to secure the Prepetition First Lien Obligations, (b) not subject to avoidance, recharacterization, offset or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law or other challenge and (c) subject to the Carve-Out (as defined below), subject and subordinate only to other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) solely to the extent such liens are permitted under the Prepetition First Lien Documents to be senior to the liens securing the Prepetition First Lien Obligations;

(vi)      *Prepetition Second Lien Loans*.  As of the Petition Date, certain of the Debtors were party to the Second Lien Credit Agreement, dated as of April 9, 2014 (as amended, supplemented or otherwise modified as of the Petition Date, the "**Prepetition Second Lien**

WEIL:\96861166\8\34225.0004

**Credit Agreement**", and together with all security, pledge and guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified as of the Petition Date, the "**Prepetition Second Lien Documents**" together with the Prepetition First Lien Documents, the "**Prepetition Loan Documents**"), among PDM Holdings Corporation, as Holdings, Checkout Holding Corp., as borrower, the lenders from time to time party thereto (together with the Administrative Agent and the other Secured Parties (each as defined in the Prepetition Second Lien Credit Agreement), the "**Prepetition Second Lien Lenders**") and Wilmington Savings Fund Society, FSB, as administrative agent for the Prepetition Second Lien Lenders (in such capacity, the "**Prepetition Second Lien Agent**", together with the Prepetition Second Lien Lenders, the "**Prepetition Second Lien Secured Parties**"; the loans thereunder, the "**Prepetition Second Lien Loans**");

(vii)    *Prepetition Second Lien Obligations.*    As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Second Lien Credit Agreement was $460,000,000 (together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations pursuant to the Prepetition Second Lien Documents, including all "Secured Obligations" as defined in the Prepetition Second Lien Credit Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Second Lien Obligations**" and together with the Prepetition First Lien Obligations, the "**Prepetition Secured Obligations**");

(viii)    *Prepetition Liens and Prepetition Collateral*.  As more fully set forth in the Prepetition Second Lien Documents, prior to the Petition Date, the Debtors granted to the Prepetition Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Lenders, a security interest in and continuing lien junior only to the Prepetition Liens (as defined above) on certain of their assets and property, including, without limitation, a second priority security interest in and continuing lien on the Pledged Collateral and Article 9 Collateral (each as defined in the Prepetition Second Lien Document, and which are substantially similar or identical to the Prepetition Collateral defined above);

(ix)    the Prepetition Second Lien Obligations constitute legal, valid, binding and, subject to the Challenge Period (as defined below) non-avoidable obligations against each of the Debtors and, subject to the Challenge Period, are not subject to any avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise and no payment or transfer made to or for the benefit of (or obligations incurred to or for the benefit of) the Prepetition Second Lien Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with any of the Prepetition Second Lien Documents is subject to avoidance, recharacterization, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise;

(x)    the liens, security interests, and mortgages granted by the Debtors to the Prepetition Second Lien Agent (for the ratable benefit of the Prepetition Second Lien Secured Parties) to secure the Prepetition Second Lien Obligations are (a) legal, valid, binding, perfected, enforceable, second-priority liens on and security interests in the Prepetition Collateral to secure

11

the Prepetition Second Lien Obligations, (b) subject to the Challenge Period, not subject to avoidance, recharacterization, offset or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law or other challenge and (c) subject to the Carve-Out (as defined below), subject and subordinate only to the first-priority Prepetition Liens and other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) solely to the extent such liens are permitted under the Prepetition Second Lien Documents to be senior to the liens securing the Prepetition Second Lien Obligations;

(xi)    *Priority of Prepetition Liens; Intercreditor Agreement*.    Certain of the Debtors entered into that certain Intercreditor Agreement (the "**Intercreditor Agreement**"), dated April 9, 2014 by and among PDM Holdings Corporation, Checkout Holding Corp., the other Grantors party thereto, the Prepetition First Lien Agent and the Prepetition Second Lien Agent  to govern the respective rights, interests, obligations, priority, and positions of the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties (collectively, the "**Prepetition Secured Parties**") with respect to the assets and properties of the Debtors and other obligors.  The Prepetition First Lien Borrower and each of the Prepetition First Lien Guarantors acknowledged and agreed to the Intercreditor Agreement;  and

(xii)    The Prepetition Secured Parties duly perfected their respective liens upon and respective security interests in the Prepetition Collateral by, among other things, filing financing statements, and, where necessary, possessing the relevant instruments, certificates, or other property.  Pursuant to the Prepetition First Lien Loan Documents and the Prepetition Second Lien Loan Documents, the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties, respectively, have perfected security interests in and liens on all of

the Prepetition Collateral.

E.    *Findings Regarding the Prepetition Secured Parties' Consent to Priming.*

(i)    The Prepetition Secured Parties have consented or are deemed to have consented (a) to the adequate protection and the priming of the Prepetition Liens provided for in this Final Order and (b) have agreed that such adequate protection and priming are authorized and permitted under the Intercreditor Agreement; provided, however, that the respective consents of the Prepetition First Lien Secured Parties to the priming of their Prepetition Liens, the use of the Prepetition Collateral (including Cash Collateral) and the sufficiency of the respective adequate protection provided for herein are expressly conditioned upon the entry of this Final Order and such consents shall not be deemed to extend to any other replacement financing or debtor-in-possession financing other than the DIP Facility provided for under the DIP Documents; provided, further, that such consents shall be of no force and effect in the event this Final Order is not entered (or is entered and subsequently vacated) and the DIP Documents are not approved; provided, further, however, that in the event of the occurrence of the Maturity Date (as defined in the DIP Credit Agreement), nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the Debtors' continued use of Prepetition Collateral (including Cash Collateral).

(ii)    Pursuant to the Intercreditor Agreement, the Prepetition First Lien Secured Parties' consent to adequate protection and priming of the Prepetition Liens satisfies section 364(d)(1) of the Bankruptcy Code.

F.    *Findings Regarding the DIP Loans.*

(i)    *Request for Postpetition Financing*.  The Debtors seek authority on a final basis to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents,

13

and (b) use Cash Collateral on the terms described herein to administer these Chapter 11 Cases and fund their operations.

(ii)  *Priming of the Prepetition Liens*.  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors.  The Prepetition First Lien Secured Parties are entitled to receive adequate protection as set forth in this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code for any diminution in value of their interests in the Prepetition Collateral (including Cash Collateral).

(iii)  *Need for Postpetition Financing and Use of Cash Collateral*.  Since the Petition Date, the Debtors have had an immediate and critical need to use Cash Collateral and to continue obtaining credit pursuant to the DIP Facility in order to, among other things, enable the orderly continuation of their operations, to administer and preserve the value of their estates and to prosecute the transactions contemplated under the Restructuring Support Agreement.  The ability of the Debtors to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)  *No Credit Available on More Favorable Terms*.  Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and

14

continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility.  The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) the DIP Collateral (as specified herein), (2) superpriority claims and liens, and (3) the other protections and terms set forth in this Final Order

> (v)      *Use of Proceeds of the DIP Facility*.  As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of this Final Order and the DIP Documents and in accordance with the Approved Budget (as the same may be modified from time to time consistent with the terms of the DIP Documents), and subject to such variances as permitted in the DIP Credit Agreement, solely for: (a) working capital and letters of credit, (b) other general corporate purposes of the Debtors; (c) permitted payment of costs of administration of these Chapter 11 Cases; (d) payment of such other prepetition obligations as consented to by the DIP Agent (acting at the direction of the Required DIP Lenders); (e) payment of interest, fees and

15

expenses (including without limitation, legal and other professionals' fees and expenses of the DIP Agent and DIP Lenders) owed under the DIP Documents; (f) subject to approval by the Court of the application for retention by Debtors of Centerview Partners LLC, the payment of fees and expenses of Centerview Partners LLC, investment banker to the Debtors, earned in connection with the DIP Facility, as set forth in its retention agreement; (g) payment of certain adequate protection amounts to the Prepetition First Lien Secured Parties, as set forth in paragraph 5(c); (h) the roll-up of a portion of the Prepetition First Lien Obligations into DIP Obligations, as set forth below; and (i) payment of the Carve-Out (as defined below).  The roll-up of $150,000,000 of the Prepetition First Lien Obligations into DIP Obligations approved on a final basis in this Final Order is necessary as the Prepetition First Lien Secured Parties have not otherwise consented to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agent and the DIP Lenders will not otherwise consent to providing the DIP Facility and extending credit to the Debtors thereunder.

(vi)     *The DIP Facility Terms and Conditions are Fair and Reasonable*.  Based on the Motion, the Declarations, and the record presented to the Court at the Interim Hearing [and Final Hearing], the extensions of credit under the DIP Facility pursuant to the DIP Documents (including the payment of fees contemplated thereunder) and the use of the Prepetition Collateral, including the Cash Collateral, pursuant to this Final Order are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(vii)     *Roll-Up Loans*.  Subject to the investigation period established in

16

paragraph 25 of this Final Order, without any further action by the Debtors or any other party, $150,000,000 of the Prepetition First Lien Loans shall be converted into DIP Obligations (the "**DIP Roll-Up Loans**"). The conversion (or "roll-up") shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition First Lien Lenders that are also DIP Lenders or affiliates thereof to fund DIP Loans and not as payments under, adequate protection for, or otherwise on account of, any Prepetition First Lien Obligations.  Notwithstanding any other provision of this Final Order, the DIP Credit Agreement or the Intercreditor Agreement, all rights of the Prepetition First Lien Lenders shall be fully preserved.  The Prepetition First Lien Secured Parties would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Lenders would not be willing to provide the DIP Loans or extend credit to the Debtors thereunder without the inclusion of the DIP Roll-Up Loans in the DIP Obligations.

(viii)   The DIP Documents, the use of the Prepetition Collateral, including the Cash Collateral, and the grant of adequate protection hereunder have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the Prepetition First Lien Secured Parties, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Documents, this Final Order and the DIP Loans (collectively, including any other Obligations (as defined in the DIP Credit Agreement), the "**DIP Obligations**") shall be deemed to have been extended by the DIP Agent and DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.  Any such reversal,

WEIL:\96861166\8\34225.0004

modification, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder or any lien, claim or priority authorized or created hereby. Any liens or claims granted to the DIP Secured Parties hereunder arising prior to the effective date of any such reversal, modification, or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

**IT IS ORDERED that**:

1.      *Approval of Motion*.  The Motion is granted, the DIP Financing is authorized and approved, and the use of Cash Collateral on a final basis is authorized, subject to the terms and conditions set forth in the DIP Documents and this Final Order.   Any objection to the Motion and entry of this Final Order that has not been withdrawn, waived, settled, or otherwise resolved is hereby denied and overruled on the merits.

2.      *Authorization of the DIP Loans and the DIP Documents.*

(a)      The DIP Facility is hereby approved on a final basis.  The Debtors are hereby authorized to (i) continue incurring and performing under the DIP Documents, (ii) subject to the terms of the DIP Credit Agreement, borrow up to $125,000,000.00 and (iii) incur the DIP Roll-Up Loans.  The proceeds of the DIP Loans shall be used for, subject to the terms of this Final Order, the DIP Documents and the Approved Budget (subject to such variances as permitted in the DIP Credit Agreement), the uses set forth in paragraph F(vi) herein.

(b)      In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and empowered to continue to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for such Debtor's continued performance of its obligations under the applicable DIP

WEIL:\96861166\8\34225.0004

Documents, including:

> (i)    the execution, delivery and continued performance under the DIP Documents;
>
> (ii)   the execution, delivery and performance of one or more amendments, waivers, consents or modifications to and under the DIP Documents (in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors, the DIP Agent and the required DIP Lenders may agree) and no further approval of this Court shall be required for any such amendment, waiver, consent or other modification (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith)) that does not materially and adversely affect the Debtors or which does not (A) shorten the scheduled maturity of the DIP Loans, (B) increase the principal amount of the DIP Facility or the rate of interest payable on the DIP Loans, or (C) change any Event of Default, add any covenants or amend the covenants therein, in any such case to be materially more restrictive on the Debtors; and
>
> (iii)  the performance of all other acts required under or in connection with the DIP Documents.

(c)    The DIP Documents constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Final Order and the DIP Documents.  All DIP Obligations of the DIP Borrower shall continue to be unconditionally guaranteed by each of the DIP Guarantors on a joint and several basis as provided in the DIP Documents.

(d)    Subject to the investigation period established in paragraph 25 of this Final Order, the Debtors are authorized to take such acts as shall be necessary or desirable in order to effect the roll-up and conversion of $150,000,000 of Prepetition First Lien Loans beneficially owned by the applicable DIP Lenders as of 5:00 p.m. Eastern Time on the date of entry of the Final Order (the "**DIP Record Date**") into DIP Roll-Up Loans.

(e)    No obligation, payment, transfer or grant of security by the Debtors under

19

the DIP Documents or this Final Order shall be voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(f)     Each officer of a Debtor (and any other person so authorized by the Debtors) acting singly is hereby authorized to execute and deliver each of the DIP Documents, such execution and delivery to be conclusive of their respective authority to act in the name of and on behalf of the Debtors.

(g)     The Debtors are hereby authorized and directed to pay, in accordance with this Final Order and subject to the objection period described in paragraph 6(c) below (as applicable), the principal, interest, fees, payments, expenses and other amounts described in the DIP Documents as such amounts become due and without need to obtain further Court approval, including, without limitation, backstop, closing, arrangement or commitment fees, administrative agent's fees and collateral agent's fees, the reasonable fees and disbursements of the DIP Agent's and DIP Lenders' attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to continue taking any other actions that may be necessary or appropriate, all to the extent provided in this Final Order or the DIP Documents.

3.      *Superpriority Claims*.  Subject in all respects to the Carve-Out and to paragraph 38 hereof, upon entry of this Final Order, the DIP Agent and DIP Lenders are hereby granted on a final basis, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority senior administrative expense claims (the "**Superpriority Claims**") against the Debtors on a joint and several basis or their estates (without the need to file a proof of claim or request for payment) in these Chapter 11 Cases and upon the conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such subsequent chapter 7 case or other cases or proceedings, "**Successor Cases**") for all DIP Obligations with priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors or their estates in the Chapter 11 Cases or any Successor Cases, at any time existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of each of the Debtors, including proceeds of Avoidance Actions (as defined below) other than any CMC Avoidance Actions (as defined below).  Other than the Carve-Out, no priority claims are, or will be, senior to, prior to, or pari passu with the Superpriority Claims, or any of the DIP Obligations, or with any other claims of the DIP Agent or the DIP Lenders arising hereunder or under the other DIP Documents, or otherwise in connection with the DIP Facility.

4.      *DIP Liens*.  As security for the DIP Obligations, effective and perfected

21

immediately as of the date of the Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests in and liens and mortgages upon all tangible and intangible prepetition and post-petition property in which any of the Debtors or their respective estates have an interest of any kind or nature, whether existing on or as of the Petition Date or thereafter acquired or created, wherever located (collectively, the "**DIP Collateral**"), including, without limitation, all cash (whether maintained with the DIP Agent or otherwise), accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, owned real estate, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property (and proceeds from the disposition thereof), letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock held by each Debtor, other equity or ownership interests, including, without limitation, equity interests in subsidiaries (including first tier foreign subsidiaries), money, investment property, proceeds of Avoidance Actions other than any CMC Avoidance Actions, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all of the foregoing, were granted upon entry of the Interim Order (other than the proceeds of Avoidance Actions), and are hereby granted on a final basis to the DIP Agent, for its own benefit and the benefit of the DIP Lenders, subject only to the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the

benefit of the DIP Lenders, pursuant to this Final Order and the DIP Documents, the "**DIP Liens**"):

(a)    *First Lien on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all DIP Collateral that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or valid liens perfected (but not granted) after the Petition Date to the extent such postpetition perfection is expressly permitted by section 546(b) of the Bankruptcy Code (collectively, the "**Previously Unencumbered Property**"), including (i) any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, vehicles, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property; (ii) all of the issued and outstanding capital stock or equivalents of each of the Debtors' direct subsidiaries, including issued and outstanding capital stock or equivalents of each of the Debtors' first tier foreign subsidiaries; (iii) to the extent the applicable parties under any applicable governing documents have provided consent or have been deemed to have consented to a lien thereon, the Debtors' membership interests or equivalents in NC Ventures, LLC (the "**JV Interest**"); (iv) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral (collectively, "**Section 549 Actions**"); (v) the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than Section 549 Actions) (collectively, "**Avoidance Actions**") other than any CMC Avoidance Actions; and (vi) the proceeds, products and offspring of all of the foregoing; provided, however, that the DIP Collateral shall not include, (x) to the extent the

23

applicable parties under any applicable governing documents have not provided consent and have not been deemed to have consented to a lien on the JV Interest, the JV Interest and (y) Avoidance Actions (which, for the avoidance of doubt, excludes Section 549 Actions); provided, further, that the DIP Collateral shall include the proceeds, products and offspring of all of the foregoing (other than proceeds of CMC Avoidance Actions); and provided, further that the DIP Collateral for the DIP Roll-Up Loans shall not include Previously Unencumbered Property.

(b)     *Liens Priming the Liens of the Prepetition Secured Parties*.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority, senior priming lien on, and security interest in, all DIP Collateral comprising the Prepetition Collateral.  The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of each of the Prepetition Secured Parties, including the Adequate Protection Liens (as defined below) granted to such Prepetition Secured Parties.

(c)     *Liens Junior to Permitted Senior Prior Liens*.  Pursuant to section 364(c) of the Bankruptcy Code, liens on the DIP Collateral that are junior to the liens of the L/C Issuer on all Collateral (as defined in the L/C Cash Collateral Agreement) and all liens permitted to be senior to the Prepetition First Lien Secured Parties' liens on the Prepetition Collateral pursuant to Section 7.01 of the Prepetition First Lien Credit Agreement (the "**Permitted Prepetition Senior Liens**").  For the avoidance of doubt, the DIP Liens shall be prior and senior to all liens and security interests, now existing or hereafter arising, in favor of any other creditor or any other person whatsoever other than the Permitted Prepetition Senior Liens and the DIP Liens shall not prime any Permitted Prepetition Senior Liens.

5.     *Application of Proceeds of DIP Collateral*. The DIP Obligations other than DIP

Obligations relating to the DIP Roll-Up Loans, at the option of the Required Lenders (as defined in the DIP Credit Agreement, the "**Required DIP Lenders**"), to be exercised in their sole and absolute discretion, shall be repaid (a) first, from the DIP Collateral comprising Previously Unencumbered Property and (b) second, from all other DIP Collateral; provided, however, in the event the Debtors propose or pursue a chapter 11 plan other than the plan contemplated by the Restructuring Support Agreement and such plan is not supported by the Consenting Second Lien Lenders (as defined in the Restructuring Support Agreement), the respective rights of the DIP Lenders and the Consenting Creditors (as defined in the Restructuring Support Agreement) in connection with the allocation of value and distributions under such alternative chapter 11 plan shall be fully preserved.

6.    *Adequate Protection for the Prepetition First Lien Agent and Prepetition First Lien Lenders.*  The Prepetition First Lien Secured Parties are entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), 364(d)(1), 364(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Prepetition Collateral, including any such diminution resulting from the sale, lease, encumbrance or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition First Lien Agent's liens on the Prepetition Collateral by the DIP Liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "**Adequate Protection Obligations**").  As adequate protection, the Prepetition First Lien Agent and the Prepetition First Lien Lenders were granted upon entry of the Interim Order (as applicable), and are hereby granted on a final basis, the following:

(a)    *Adequate Protection Liens*.  As security for the payment of the Adequate

Protection Obligations, the Prepetition First Lien Agent (for itself and for the benefit of the Prepetition First Lien Secured Parties) is hereby granted on a final basis (effective and perfected as of the date of the Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected security interest in and lien (the "**Adequate Protection Liens**") on all of the DIP Collateral (including all Previously Unencumbered Property), which will be subject and subordinate only to (i) the DIP Liens and (ii) the Carve-Out.

(b)      *Adequate Protection Claims*.  The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "**Adequate Protection Claims**") that will have a priority in payment over any and all other administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c), 507(b), 546(c), 546(d), 726, 1113 and 1114  of the Bankruptcy Code and shall be payable from and have recourse to all pre and post-petition property of each of the Debtors, including proceeds of Avoidance Actions (as defined below) other than any CMC Avoidance Actions, subject and subordinate only to (i) the Carve-Out, and (ii) the Superpriority Claims granted in respect of the DIP Obligations.

(c)      *Fees and Expenses*.  As additional adequate protection to the Prepetition First Lien Agent and the Prepetition First Lien Lenders, the Debtors shall pay all reasonable and documented out-of-pocket fees and expenses payable to the Prepetition First Lien Agent and the L/C Issuer under the Prepetition First Lien Documents (including any forbearance agreements), whether incurred pre-or post-petition, including the fees and expenses of (a) of Davis Polk & Wardwell LLP, as primary counsel for the Prepetition First Lien Agent and the L/C Issuer, (b)

Landis Rath & Cobb LLP, as local counsel for the Prepetition First Lien Agent and the L/C Issuer, (c) Ankura Group Consulting, LLC, as financial advisor for the Prepetition First Lien Agent and the L/C Issuer, (d) Jones Day, as primary counsel for the Prepetition First Lien Lenders, (e) Pachulski Stang Ziehl & Jones LLP, as local counsel for the Prepetition First Lien Lenders, (f) Evercore Group L.L.C., as financial advisor to the Prepetition First Lien Lenders, (g) Paul Weiss, as counsel to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of  Prepetition Second Lien Lenders, (h) Young Conaway, as local counsel to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders, (i) PJT Partners, LP, as financial advisor to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders, (j) Wilmer Cutler Pickering Hale and Dorr LLP, as primary counsel to the Prepetition Second Lien Agent, and (k) one local counsel to the Prepetition Second Lien Agent.  None of the fees and expenses payable pursuant to this paragraph 6(c) shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtors and any official committee of unsecured creditors appointed in these Chapter 11 Cases (the "**Committee**") may object to the reasonableness of such fees and expenses incurred after the date hereof within ten (10) days of the receipt of an invoice detailing such fees and expenses, and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto; provided that the Debtors shall pay any undisputed portion of such fees, costs and expenses ten (10) days after the initial presentment to the Debtors of such invoice.  Promptly following the completion of the ten (10) day objection period, if no objection is made or following the resolution of any dispute regarding the fees and expenses payable

WEIL:\96861166\8\34225.0004

pursuant to this paragraph 5(c), the Debtors shall pay the professional fees and expenses provided for in this paragraph 5(c) promptly after receipt of monthly invoices therefor, and the Prepetition First Lien Agent and Prepetition First Lien Lenders shall promptly provide copies of such invoices (redacted to protect privileges) to counsel to the Committee and to the U.S. Trustee.

(d)      *Indemnification Account.* Upon the commencement of an action asserting Claims and Defenses (as defined below), the Debtors are further authorized and directed to pay to the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, $150,000 into a noninterest bearing account maintained at a financial institution reasonably acceptable to the Prepetition First Lien Agent, the Required Lenders (as defined in the Prepetition First Lien Credit Agreement, the "**Required First Lien Lenders**") and the Debtors (the "**Prepetition Indemnity Reserve**") to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition First Lien Documents (the "**Prepetition Indemnity Obligations**"). The Prepetition Indemnity Reserve shall (i) secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition First Lien Agent, the Prepetition First Lien Lenders, and any other Prepetition First Lien Secured Parties in connection with or responding to (A) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 25 hereof, or (B) any challenge against the Prepetition First Lien Agent, the Prepetition First Lien Lenders, or the other Prepetition First Lien Secured Parties related to the Prepetition First Lien Documents, the Prepetition First Lien Obligations, or the Prepetition Liens granted to the Prepetition First Lien Agent, as applicable, whether in these Chapter 11 Cases or independently in another forum or venue; (ii) the Prepetition Indemnity Obligations shall be secured by a first lien on the Prepetition Indemnity Reserve and the funds therein and by a lien on the Prepetition Collateral

WEIL:\96861166\8\34225.0004

(subject in all respects to the Intercreditor Agreement); (iii) the Prepetition First Lien Secured Parties may apply amounts in the Prepetition Indemnity Reserve against the Prepetition First Lien Obligations as and when they arise, without further notice to or consent from the Debtors, the Committee, or any other parties in interest and without further order of this Court; and (iv) until the Challenge Period Termination Date (as defined below), the Prepetition First Lien Agent (for itself and on behalf of the Prepetition First Lien Lenders and the other Prepetition First Lien Secured Parties) shall retain and maintain the Prepetition Liens granted to the Prepetition First Lien Agent as security for the amount of any Prepetition Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition Indemnity Reserve: provided, that (A) any such indemnification claims shall (I) be subject to the terms of the Prepetition First Lien Documents and (II) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 25 hereof, and (B) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s). The Prepetition Indemnity Reserve shall be subject to the DIP Liens and the Adequate Protection Liens, subject to the priority set forth herein. The Prepetition Indemnity Reserve shall be released and become property of the estate upon the indefeasible payment in full in cash of the Prepetition First Lien Obligations or the withdrawal or dismissal of the applicable challenge. Notwithstanding anything in this Final Order or the DIP Credit Agreement to the contrary, the funding of the Prepetition Indemnity Reserve shall be excluded for the purposes of determining compliance with the Budget or associated variance requirements. The Prepetition First Lien Agent shall incur no costs or liability whatsoever in connection with the establishment and maintenance of the Prepetition Indemnity Reserve or any account related thereto.

(e)     *Reporting*.  The Debtors shall deliver to the Prepetition First Lien Agent copies of all financial and other reporting delivered pursuant to Section 6.19 of the DIP Credit

WEIL:\96861166\8\34225.0004

Agreement, which reporting the Prepetition First Lien Agent shall be authorized to deliver to the Prepetition First Lien Lenders vía the "private" side of the data site administered by the Prepetition First Lien Agent for the benefit of the Prepetition First Lien Lenders.  The Debtors shall deliver to the Prepetition Second Lien Agent copies of all financial and other reporting delivered to the Prepetition First Lien Agent under Section 6.19 of the DIP Credit Agreement, which reporting the Prepetition Second Lien Agent shall be authorized to deliver to the Prepetition Second Lien Lenders vía the "private" side of the data site administered by the Prepetition Second Lien Agent for the benefit of the Prepetition Second Lien Lenders.

7.      *Carve-Out.*  Subject to the terms and conditions contained in this paragraph 7, each of the DIP Liens, Superpriority Claims, Prepetition Liens, Adequate Protection Liens and Adequate Protection Claims shall be subject and subordinate to payment of the Carve-Out solely in the event of the delivery of a Carve-Out Trigger Notice (as defined below).

(a)      For purposes of this Final Order, "**Carve-Out**" means the sum of (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees (including success, completion, or transaction fees), disbursements, costs, and expenses accrued or incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code and any professionals retained by the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (collectively the "**Professional Fees**") at any time before or on the first business day following delivery by the DIP Agent of a Carve-Out Trigger Notice, whether allowed by this Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv)

WEIL:\96861166\8\34225.0004

Professional Fees in an aggregate amount not to exceed $3,500,000 incurred after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Carve-Out Trigger Notice Cap**"); provided that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, costs, disbursements, reimbursement, or compensation described in clauses (ii) through (iv) above, on any grounds.  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (acting at the direction of the Required DIP Lenders) to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered only upon the occurrence and during the continuation of an Event of Default, stating expressly that the Carve-Out Trigger Notice Cap has been invoked.  During the occurrence and continuation of an Event of Default (as defined below), at the direction of the Required Lenders, the DIP Agent shall, as promptly as reasonably practicable, deliver a Carve-Out Trigger Notice.

(b)      On the day on which a Carve-Out Trigger Notice is received by the Debtors (the "**Termination Declaration Date**"), and prior to any payment to the DIP Agent or DIP Lenders on account of the DIP Obligations or to any Prepetition Secured Party on account of any adequate protection, the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand (including Cash Collateral) as of such date and any available cash thereafter held by any Debtor, and the DIP Agent shall direct the depository bank at which such Carve-Out Account is maintained to release the funds in the Carve-Out Account to the Debtors. Upon the delivery of the Carve-Out Trigger Notice, the Debtors shall transfer to the Post Carve-Out Trigger Notice Account (as defined below) all such cash referred to in the preceding

sentence in an amount equal to the Carve-Out Trigger Notice Cap plus the Debtors' good faith estimate of any sums due under clauses 7(a)(i) through (iii) above as cash becomes available until such amounts are fully funded.  The Debtors shall deposit and hold such amounts in a segregated account (the "**Post Carve-Out Trigger Notice Account**") in trust to pay such Professional Fees prior to any and all other claims (including the DIP Claims, the Adequate Protection Claims, and the Superpriority Claims).  The Debtors shall be authorized to use funds held in the Post Carve-Out Trigger Notice Account to pay Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any interim or final orders of the Court; provided, that when all allowed Professional Fees have been paid in full pursuant to a final order of the Court, and there are no disputed Professional Fees, any funds remaining in the Post Carve-Out Trigger Notice Account shall revert to the Debtors for use in a manner not inconsistent with the Final Order.

(c)     Notwithstanding anything to the contrary in the DIP Documents, the Interim Order, or this Final Order, the DIP Agent and the Prepetition First Lien Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Post Carve-Out Trigger Notice Account has been fully funded, but shall each have a security interest in any residual interest in the Post Carve-Out Trigger Notice Account, subject to the relative priorities set forth herein.    Further, notwithstanding anything to the contrary in this Final Order (i) the failure of the Post Carve-Out Trigger Notice Account to satisfy in full the Professional Fees shall not affect or impair the priority of the Carve-Out, (ii) disbursements by the Debtors from the Post Carve-Out Trigger Notice Account shall not constitute DIP Loans or increase or reduce the balance of the DIP Obligations outstanding; and (iii) and in no way shall the Approved Budget, Carve-Out, Carve

32

Out Trigger Notice Cap, Post Carve-Out Trigger Notice Account, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors; provided, however, in no event shall the DIP Lenders or DIP Agent be obligated to make DIP Loans in excess of the aggregate commitment amount set forth in the DIP Credit Agreement.  The DIP Agent shall incur no costs or liability whatsoever in connection with the Carve-Out.

(d)     For the avoidance of doubt and notwithstanding anything to the contrary herein or in any intercreditor agreement, the DIP Documents, or in any of the Prepetition Loan Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Loans (including the Superpriority Claims), and any and all other forms of adequate protection, liens, or claims securing the DIP Facility or the obligations under the Prepetition Secured Obligations.

(e)     Any payment or reimbursement in respect of any Professional Fees made prior to the occurrence of the Termination Declaration Date shall not reduce the Carve-Out.  Any payment or reimbursement in respect of any Professional Fees made on a final basis or after the occurrence of the Termination Declaration Date shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

8.     *Liens Senior to Certain Other Liens*.  Except with respect to payment of the Carve Out, no claim or lien, security interest or mortgage having a priority senior to or pari passu with those granted by the Interim Order or this Final Order to the DIP Agent and the DIP Secured Parties shall be granted or allowed while any portion of the DIP Obligations remain outstanding, and the DIP Liens and Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens, security interests or

33

mortgages arising after the Petition Date or (ii) subordinated to or made pari passu with any other lien, security interest or mortgage under sections 363 or 364 of the Bankruptcy Code or otherwise.  The DIP Liens and Adequate Protection Liens shall be valid and enforceable in any Successor Case and/or upon the dismissal of any of the Chapter 11 Cases. The DIP Liens shall not be subject to section 510 of the Bankruptcy Code, to the "equities of the case" exception of section 552 of the Bankruptcy Code, or to section 506(c) of the Bankruptcy Code, or sections 549, 550 or 551 of the Bankruptcy Code.

9.      *Limitation on Charging Expenses against Collateral.*

(a)      No costs or expenses of administration of the Chapter 11 Cases or any Successor Cases shall be charged against or recovered from the DIP Agent or DIP Lenders, or any of their respective claims, or the DIP Collateral, as the case may be, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent (provided at the direction of the Required DIP Lenders), and no such consent shall be implied from any other action or inaction by the DIP Agent or the DIP Lenders.

(b)      No costs or expenses of administration of these Chapter 11 Cases or any Successor Cases shall be charged against or recovered from any of Prepetition First Lien Secured Parties, any of the Prepetition Second Lien Secured Parties, or any of their respective claims, or the Prepetition Collateral or the Adequate Protection Liens, as the case may be, pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition First Lien Agent (with the consent of the Required First Lien Lenders) and no such consent shall be implied from any other action or inaction by any of Prepetition First Lien Secured Parties or any of the Prepetition Second Lien Secured Parties.

10.      *Limitations under Section 552(b) of the Bankruptcy Code.*   The Prepetition

Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Secured Parties with respect to (a) proceeds, products, or offspring of any of the Prepetition Collateral or (b) the extension of the Adequate Protection Liens to the proceeds, products or offspring of the Prepetition Collateral.

11.    *Payments Free and Clear.*  Subject to any successful challenge timely asserted in accordance with paragraph 25 of this Final Order and the Carve-Out, any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or to the Prepetition First Lien Secured Parties pursuant to the provisions of the Interim Order, this Final Order, or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability.  For the avoidance of doubt, nothing herein relieves the Debtors from their obligations to report disbursements on their monthly operating reports and to pay quarterly fees thereon.

12.    *Use of Prepetition Collateral, Including Cash Collateral.*  Subject to the terms and conditions of this Final Order, the DIP Facility and the DIP Documents and in accordance with the Approved Budget, subject to such variances as permitted in the DIP Credit Agreement, the Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, for working capital and general corporate purposes, including interest, fees, costs and expenses related to these Chapter 11 Cases, the DIP Loans and the DIP Documents, including payment of any adequate protection obligations as set forth herein; <u>provided</u>  that nothing in this Final Order shall authorize the sale, transfer, lease, encumbrance or other disposition of any assets of the Debtors or their estates without the prior written consent of the DIP Agent (provided at the direction of the Required DIP Lenders) (and no such consent or direction shall be implied from

35

any other action, inaction or acquiescence by the DIP Agent or any DIP Lender or any order of this Court), except as permitted in the DIP Documents and this Final Order and approved by the Court to the extent required under applicable bankruptcy law.

13.    *Continuation of Prepetition Liens*.   Until (a) the Debtors have paid in full all Prepetition First Lien Obligations and (b) all objections and challenges to (i) the liens and security interests of the Prepetition First Lien Secured Parties (including, without limitation, liens granted for adequate protection purposes) and (ii) the Prepetition First Lien Obligations have been waived, denied or barred, and (c) all of the Debtors' stipulations contained in paragraph D of this Final Order (collectively, the "**Debtors' Stipulations**") have become binding upon the their estates and parties in interest in accordance with paragraph 25, all liens and security interests of the Prepetition First Lien Secured Parties (including, without limitation, liens granted for adequate protection purposes) and the Second Lien Secured Parties shall remain valid and enforceable with the same continuing priority as described herein.

14.    *Right to Seek Additional Adequate Protection.*   The Prepetition First Lien Agent (with the consent of the Required First Lien Lenders) may request further or different adequate protection or seek the allowance of adequate protection claims, and the Debtors or any other party in interest may contest any such request (notwithstanding their agreement to otherwise consent to the terms of this Final Order); provided that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Secured Parties and the DIP Documents.  Furthermore, the consent of the Prepetition First Lien Secured Parties to the priming of the Prepetition Liens by the DIP Liens does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition First Lien Secured Parties that their interests in the Prepetition Collateral are adequately protected pursuant

to this Final Order or otherwise, and, to the extent of any dispute regarding the payment or entitlement to adequate protection, including adequate protection granted pursuant to this Final Order, the Debtors shall retain the burden of proof.

15.     *Perfection of DIP Liens and Adequate Protection Liens*.  The DIP Agent and the Prepetition First Lien Agent continue to be authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over (including pursuant to a deposit account control agreement), or take any other action in order to validate and perfect the DIP Liens or the applicable Adequate Protection Liens granted to them hereunder, subject to the terms of the DIP Documents, and the automatic stay is hereby lifted on a final basis solely to permit such authorized actions.  In addition, to the extent that any filing and any other perfection actions described in the foregoing were taken by or in favor of the Prepetition First Lien Agent in respect of the Prepetition First Lien Documents, such filings and actions shall serve to perfect the DIP Liens in favor of the DIP Agent, for the benefit of the DIP Secured Parties, securing the DIP Obligations and, solely for purposes of perfecting the DIP Liens, the Prepetition First Lien Agent shall act as bailee for the DIP Agent.  Whether the DIP Agent or the Prepetition First Lien Agent, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens and the Adequate Protection Liens, such DIP Liens and such Adequate Protection Liens shall continue to be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of the Interim Order; provided that, subject to the Intercreditor Agreement, the rights of all parties to assert whether there has been, at any date of measurement, any diminution in value

37

of any such party's interest in the Prepetition Collateral or whether any Adequate Protection Obligations exist, in each case, are preserved in all respects.  A certified copy of the Interim Order or this Final Order may, in the discretion of the DIP Agent or the Prepetition First Lien Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order or this Final Order for filing and recording.

16.     *Appropriateness of Liens.*  The DIP Liens granted pursuant to the Interim Order and this Final Order to the DIP Agent, for the benefit of itself and the DIP Lenders, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (a) the applicable Prepetition First Lien Secured Parties have consented, are deemed to have consented or do not otherwise object to such priming DIP Liens granted pursuant to the Interim Order and this Final Order to the DIP Agent for the benefit of itself and the DIP Lenders; and (b) the grant of the DIP Liens hereunder and under the Interim Order is otherwise in compliance with  section 364(d) of the Bankruptcy Code.

17.     *Evidence of Liens.*  The Debtors shall execute and deliver to the DIP Agent or the Prepetition First Len Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent or the Prepetition First Lien Agent, as the case may be, may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

18.     *Preservation of Rights Granted Under this Final Order.* Other than the Carve-Out, the DIP Liens, the Superpriority Claims, and any liens permitted pursuant to the Prepetition First Lien Credit Agreement, no claim or lien having a priority senior to or pari passu with those

38

granted by the Interim Order or this Final Order to the Prepetition First Lien Agent and the Prepetition First Lien Secured Parties shall be granted or allowed while any portion of the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or, except as set forth in the Intercreditor Agreement, subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

19.     *Enforceability of DIP Obligations and Adequate Protection Obligations*. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (a) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (b) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any use of the Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the DIP Lenders or to the Prepetition First Lien Secured Parties, as the case may be, prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order, the Interim Order, the DIP Documents (with respect to all DIP Obligations), the Adequate Protection Obligations and uses of the Cash Collateral.

20.     Except as expressly provided in this Final Order or in the DIP Documents, the

WEIL:\96861166\8\34225.0004

Carve-Out, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties granted by this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (a) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases, or (b) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors' waiver of discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases and in any Successor Cases, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Carve-Out, the Adequate Protection Obligations, the Superpriority Claims, the Adequate Protection Claims, and the other administrative claims granted pursuant to this Final Order, and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition First Lien Secured Parties granted by this Final Order, the Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations are indefeasibly paid in full in cash or receive other treatment as set forth in an Acceptable Plan of Reorganization (as defined in the DIP Credit Agreement) and all Adequate Protection Obligations, if any, are indefeasibly paid in full in cash or receive other treatment as set forth in an Acceptable Plan of Reorganization.

21.    *After-Acquired Property*.  Except as otherwise provided in the Interim Order or this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition

40

Date, including, without limitation, in respect of the Prepetition First Lien Credit Agreement or the Prepetition Second Lien Credit Agreement (other than with respect to the replacement liens that form a portion of the Adequate Protection Liens), except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, binding, enforceable, perfected, and unavoidable Lien as of the Petition Date which is not subject to subordination under the Bankruptcy Code or other provisions or principles of applicable law.

22.    *Protection of DIP Secured Parties' and Prepetition First Lien Secured Parties' Rights*.  Unless the DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition First Lien Agent (at the direction of the Required First Lien Lenders) shall have provided their prior written consent, as applicable, or all DIP Obligations have been indefeasibly paid in full in cash, there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or pari passu with the DIP Liens, the Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and/or the Adequate Protection Claims except as expressly set forth in this Final Order; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of any of the DIP Agent's, DIP

41

Lenders', or the Prepetition First Lien Secured Parties' rights under this Final Order, the DIP Documents or the Prepetition First Lien Documents with respect any DIP Obligations or Prepetition First Lien Secured Obligations.

23.     *Proceeds of Subsequent Financing.*   Without limiting the provisions and protections of paragraph 22 above, if at any time prior to the indefeasible payment in full of all DIP Obligations (including subsequent to the confirmation of a chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) or any other provision of the Bankruptcy Code  in violation of the DIP Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent until indefeasible payment in full of the DIP Obligations in accordance with the DIP Documents.

24.     *Cash Management System; L/C Cash Collateral Account.*

(a)         The cash management system described in the Debtors' motion seeking authorization to use such system (among other relief) (such motion, at D.I. 3, the "**Cash Management Motion**") or in the DIP Credit Agreement (the "**Cash Management System**") and all accounts established in connection therewith shall be used for purposes and on the terms and conditions set forth in the Approved Budget, subject to such variances as permitted in the DIP Credit Agreement, the DIP Credit Agreement and other DIP Credit Documents.  The Debtors and the DIP Agent are further authorized to enter into any additional agreements providing for the establishment of lock boxes, blocked accounts or similar arrangements in favor of the DIP Agent in accordance with the terms of the DIP Credit Agreement, and any interim or final order granting the relief sought pursuant to the Cash Management Motion, and to give directions and

WEIL:\96861166\8\34225.0004

instructions to the depository banks at which the Debtors' bank accounts are maintained (or amend control agreements with such depository banks) in accordance with the DIP Documents.

(b)        Notwithstanding anything to the contrary herein, none of the DIP Agent, the Prepetition First Lien Agent nor JPMorgan Chase Bank, N.A., in its capacity as account bank (the "**DIP Account Bank**"), as applicable, shall have any duty or responsibility whatsoever to monitor, investigate or verify the authority of any of the Debtors to use, maintain or operate any accounts within the Cash Management System, including, without limitation, the DIP Borrowing Account, the DIP Indemnity Account (as defined below) and the Carve-Out Account, pursuant to the terms of this Final Order, the Final Order, the DIP Documents, the Approved Budget or otherwise.  The DIP Agent, the Prepetition First Lien Agent and the DIP Account Bank, as applicable, shall each be entitled to rely on (i) any representations made by the Debtors regarding the Debtors' use of such accounts or the funds therein and (ii) any issuance, request or notice in respect of any check, withdrawal, wire or other transfer by any Debtor, which shall be deemed to be a representation by such Debtor of its authority to issue or obtain such check, withdrawal, wire or other transfer.  The DIP Agent (and, as applicable, the New-Money Tranche B Escrow Agent (as defined in the DIP Amendment)), shall incur no costs or liability whatsoever in connection with the establishment and maintenance of the DIP Borrowing Account, the DIP Indemnity Account, the Carve-Out Account, the New-Money Tranche B Escrow Account (as defined in the DIP Amendment), or any other account pursuant to the terms of this Final Order, the Interim Order or the DIP Documents.

(c)        Nothing contained herein shall in any way modify or limit the terms or enforceability of the L/C Cash Collateral Agreement, which shall remain in full force and effect.  Notwithstanding anything to the contrary herein, the L/C Issuer shall be authorized and

43

entitled to (i) pursuant to the terms of the L/C Cash Collateral Agreement (A) without notice or demand, and at any time or from time to time, charge, set off and otherwise apply all or any part of the Obligations (as defined in the L/C Cash Collateral Agreement) against the L/C Cash Collateral Account or any part thereof and (B) exercise all other rights and remedies available to it thereunder and (ii) give written notice of non-extension of the JPM Letter of Credit to the beneficiary thereof pursuant to the terms of the JPM Letter of Credit and, in each case, the automatic stay shall be lifted as necessary to permit such action without the need for any Remedies Notice Period.

25.    *Effect of Stipulations on Third Parties*. The Debtors' Stipulations shall be binding upon the Debtors and any successor thereto (including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors other than any such trustee appointed or elected during the Challenge Period) in all circumstances.  The Debtors' Stipulations shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases (including the Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless such committee or any other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter   (subject to the limitations contained herein, including, inter alia, in this paragraph 25) by no later than (i) the earlier of (A) the entry of an order confirming a plan of reorganization in these Chapter 11 Cases and (B) no later than (1) for a Committee, (if appointed), sixty (60) days from the date of formation of a Committee (if appointed), or (2)

44

seventy-five (75) days following the entry of the Interim Order for any other party in interest with requisite standing and (ii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the time period established by the foregoing clauses (i) and (ii), the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "**Challenge Period Termination Date**"), (x) contesting, challenging, or otherwise objecting to the admissions, stipulations, findings or releases included in the Debtors' Stipulations, or (y) otherwise asserting or prosecuting any action against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition Secured Obligations, or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition Secured Obligations or otherwise, including, without limitation, any claim against any of the Prepetition Secured Parties in the nature of "lender liability" or other causes of action, setoff, counterclaim or defense to any of the Prepetition Secured Loans whether arising at law or at equity, including, without limitation, any recharacterization, subordination (whether equitable or otherwise), avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code or under applicable state law or otherwise or by way of suit against any of the Prepetition Secured Parties (the objections, challenges, actions and claims referenced in clauses (a) and (n), collectively, the "**Claims and Defenses**"); provided that, as to the Debtors, for themselves and not their estates, all such Claims and Defenses are irrevocably waived and relinquished as of the Petition Date.  If no Claims and Defenses have been timely asserted in any such adversary proceeding or contested matter, then, upon the Challenge Period Termination Date, and for all purposes in these Chapter 11 Cases and any Successor Case, (a) all

payments made to any of the Prepetition Secured Parties or their advisors pursuant to this Final Order, the Interim Order or otherwise shall not be subject to counterclaim, set off, subordination, defense or avoidance, (b) any and all such Claims and Defenses by any party in interest shall be deemed to be forever released, waived and barred, (c) the Prepetition First Lien Secured Obligations shall be deemed to be an allowed claim secured to the extent of the value of the collateral securing the claim, and (d) the Debtors' Stipulations shall be binding on all parties in interest, including, but not limited to, the Committee.  Notwithstanding the foregoing, to the extent any Claims and Defenses are timely asserted in any such adversary proceeding or contested matter, the Debtors' Stipulations and the other provisions in clauses (a) through (d) in the immediately preceding sentence shall nonetheless remain binding and preclusive on the Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (a) through (d) of the immediately preceding sentence were expressly challenged in such adversary proceeding or contested matter.  Nothing in this Final Order or the Interim Order vests or confers on any person or entity, including the Committee, standing or authority to pursue any cause of action belonging to any or all of the Debtors or their estates, including, without limitation, any Claim and Defense or other claim against any Prepetition Secured Parties or the DIP Secured Parties; provided that, in the event a party in interest files a motion to obtain standing and attaches a proposed complaint, the running of the Challenge Period shall be tolled as to that party in interest until the Court decides the standing motion.  Up to $50,000 (such amount, the "**Investigation Budget Cap**") in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral (including Cash Collateral) or proceeds of the DIP Facility may be used by the Committee to investigate the Prepetition Secured Obligations and liens.

WEIL:\96861166\8\34225.0004

26.     *DIP Termination Date*.  On the DIP Termination Date (as defined below), (a) all DIP Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Facility will terminate; (b) all authority to use Cash Collateral shall cease, <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral to pay payroll and other expenses critical to the administration of the Debtors' estates strictly in accordance with the Approved Budget, subject to such variances as permitted in the DIP Credit Agreement; and (c) the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with this Final Order.  For the purposes of this Final Order, the "**DIP Termination Date**" shall mean the "Termination Date" as defined in the DIP Credit Agreement.

27.     *Events of Default*. The occurrence of any of the following events, unless waived by the DIP Agent (at the direction of the Required DIP Lenders) in writing and in accordance with the terms of the DIP Documents, shall constitute an event of default (collectively, the "**Events of Default**"): (a) the failure of the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Final Order or the Interim Order or (b) the occurrence of an "Event of Default" under the DIP Credit Agreement.

28.     *Rights and Remedies Upon Event of Default*.  Immediately upon the occurrence and during the continuation of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, (a) the DIP Agent (at the direction of the Required DIP Lenders) may declare (any such declaration shall be referred to herein as a "**Termination Declaration**") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further

commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve-Out has occurred through the delivery of the Carve-Out Trigger Notice to the Borrower and (b) subject to paragraph 26(b), the DIP Agent (at the direction of the Required DIP Lenders) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date shall be referred to herein as the "**Termination Date**"). The Termination Declaration shall not be effective until notice has been provided by electronic mail (or other electronic means) to counsel to the Debtors, counsel to a Committee (if appointed), Paul Weiss and Young Conaway (as counsel to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders), and the U.S. Trustee.  The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Agent, the DIP Lenders and the Prepetition Secured Parties is hereby modified on a final basis so that five (5) business days after the date a Termination Declaration is delivered (the "**Remedies Notice Period**"): (a) the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Final Order to satisfy the DIP Obligations, Superpriority Claim and DIP Liens, subject to the Carve-Out; (b) the applicable Prepetition First Lien Lenders shall be entitled to exercise their rights and remedies to the extent available in accordance with the applicable Prepetition First Lien Documents and this Final Order with respect to the Debtors' use of Cash Collateral.  During the Remedies Notice Period, the Debtors, the Committee (if appointed) and/or any party in interest shall be entitled to seek an

48

emergency hearing within the Remedies Notice Period with the Court for the sole purpose of contesting whether an Event of Default has occurred or is continuing or for the contested use of Cash Collateral.  Except as set forth in this paragraph 28 or otherwise ordered by the Court prior to the expiration of the Remedies Notice Period, after the Remedies Notice Period, the Debtors shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties under this Final Order.  Unless the Court has determined that an Event of Default has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to all of the DIP Agent, DIP Lenders and Prepetition First Lien Lenders (solely with respect to the use of Cash Collateral to the extent permitted hereunder) shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Agent and DIP Lenders and Prepetition First Lien Lenders shall be permitted to exercise all remedies set forth herein, and in the DIP Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Final Order; provided, that the Prepetition First Lien Lenders shall be permitted to exercise remedies to the extent available solely with respect to the Debtors' use of Cash Collateral.

29.    *Insurance*.  To the extent any Prepetition Secured Party is listed as loss payee under the Debtors' insurance policies, the DIP Agent is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and subject to the terms of the DIP Documents, and if the DIP Agent receives any proceeds in such capacity, it shall distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment of

49

the DIP Obligations until paid in full in accordance with the terms of the DIP Documents, and

<u>second</u>, to the payment of the Prepetition First Lien Obligations and the Prepetition Second Lien

Obligations, subject to and in accordance with the Intercreditor Agreement.

30.    *Limits on Lender Liability*.  Nothing in this Final Order, the Interim Order, any of

the DIP Documents, or any other documents related thereto shall in any way be construed or

interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the

Prepetition Secured Parties of any liability for any claims arising from any activities by the

Debtors in the operation of their businesses or in connection with the administration of these

Chapter 11 Cases.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall

not, solely by reason of having made the DIP Loans, the Prepetition First Lien Loans or

Prepetition Second Lien Loans (as applicable), be deemed in control of the operations of the

Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the

operation or management of the Debtors (as such terms, or any similar terms, are used in the

United States Comprehensive Environmental Response, Compensation and Liability Act, 29

U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Nothing in this Final

Order, the Interim Order or the DIP Documents, shall in any way be construed or interpreted to

impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition

Secured Parties of any liability for any claims arising from the prepetition or postpetition

activities of any of the Debtors.

31.    *Order Governs*.  In the event of any inconsistency between the provisions of this

Final Order, the Interim Order and the DIP Documents, the provisions of this Final Order shall

govern.

32.    *Binding Effect; Successors and Assigns*.  The provisions of this Final Order,

including all findings herein, shall be binding upon all parties-in-interest in the Chapter 11 Cases,

including the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, and the Debtors and

their respective successors and assigns, including any chapter 7 or chapter 11 trustee hereinafter

appointed or elected for any of the Debtors, an examiner with expanded powers appointed

pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal

representative of any of the Debtors or with respect to the property of the estate of any of the

Debtors, and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition

Secured Parties, and the Debtors and their respective successors and assigns; provided that,

except to the extent expressly set forth in this Final Order, the DIP Documents, or the

Intercreditor Agreement, the DIP Agent, the DIP Lenders and the Prepetition First Lien Secured

Parties shall have no obligation to permit the use of the DIP Loans or the Cash Collateral or

extend any financing to any chapter 7 trustee or similar responsible person appointed for the

estates of the Debtors.

33.     *Intercreditor Agreement*.  The rights and obligations of the Prepetition Secured

Parties shall at all times remain subject to the Intercreditor Agreement.

34.     *Indemnification*.  The Debtors shall indemnify and hold harmless the DIP Agent

and the DIP Lenders in accordance with the terms and conditions of the DIP Credit Agreement.

Upon the earlier of (i) payment in full in cash of the DIP Obligations or (ii) conclusion of the

Remedies Notice Period, the Debtors shall pay $150,000 from proceeds of the DIP Collateral

into an indemnity account (the "**DIP Indemnity Account**") subject to the DIP Liens, for the

benefit of the DIP Lenders.  The DIP Indemnity Account shall be released and the funds applied

in accordance with the priorities set forth in this Final Order upon the indefeasible payment in

full in cash of the DIP Obligations and the receipt by the DIP Agent and each of the DIP Lenders

51

of releases from the Debtors and their estates, with respect to any claims arising out of or related to the DIP Documents, acceptable to the DIP Agent and the DIP Lenders, each in their sole discretion.

35.    *Proofs of Claim.*  None of the DIP Agent or DIP Lenders shall be required to file proofs of claim in any of these Chapter 11 Cases for any claim allowed herein, and none of Prepetition First Lien Secured Parties shall be required to file proofs of claim or request for payment of an administrative expense in any of these Chapter 11 Cases for any claim in respect of the Prepetition Secured Obligations.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including administrative claims) in any of these Chapter 11 Cases shall not apply to (a) the DIP Agent or the DIP Lenders, (b) the Prepetition First Lien Secured Parties with respect to the Prepetition First Lien Obligations, and (c) the Prepetition Second Lien Secured Parties with respect to the Prepetition Second Lien Obligations. Notwithstanding the foregoing, the Prepetition First Lien Agent, on behalf of itself and the Prepetition First Lien Secured Parties, and the Prepetition Second Lien Agent, on behalf of itself and the Prepetition Second Lien Secured Parties, are hereby authorized and entitled (but not required), in their sole discretion, to file (and amend and/or supplement, as each of the Prepetition First Lien Agent or the Prepetition Second Lien Agent sees fit) in the Debtors' lead Chapter 11 Case, a single master proof of claim in these Chapter 11 Cases for any claims arising under the Prepetition First Lien Credit Agreement, the Prepetition Second Lien Credit Agreement, and hereunder, as applicable (a "**Master Proof of Claim**").  The Master Proof of Claim, if filed, shall not be required to identify whether any Prepetition First Lien Secured Party or any Prepetition Second Lien Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth

WEIL:\96861166\8\34225.0004

therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 35 and the Master Proof of Claim are intended solely for the purpose of administrative convenience.  The Master Proof of Claim, if filed, shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon reasonable written request to counsel to the Prepetition First Lien Agent or counsel to the Prepetition Second Lien Agent.

36.     *Restrictions on Use of Proceeds*.   Notwithstanding anything herein to the contrary, no proceeds from the DIP Facility, DIP Collateral or proceeds thereof, Cash Collateral, Prepetition Collateral, or proceeds, products or offspring thereof (including any prepetition retainer funded by the Prepetition First Lien Collateral), or any portion of the Carve-Out may be used by any of the Debtors, any Committee, and any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, or any other person, party or entity to (or to pay any professional fees and disbursements incurred in connection therewith) (a) request authorization to obtain post-petition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the DIP Secured Parties; (b) investigate, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, the Prepetition Secured Parties, and their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter (including formal

53

discovery proceedings in anticipation thereof); (c) modify or attempt to modify any of the rights granted to the DIP Lenders or the DIP Agent with respect to the DIP Facility; (d) attempt to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any DIP Collateral in accordance with the DIP Documents and the DIP Orders once an Event of Default has occurred and after delivery of a Termination Declaration; or (e) pay any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are approved by an order of the Bankruptcy Court. None of the DIP Agent, DIP Lenders, or the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any retained professionals, the Committee, the U.S. Trustee, or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any Successor Case, and nothing in the Interim Order or this Final Order or otherwise shall be construed to obligate such parties in any way to (i) pay such compensation to or to reimburse such expenses or, except as explicitly provided in this paragraph, or (ii) assure that the Debtors have sufficient funds on hand to pay any of the foregoing.

37.      *Roll-Up of Loans*. Subject to the investigation period established in paragraph 25 of this Final Order, without any further action by the Debtors or any other party, and as a condition to providing the DIP Loans, the DIP Roll-Up Loans shall be included in the DIP Obligations, and the principal amount of the Prepetition First Lien Obligations of each DIP Lender or its affiliate corresponding to each DIP Lender's allocated entitlement to DIP Term Roll-Up Loans shall be converted and "rolled-up" into DIP Roll-Up Loans and such Prepetition First Lien Obligations shall be reduced on a dollar-for-dollar basis by the principal amount of the DIP Roll-Up Loans held by such DIP Lender or its affiliate.

38.    *CMC Avoidance Actions.*   Notwithstanding anything herein to the contrary, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than Section 549 Actions) held by the Debtor Catalina Marketing Corporation or its estate (the "**CMC Avoidance Actions**") (a) shall not constitute part of the DIP Collateral, (b) shall not be subject to any other liens of the DIP Lenders, the DIP Agent, or the Prepetition Secured Parties; and (c) shall not be available to pay any Obligations to the Secured Parties (as hereafter defined) as superpriority claims under section 507(b) of the Bankruptcy Code or section 364(c)(1) of the Bankruptcy Code or as administrative expenses under section 503(b) of the Bankruptcy Code.  "**Obligations to the Secured Parties**" shall mean any DIP Obligations; fees and expenses (including professional fees) of any of the DIP Agent, DIP Lenders, or Prepetition Secured Parties; Adequate Protection Obligations, or Prepetition Indemnity Obligations.  To the extent that any of the Obligations to the Secured Parties remain unpaid after exhaustion of the DIP Collateral, however, any such unpaid Obligations to the Secured Parties may be paid *pari passu* with any allowed and unpaid general unsecured claims against Catalina Marketing Corporation.

39.    *New-Money Tranche B Escrow Account.*  Prior to any hearing on confirmation of the Debtors' chapter 11 plan of reorganization, the Debtors and the Requisite DIP Lenders agree that they will mutually determine in connection with any exit facility, the terms upon which the Debtors shall access any balance that remains in the New-Money Tranche B Escrow Account post-Effective Date; provided that no such determination shall result in any duties, obligations or liabilities of the New-Money Tranche B Escrow Agent or the DIP Agent without the express written consent thereof.

40.    *Rights Preserved.*  Notwithstanding anything herein to the contrary but subject to

WEIL:\96861166\8\34225.0004

paragraph 38 hereof, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agent's, DIP Lenders' and Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, DIP Lenders and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right, subject to the Restructuring Support Agreement, to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the Intercreditor Agreement and the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) subject to the Intercreditor Agreement, any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agent, DIP Lenders or Prepetition Secured Parties.

41.    *No Waiver.*  The failure of the DIP Lenders or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, the Prepetition First Lien Documents, or the Prepetition Second Lien Documents, or otherwise, as applicable, shall not constitute a waiver of any of the DIP Lenders' or Prepetition Secured Parties' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Lenders or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court.

42.    *No Third-Party Rights.*  Except as explicitly provided for herein, this Final Order

does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.  In determining to make any loan or financial accommodation (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, the DIP Documents, the DIP Secured Parties, the Prepetition Secured Parties shall not owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates.

43.    *No Marshaling*.  The DIP Agent and the DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to this Final Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.  The Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral.

44.    *Right to Credit Bid.*  In connection with any sales process authorized by the Court, (i) the DIP Agent, on behalf of itself and the DIP Secured Parties (at the direction of the Required DIP Lenders), and (ii) subject to the rights preserved in paragraph 25, the Prepetition Secured Parties, or any assignee or designee of any of the foregoing shall have the right to credit bid, consistent with the applicable DIP Documents and/or Prepetition First Lien Documents, some or all of their claims for their respective priority collateral (each a "**Credit Bid**") pursuant to and subject to section 363(k) of the Bankruptcy Code, subject in each case to the rights and duties of the parties under the Intercreditor Agreement and to the provision of consideration sufficient to indefeasibly pay in full in cash any senior liens on the collateral that is subject to the credit bid except to the extent otherwise agreed by the holder of such senior lien in their sole and absolute discretion.

45.     *Immediate Enforceability.*  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

46.     *Retention of Jurisdiction.*  This Court shall have and retain exclusive jurisdiction to enforce the terms of this Final Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Final Order, including with respect to any and all disputes or matters under, arising out of or in connection with either the DIP Loans or the DIP Documents.

WEIL:\96861166\8\34225.0004