## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- X
                                              :
In re                                         :        **Chapter 11**
                                              :
**CHECKOUT HOLDING CORP.**, *et al.*,         :        **Case No. 18-12794 (KG)**
                                              :
          **Debtors.**[1]                     :        **Jointly Administered**
                                              :
                                              :        **Re: D.I. 11, 12**
------------------------------------------------------------- X

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE, (B) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS, AND (II) CONFIRMING THE JOINT PREPACKAGED CHAPTER 11 PLAN OF CHECKOUT HOLDING CORP. AND ITS AFFILIATED DEBTORS

Checkout Holding Corp. and its affiliated debtors in the above-captioned chapter

11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), having proposed and

filed (A) the *Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated*

*Debtors*, dated as of December 11, 2018 and filed with the United States Bankruptcy Court for

the District of Delaware (the "**Court**") on December 12, 2018 [D.I. 11] (as supplemented by the

Plan Supplement (defined below), and as otherwise amended in accordance with the terms

thereof and this Order, the "**Plan**"), annexed hereto as **Exhibit A**, and that certain supplement to

the Plan, dated and filed with the Court on January 16, 2019 [D.I. 217] (the "**Initial Plan**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Catalina Marketing Corporation (9007); Catalina Marketing Procurement, LLC (9333); Catalina Marketing Technology Solutions, Inc. (8728); Catalina Marketing Worldwide, LLC (9687); Cellfire Inc. (5599); Checkout Holding Corp. (4651); Modiv Media, Inc. (3507); PDM Group Holdings Corporation (9148); PDM Holdings Corporation (5025); PDM Intermediate Holdings A Corporation (6409); and PDM Intermediate Holdings B Corporation (3278). The Debtors' principal offices are located at 200 Carillon Parkway, St. Petersburg, FL 33716.

**Supplement**"), that certain second supplement to the Plan, dated and filed with the Court on January 24, 2019 [D.I. 236] (the "**Second Plan Supplement**"), and that certain third supplement to the Plan, dated and filed with the Court on January 31, 2019 [D.I. 262] (the "**Third Plan Supplement**" and, together with the Initial Plan Supplement, the Second Plan Supplement, and as the documents contained therein have been or may be further amended or supplemented, the "**Plan Supplement**") and (B) (i) the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated Debtors*, dated as of December 11, 2018 and filed with the Court on December 12, 2018 [D.I. 12] (the "**Disclosure Statement**"), and (ii) appropriate ballots for voting on the Plan, in the forms attached as Exhibits "B" and "C" to the *Affidavit of Service of Solicitation Materials* (the "**Daloia Declaration**"), sworn to by James Daloia of Prime Clerk LLC, the Debtors' claims and noticing agent ("**Prime Clerk**"), and filed with the Court on December 13, 2018 [D.I. 108] having been duly transmitted to holders of Claims[2] and Interests in compliance with the procedures (the "**Solicitation Procedures**") set forth in the Debtors' motion to approve the Scheduling Order (as defined below), filed with the Court on the Petition Date [D.I. 13] (the "**Scheduling Motion**"); and the Court having entered the *Order (I) Scheduling Combined Hearing to Consider (A) Approval Of Disclosure Statement, (B) Approval Of Solicitation Procedures and Forms of Ballots, and (C) Confirmation of Plan; (II) Establishing an Objection Deadline to Object to Disclosure Statement and Plan; (III) Approving the Form and Manner of Notice of Combined Hearing, Objection Deadline, and Notice of Commencement; (IV) Conditionally Waiving Requirement of Filing Statement of Financial Affairs and Schedules of Assets and Liabilities; (V) Conditionally Waiving Requirement to Convene the Section 341 Meeting of Creditors; and (VI) Granting Related Relief*

---

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the Plan.

(the "**Scheduling Order**") [D.I. 107], which, among other things, scheduled the combined hearing to approve the Disclosure Statement and consider confirmation of the Plan for January 31, 2019 (the "**Combined Hearing**"); and due notice of the Combined Hearing having been given to holders of Claims against and Interests in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Scheduling Order, and the Solicitation Procedures, as established by the affidavits of service, mailing, and/or publication filed with the Court, including the *Affidavit of Service of Robert J. Rubel Regarding the Notice of Commencement of Cases Under Chapter 11 of the Bankruptcy Code and Summary of Joint Prepackaged Chapter 11 Plan and Notice of Hearing to Consider (A) Debtors' Compliance with Disclosure Requirements and (B) Confirmation of Plan of Reorganization* [D.I. 136], (the "**Notice of Commencement Affidavit**"), and such notice being sufficient under the circumstances and no further notice being required; and due notice of the Plan Supplement having been given to holders of Claims against and Interests in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, as established by the *Affidavit of Service of Christian Rivera Regarding Notice of Filing Plan Supplement in Connection with Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated Debtors* [D.I. 227] and the *Affidavit of Service of Christian Rivera Regarding Notice of Filing Second Plan Supplement in Connection with Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated Debtors* [D.I. 252], and such filings and notices thereof being sufficient under the circumstances and no further notice being required; and based upon and after full consideration of the entire record of the

Combined Hearing, including (I) the Disclosure Statement, the Plan (including the Plan Supplement), the Daloia Declaration, and the *Declaration of James Daloia Regarding Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated Debtors*, filed with the Court on January 29, 2019 [D.I. 255] (the "**Tabulation Declaration**"), (II) the *Declaration of Robert A. Del Genio in Support of Debtors' Request for (A) Approval of Debtors' Disclosure Statement, (B) Final Approval of Solicitation Procedures, and (C) Confirmation of Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated Debtors* filed contemporaneously herewith (the "**Confirmation Declaration**"); (III) the *Declaration of Marc Puntus in Support of Debtors' Request for (A) Approval of Debtors' Disclosure Statement, (B) Final Approval of Solicitation Procedures, and (C) Confirmation of Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated Debtors* filed contemporaneously herewith (the "**Puntus Declaration**"); and objections to the approval of the Disclosure Statement or confirmation of the Plan all being withdrawn, resolved or overruled by the Court; and the Court being familiar with the Disclosure Statement and the Plan and other relevant factors affecting the Chapter 11 Cases (as defined below); and the Court being familiar with, and having taken judicial notice of, the entire record of the Chapter 11 Cases; and upon the arguments of counsel and the evidence proffered and adduced at the Combined Hearing; and the Court having found and determined that the Disclosure Statement should be approved and the Plan should be confirmed as reflected by the Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor; the Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and this court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code, and, pursuant to Local Rule 9013–1(f), the Debtors consent to the entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.    <u>Chapter 11 Petitions</u>.  On December 12, 2018, (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed pursuant to section 1104 of the

Bankruptcy Code.  No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code.  Further, in accordance with an order of this Court, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

D.      _Judicial Notice_.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

E.      _Burden of Proof_.  Each of the Debtors has met the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

F.      _Adequacy of Disclosure Statement_.  The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, as amended (the "**Securities Act**"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions set forth therein, and (c) is approved in all respects.

G.      _Voting_.  As evidenced by the Tabulation Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

H.      _Solicitation_.  Prior to the Petition Date, the Plan, the Disclosure Statement, and the Ballots, and, subsequent to the Petition Date, notice of the Combined Hearing, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules

3017 and 3018, the Local Rules, and the Scheduling Order.  The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Claims in Class 3 (First Lien Debt Claims) and Class 4 (Second Lien Debt Claims) – the Classes of Claims entitled under the Plan to vote to accept or reject the Plan.  The continued postpetition solicitation of such voting classes was proper and in compliance with section 1125(g) of the Bankruptcy Code.  The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Plan. The Debtors were not required to solicit votes from the holders of Claims or Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 8 (Intercompany Claims), and Class 11 (Intercompany Interests) as each such class is Unimpaired under the Plan and, therefore, deemed to accept the Plan.  The Debtors also were not required to solicit votes from the holders of Claims in Class 7 (General Unsecured PDM Claims), Class 9 (Subordinated Claims), and Class 10 (Existing Equity Interests) as such Classes are deemed to reject the Plan.[3]  As described in and as evidenced by the Daloia Declaration and the Notice of Commencement Affidavit, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, and the notice of the Combined Hearing (all of the foregoing, the "**Solicitation**") was timely, adequate, and sufficient under the circumstances.  The Solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.  The Released Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code.

---

[3] As set forth below, because of the assumption of the NCS JV Agreements (as defined below) Class 6 (NCS Rejection Claims) is no longer an operable Class under the Plan.

I.     Notice.  As is evidenced by the Daloia Declaration and the Notice of Commencement Affidavit, the transmittal and service of the Plan, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

J.     Plan Supplement.  On January 16, 2019 and January 24, 2019, the Debtors filed the Initial Plan Supplement and the Second Plan Supplement, respectively, containing the following documents: the Acquisition Agreement, the Acquisition Transactions Exhibit, the Schedule of Retained Causes of Action, and the Reorganized Catalina – Governance Term Sheet (the "**Governance Term Sheet**").  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  The Debtors reserve the right to alter, amend, update or modify the Plan Supplement and any schedules, exhibits or amendments thereto, prior to the Effective Date in accordance with the terms of the Plan and the Restructuring Support Agreement and subject to the terms of this Order.

K.     Restructuring Support Agreement.  As set forth in the *Notice of Filing of Second Amended and Restated Restructuring Support Agreement* filed by the Debtors on January 30, 2019 [D.I. 261] (the amended Restructuring Support Agreement included therein, the "**Second Amended and Restated Restructuring Support Agreement**"), the Berkshire Funds executed the Restructuring Support Agreement on January 9, 2019.

### Compliance with the Requirements of Section 1129 of the Bankruptcy Code

L.      <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)      <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to Administrative Expense Claims, Fee Claims, and Priority Tax Claims, which need not be classified, Articles III and IV of the Plan classify eleven (11) Classes of Claims against and Interests in the Debtors.  The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)      <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Articles III and IV of the Plan specify that Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 8 (Intercompany Claims), and Class 11 (Intercompany Interests) are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)      <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Articles III and IV of the Plan designate Class 3 (First Lien Debt Claims), Class 4 (Second Lien Debt Claims), Class 7 (General Unsecured PDM Claims), Class 9 (Subordinated Claims), and Class 10 (Existing Equity Interests) as impaired within the meaning of section 1124 of the

Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.    The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.    The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation, (i) the continued corporate existence of the Reorganized Debtors, (ii) all corporate action as set forth more fully in Section 5.1 of the Plan, (iii) funding of the Plan, (iv) the cancellation of certain securities and agreements, (v) the cancellation of certain existing security interests, (vi) the composition of the board of directors and list of officers of each Reorganized Debtor, (vii) the authorization, issuance, and delivery of the New Common Stock, (viii) the entry into the Amended and Restated First Lien Credit Agreement; (ix) the entry into the Acquisition Agreement; (x) the continuation of all Intercompany Interests held by the Debtors; and (xi) the taking of all necessary or appropriate actions by the Debtors or Reorganized Debtors, as applicable, to effectuate the Restructuring Transactions under and in connection with the Plan.

(f)    <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>.    The Amended Certificates of Incorporation prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.    The issuance of the New Common Stock complies with section 1123(a)(6) of the Bankruptcy Code.    On the

Effective Date, the boards of directors, or sole member, as applicable, of each Reorganized Debtor shall be deemed to have adopted the Amended By-Laws applicable to such Reorganized Debtor.

   (g) <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  The Plan Supplement and Section 5.5 of the Plan contain provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

   (h) <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>.  Pursuant to Articles III and IV of the Plan, as set forth in section 1123(b)(1) of the Bankruptcy Code, (a) Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 8 (Intercompany Claims), and Class 11 (Intercompany Interest) are unimpaired and (b) Class 3 (First Lien Debt Claims), Class 4 (Second Lien Debt Claims), Class 7 (General Unsecured PDM Claims), Class 9 (Subordinated Claims), and Class 10 (Existing Equity Interests) are impaired.

   (i) <u>Assumption and Rejection (11 U.S.C. § 1123(b)(2))</u>.  Article VIII of the Plan addresses the assumption and rejection of executory contracts and unexpired leases, and meets the requirements of section 365(b) of the Bankruptcy Code.  In accordance with Section 8.2 of the Plan, and as set forth in the *Affidavit/Declaration of Mailing of Justin J. Ra Regarding Notices of Cure Amounts with Respect to Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan* [D.I. 229], the Debtors have served cure notices on parties to executory contracts and unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or lease in connection with the Plan and setting forth the

proposed Cure Amount (if any).  If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume has not received such a notice, the Cure Amount for such executory contract or unexpired lease shall be zero dollars ($0).  There have been no objections to the Debtors' assumption of executory contracts and unexpired leases pursuant to Article VIII of the Plan.

(j)    Retention of Causes of Action and Reservation of Rights (11 U.S.C. § 1123(b)(3)).  Except as otherwise provided in the Plan, including, without limitation, Sections 10.5, 10.6, 10.7, 10.8 and 10.9, nothing contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, but not limited to, rights, claims, Causes of Action, rights of setoff, offset, recoupment or other legal or equitable defenses against any holder of Existing Equity Interests that arise on account of such holders' objection to, or support of, and objection to this Plan; provided, however, that the Reorganized Debtors shall not retain any Claims or Causes of Action against the Released Parties (other than Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct, which Claims or Causes of Action are hereby preserved).  The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses, including any actions specifically enumerated in the Plan Supplement, as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after

the Confirmation Date and after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

(k)     <u>Unaffected Rights of Holders of Classes of Claims (11 U.S.C. § 1123(b)(5))</u>.  The Plan leaves unaffected the rights of holders of Claims and Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 8 (Intercompany Claims), and Class 11 (Intercompany Interests).  Thus, the Plan complies with section 1123(b)(5) of the Bankruptcy Code.

(l)     <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>.  The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(m)     <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.  Section 8.2 of the Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All cure amounts will be determined in accordance with the underlying agreements and applicable non-bankruptcy law.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

M.     <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the Bankruptcy Code.  Specifically:

(a)     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code; and

(b)     The Debtors have complied with all other applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and in

transmitting the Plan, the Plan Supplement, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, the Scheduling Order, and all other applicable law.

N.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Combined Hearing, and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors.  The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's length among representatives of the Debtors, the Restructuring Support Parties, and their respective professionals.  Each of the Restructuring Support Parties supports confirmation of the Plan.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

O.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

(a)    Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with their Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is

subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

(b)     As set forth in the Restructuring Support Agreement, the DIP Facility Order and applicable engagement letters, as part of the negotiated terms on which the Debtors and the Restructuring Support Parties agreed to proceed with the consensual, prepackaged restructuring reflected in the Plan, the Debtors have agreed to pay all the reasonable and documented fees and expenses of (a) Davis Polk & Wardwell LLP ("**Davis Polk**"), as primary counsel for the Prepetition First Lien Agent, the DIP Facility Agent and the L/C Issuer, (b) Landis Rath & Cobb LLP ("**Landis Rath**"), as local counsel for the Prepetition First Lien Agent, the DIP Facility Agent and the L/C Issuer, (c) Ankura Group Consulting, LLC ("**Ankura**"), as financial advisor for the Prepetition First Lien Agent, the DIP Facility Agent and the L/C Issuer, (d) Jones Day, as primary counsel for the Prepetition First Lien Lenders and DIP Lenders, (e) Pachulski Stang Ziehl & Jones LLP ("**Pachulski Stang**"), as local counsel for the Prepetition First Lien Lenders and DIP Lenders, (f) Evercore Group L.L.C. ("**Evercore**"), as financial advisor to the Prepetition First Lien Lenders and DIP Lenders, (g) Paul, Weiss, Rifkind, Wharton & Garrison LLP ("**Paul Weiss**"), as counsel to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders, (h) Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**") as local counsel to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders, (i) PJT Partners, LP, ("**PJT**") as financial advisor to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders, (j) Wilmer Cutler Pickering Hale and Dorr LLP ("**Wilmer Hale**"), as primary counsel to the Prepetition Second Lien Agent, and (k) one local

counsel to the Prepetition Second Lien Agent.  For the avoidance of doubt, the fees and expenses

of Evercore and PJT shall include any success, restructuring or transaction fees payable to

Evercore or PJT, as the case may be, in accordance with their respective engagement letters with

Checkout Holding Corp.

       P.      <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Debtors

have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of

the persons proposed to serve as the initial directors and officers of the Reorganized Debtors

upon the Effective Date of the Plan have been fully disclosed to the extent such information is

available, and the appointment to, or continuance in, such offices of such persons is consistent

with the interests of holders of Claims against and Interests in the Debtors and with public

policy.  Each such member will serve in accordance with the terms and subject to the conditions

of the Amended Certificate of Incorporation, Amended By-Laws, and other relevant

organizational documents, each as applicable.  The directors and officers of the Reorganized

Debtors shall be selected according the procedures set forth in the Plan.

       Q.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not provide for

rate changes by any of the Reorganized Debtors.  Thus, section 1129(a)(6) of the Bankruptcy

Code is not applicable in these Chapter 11 Cases.

       R.      <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis provided in the Disclosure

Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are

persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that

each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain

under the Plan, on account of such Claim or Interest, property of a value, as of the Effective

Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

S.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 8 (Intercompany Claims), and Class 11 (Intercompany Interests) are Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 7 (General Unsecured PDM Claims), Class 9 (Subordinated Claims) and Class 10 (Existing Equity Interests) are Classes of Impaired Claims or Interests that are conclusively presumed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code.  Class 3 (First Lien Debt Claims) and Class 4 (Second Lien Debt Claims) are Classes of Impaired Claims that have voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtors.

T.     Treatment of Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Allowed Administrative Expense Claims and Fee Claims pursuant to Sections 2.1 and 2.2, respectively, of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Priority Non-Tax Claims pursuant to Section 4.1 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Section 2.5 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  Pursuant to the Plan, no holder of an Administrative Expense Clam is required to file a proof of claim or request for payment of administrative expenses under section 503(b) of the Bankruptcy Code.  On and after the Effective Date, all Administrative Expense Claims, Fee

Claims, Priority Tax Claims, and Priority Non-Tax Claims shall be paid in the ordinary course of business of the Reorganized Debtors, subject to parties' ability to dispute such Claims in accordance with Article VII of the Plan and applicable non-bankruptcy law.

U.   Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).   Class 3 (First Lien Debt Claims) and Class 4 (Second Lien Debt Claims) are Classes of Impaired Claims that have voted to accept the Plan by the requisite majorities set forth in the Bankruptcy Code, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

V.   Feasibility (11 U.S.C. § 1129(a)(11)).   The information in the Disclosure Statement, the Confirmation Declaration, the Puntus Declaration, and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

W.   Payment of Fees (11 U.S.C. § 1129(a)(12)).   All fees currently payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Section 2.1 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

X.   Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).   Subject to the cancellation of Existing Equity Interests pursuant to the Plan, section 8.5 of the Plan provides

that all employment and severance policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, executory contracts under the Plan and, on the Effective Date, will be assumed pursuant to sections 365 and 1123(b) of the Bankruptcy Code.  The Plan therefore satisfies Section 1129(a)(13) of the Bankruptcy Code.

Y.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Z.    Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA.    No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  The Debtors are each a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Class 7 (General Unsecured PDM Claims), Class 9 (Subordinated Claims) and Class 10 (Existing Equity Interests) are deemed to have rejected the Plan.  Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, the Plan does not

discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no holder of any interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior interest, and no holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim or Interest.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

CC.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan filed in each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

DD.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court in these Chapter 11 Cases, including evidence presented at the Combined Hearing, the Released Parties (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and

issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein as Exculpated Parties, the exculpation provisions set forth in Section 10.8 of the Plan.

FF.     <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

GG.     <u>Likelihood of Satisfaction of Conditions Precedent to the Effective Date</u>. Each of the conditions precedent to the Effective Date, as set forth in the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

HH.     <u>Implementation</u>.  The Plan Documents are essential elements of the Plan, and entry into each such Plan Document is in the best interests of the Debtors, the Estates and holders of Claims and Interests, and the Debtors are hereby authorized to execute such Plan Documents, and take all such further actions as are necessary to implement such Plan Documents, including the payment of all fees, expenses and other payments in accordance with the terms thereof.  The Debtors have exercised reasonable business judgment in determining to enter into the Plan Documents, and all such Plan Documents, including the fees, expenses and other payments set forth therein have been negotiated in good faith and at arm's-length, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements.

II.    <u>Injunction, Releases, and Exculpation</u>.  The Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 1334 (b) to approve the injunctions, releases, and exculpation set forth in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Sections 10.6 and 10.7 of the Plan, respectively, if, as has been established here, based upon the record in the Chapter 11 Cases and the evidence presented at the Combined Hearing, such provisions (i) were integral to the agreement among the various parties in interest, as reflected in the Restructuring Support Agreement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest.  The release contained in Section 10.7(b) of the Plan was disclosed and explained on the Ballots, in the Disclosure Statement, and in the Plan.  The release provisions contained in Section 10.7(b) of the Plan are consensual under applicable law because the releases therein are provided only by (i) holders of Claims that are Unimpaired, where the applicable Claims or Interests have been paid fully or otherwise satisfied in accordance with the Plan, and (ii) holders of Impaired Claims and Interests entitled to vote on the Plan who (a) voted to accept the Plan, (b) did not vote on the Plan, or (c) voted to reject the Plan and did not check the opt-out box.  *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) *see also In re New Gulf Res.*, LLC, No. 15-12566 (BLS) (Bankr. D. Del. Apr. 20, 2016); *In re Am. Apparel, Inc.*, No. 15-12055 (BLS) (Bankr. D. Del. Jan. 27, 2016) (D.I. 687); *In re Heartland Publications, LLC, et al*., No. 09-14459 (KG) (Bankr. D. Del. Apr. 16, 2010) (D.I. 244) (confirming plan providing that any party that fails to opt out on its ballot is deemed to provide a release).  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule

9019(a), the injunctions, releases, and exculpation set forth in the Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the Debtors and the Reorganized Debtors and their estates, creditors, and equity holders. The releases of non-Debtors under the Plan are fair to holders of Claims and are necessary to the proposed reorganization, thereby satisfying the applicable standards contained in *In re Indianapolis Downs*, 486 B.R. at 303 and are otherwise appropriate under *In re W.R. Grace & Co.*, 475 B.R. 34, 107 (D. Del. 2012). Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases, including the substantial contributions of the Ad Hoc First Lien Group and DIP Lenders in providing $125 million in new money under the DIP Facility and becoming Restructuring Support Parties and supporting the Plan and providing releases in accordance therewith. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the injunctions, releases, and exculpation provided for in Sections 10.5, 10.6, 10.7, 10.8, and 10.9 of the Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, releases, and exculpation set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunctions, releases, and exculpation would seriously impair the Debtors' ability to confirm the Plan.

JJ.    <u>Good Faith</u>. The Debtors and the Released Parties will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein and (ii) take any actions authorized and directed by this Order.

KK.    <u>Retention of Jurisdiction</u>. The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter

11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

LL.    <u>Amended Organizational Documents</u>.    The Amended By-Laws and Amended Certificates of Incorporation are necessary to the consummation of the Plan and the operation of the Reorganized Debtors.    The Amended By-Laws and Amended Certificates of Incorporation are in the best interests of the Debtors, the Reorganized Debtors, the Estates and their creditors.    The terms of the Amended By-Laws and the Amended Certificates of Incorporation, consistent with the Governance Term Sheet, are the result of good faith, arm's length negotiations and are appropriate and consistent with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including sections 1123, 1129, and 1142 of the Bankruptcy Code, and are necessary to the Debtors' successful emergence from chapter 11.    The execution, delivery or performance by the Debtors or the Reorganized Debtors, as the case may be, of any documents in connection with the Amended By-Laws and Amended Certificates of Incorporation and compliance by the Debtors or the Reorganized Debtors, as the case may be, with the terms thereof is authorized by this Order.

MM.    <u>New Stockholders' Agreement</u>.    The New Stockholders' Agreement is an essential element of the Plan.    The terms of the New Stockholders' Agreement, consistent with the Governance Term Sheet, will be negotiated at arm's length and in good faith and without intent to hinder, delay or defraud any creditor of the Debtors and will be in the best interests of the Debtors, the Reorganized Debtors, the Estates and creditors.    The issuance of the New Common Stock by the Reorganized Debtors and the execution, delivery or performance by the Debtors or the Reorganized Debtors, as the case may be, of the New Stockholders' Agreement and any other documents in connection with the New Common Stock and compliance by the

Debtors or the Reorganized Debtors, as the case may be, with the terms thereof are authorized by this Order.

NN.   <u>First Lien Agent, Second Lien Agent, and DIP Facility Agent</u>.   Based upon a review of the record, the First Lien Agent, the Second Lien Agent, and the DIP Facility Agent, each, diligently and in good faith, discharged its duties and obligations pursuant to the First Lien Credit Agreement, the Second Lien Credit Agreement, and the DIP Facility Loan Agreement, as applicable, and otherwise conducted itself with respect to all matters in any way relating to the First Lien Credit Agreement, the Second Lien Credit Agreement, and the DIP Facility Loan Agreement, as applicable, with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs. Accordingly, subject to any obligation to make post-Effective Date distributions or take such other action, if any, pursuant to the Plan on account of the Allowed DIP Facility Claims, Allowed First Lien Debt Claims, or Allowed Second Lien Debt Claims, as applicable, and to otherwise exercise their rights and discharge their obligations (if any) relating to the Claims arising under their respective debt instruments in accordance with the Plan, the First Lien Agent, the Second Lien Agent, and the DIP Facility Agent each has discharged its duties fully in accordance with the First Lien Credit Agreement, the Second Lien Credit Agreement, and the DIP Facility Loan Agreement, as applicable.

OO.   <u>Valuation</u>.   Based on the valuation analysis set forth in the Disclosure Statement and the Puntus Declaration, which the Court has determined to be credible, persuasive, and based on appropriate assumptions and valid analysis and methodology, the Court finds that the valuation implied by the Restructuring Transactions is the best measure of the Reorganized Debtors' value given the facts and circumstances of these Chapter 11 Cases.

## **ORDER**

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.      Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.      Notice of the Combined Hearing.  Notice of the Combined Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.      Solicitation.  The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

4.      Ballots.  The forms of Ballots annexed to the Daloia Declaration are in compliance with Bankruptcy Rule 3018(c), conform to Official Form Number 14, and are approved in all respects.

5.      Disclosure Statement.  The Disclosure Statement (i) contains adequate information of a kind generally consistent with the disclosure requirements of applicable non-bankruptcy law, including the Securities Act, (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with

respect to the Debtors, the Plan, and the transactions contemplated therein, and (iii) is approved in all respects.  To the extent that the Debtors' solicitation of acceptances of the Plan prior to the Petition Date is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(a)(2) of the Securities Act.  Section 4(a)(2) exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering."  15 U.S.C. § 77d(2).  The Debtors have complied with the requirements of section 4(a)(2) of the Securities Act, as the prepetition solicitation of acceptances would constitute a private placement of securities.  The solicitation to creditors was made only to those creditors who are "Qualified Institutional Buyers" (as defined in Rule 144(a) of the Securities Act,  "Institutional Accredited Investors" (within the meaning of rule 501(a) of Regulation D of the Securities Act), or Non-"U.S. Persons" (as defined in Regulation S of the Securities Act).  Accordingly, the Disclosure Statement is hereby **APPROVED** as providing holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

6.      _Confirmation of the Plan_.  The Plan and each of its provisions shall be, and hereby are, **CONFIRMED** under section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement are authorized and approved.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Order.

7.      _Objections_.  All objections, responses to, and statements and comments, if any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those

resolved or withdrawn with prejudice in their entirety prior to, or on the record at, the Combined

Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

        8.    <u>No Action</u>.  Pursuant to the appropriate provisions of the General

Corporation Law of the State of Delaware, other applicable non-bankruptcy law, and section

1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the

Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt,

amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract,

instrument, or other document to be executed, delivered, adopted, or amended in connection with

the implementation of the Plan.

        9.    <u>Binding Effect</u>.  On or after entry of this Order and subject to the

occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, the

Reorganized Debtors, all holders of Claims and Interests of the Debtors (irrespective of whether

such Claims or Interests are impaired under the Plan or whether the holders of such Claims or

Interests voted on, accepted or rejected, or are deemed to have accepted the Plan), any and all

non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any

other party in interest in the Chapter 11 Cases, and the respective heirs, executors,

administrators, successors, or assigns, if any, of any of the foregoing.

        10.    <u>Free and Clear</u>.  Except as otherwise provided in the Plan, any Plan

Document, or this Order, from and after the Effective Date, the Reorganized Debtors shall be

vested with all property of the Estates, free and clear of all Claims, liens, encumbrances, charges,

and other interests whatsoever.  From and after the Effective Date, the Reorganized Debtors may

operate each of their businesses and use, acquire, or dispose of assets free of any restrictions

imposed by the Bankruptcy Code, the Court, and the U.S. Trustee (except for quarterly operating reports and fees associated therewith until the closing of applicable Chapter 11 Cases).

11.    <u>Implementation of the Plan</u>.    The Debtors and the Reorganized Debtors and the appropriate officers, representatives, and members of the boards of directors thereof shall be authorized to and may issue, execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan, including the Restructuring Transactions, and all such other actions delineated in Article V of the Plan or otherwise contemplated by the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

12.    <u>Designation of Managers/Directors and Officers Approved</u>.    On the Effective Date, the initial board of managers/directors of the Reorganized Debtors shall be consistent with the terms of the Plan and the terms of the applicable Amended By-Laws and Amended Certificates of Incorporation of such Reorganized Debtors.    Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy, and such directors hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of the Bankruptcy Court, the Reorganized Debtors or their security holders.

13.    <u>Authorization to Consummate</u>.    The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in the Plan.

14.     <u>Assumption of NC Ventures, LLC Agreements</u>.   Pursuant to section 365(b) of the Bankruptcy Code, the Debtors are deemed to have assumed the following agreements, as amended or as amended and restated, where applicable, as of the Effective Date: (i) the *NC Ventures, LLC Limited Liability Company Agreement* by and between The Nielsen Company (US), LLC ("**Nielsen**") and Debtor Catalina Marketing Corporation ("**CMC**"), dated June 29, 2009 as amended and restated on October 1, 2015 and the Effective Date (the "**Amended NCS Operating Agreement**"); (ii) the *NC Ventures, LLC Catalina Data and Intellectual Property License Agreement* by and between Nielsen, CMC, and NC Ventures, LLC, d/b/a Nielsen Catalina Solutions ("**NCS**"), as amended and restated on October 1, 2015 and the Effective Date (the "**IP License Agreement**"); (iii) the *Agreement for Identified Audience Data and Sales Effect Services (Cookie Match)* by and between CMC and NCS, dated February 1, 2012 as amended and restated on October 1, 2015 and the Effective Date (the "**IAD Agreement**"); (iv) the *Amended and Restated Amendment Agreement* by and among Catalina Marketing Corporation, The Nielsen Company (US), LLC, and NC Ventures, LLC, by and between CMC, NCS, and Nielsen, dated October 1, 2015 (the "**Amendment Agreement**"); (v) the *NC Ventures, LLC Master Services Agreement* by and between NCS, Nielsen and CMC dated as of October 6, 2009 (the "**Master Services Agreement**") and together with the Amended NCS Operating Agreement, the IP License Agreement, the IAD Agreement, and the Amendment Agreement, the "**NCS JV Agreements**").   As of the Effective Date, other than such Cure Amount relating to targeting and audience measurement under the IAD Agreement that is agreed upon by Nielsen and the Debtors or Reorganized Debtors, as applicable, or is otherwise determined by further order of the Court, Nielsen, NCS, and the Debtors mutually release and waive any and all Claims, manners of action, causes of action, judgments, executions, debts,

demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, whether known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, arising under, in connection with or related to NCS, including but not limited to (x) the NCS JV Agreements and (y) that certain Binding Term Sheet for Amendment to IAD Agreement for BV Flex (the "**BV Flex Amendment**") by and between CMC and NCS, dated October 19, 2017; provided, however, that such release shall not release (a) any indemnification obligations with respect to third-party claims, including, but not limited to, claims of retailers relating to revenue share and (b) any agreed upon rights of the Reorganized Debtors with respect to the financial audit terms set forth in Section 8.4 of the Amended NCS Operating Agreement; provided, further, that the foregoing releases shall not affect the Reorganized Debtors' obligations to continue to satisfy postpetition amounts owed to NCS in the ordinary course of business.  Upon the Effective Date (I) the BV Flex Amendment shall be terminated and shall have no further force or effect and (II) the *Motion of Debtors Pursuant to 11 U.S.C. § 365(a) for Authority to Reject NCS Joint Venture Agreements* [D.I. 209] shall be deemed withdrawn by the Debtors (with prejudice) as of the Effective Date.  For the avoidance of doubt, Class 6: NCS Rejection Claims shall not include any Claims under the Plan and the definition of NCS Rejection Claims set forth in Section 1.1 of the Plan is hereby deleted in its entirety and all references to NCS Rejection Claims or Class 6 shall have no further force or effect under the Plan.

15.    <u>Issuance of New Common Stock and Entry Into Amended and Restated First Lien Credit Agreement</u>.    The Reorganized Debtors are authorized to issue the New Common Stock and enter into the Amended and Restated First Lien Credit Agreement.    The New Common Stock and Amended and Restated First Lien Credit Agreement shall be, upon execution and delivery, legal, valid, and binding obligations of the Reorganized Debtors and enforceable against the Reorganized Debtors in accordance with their respective terms and applicable law.    Notwithstanding anything to the contrary in the Plan, the New Money Tranche B Loans (as defined in the DIP Facility Loan Agreement), which were previously advanced as part of the Second Borrowing (as defined in the DIP Facility Loan Agreement) under and pursuant to the DIP Facility Loan Agreement, shall be used to fund the A&R Exit Facility.

16.    <u>Amended Organizational Documents</u>.    The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Bankruptcy Court or any other party, to execute and deliver all agreements, documents, instruments and certificates relating to the Amended By-Laws and Amended Certificates of Incorporation and to take such other actions as reasonably deemed necessary to perform their obligations thereunder.

17.    <u>New Stockholders' Agreement</u>.    The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Bankruptcy Court or any other party, to finalize, execute, and deliver the New Stockholders' Agreement and to take such other actions as reasonably deemed necessary to perform their obligations thereunder.    On the Effective Date, all of the holders of the New Common Stock shall be deemed to be parties to the New Stockholders' Agreement, as a condition to such holders' receipt of the New Common Stock pursuant to the Plan, without the need for execution by any such holder.    Each of the Prepetition First Lien Lenders and Prepetition Second Lien Lenders entitled to receive the New

Common Stock under the Plan shall be required to execute the New Stockholders' Agreement and to provide such other documents as may be reasonably requested by the Debtors or Reorganized Debtors, as applicable, as a condition to receipt of such New Common Stock. The New Stockholders' Agreement shall be binding on the Reorganized Debtors and all parties receiving, and all holders of, New Common Stock; provided, that, regardless of whether such parties execute the New Stockholders' Agreement, such parties will be deemed to have signed the New Stockholders' Agreement, which shall be as binding on such parties as if they had actually signed it.

18. <u>Worthless Stock Deduction</u>. Nothing in this Order, the Plan, or the Plan Documents shall in any way affect or modify the right or ability of the Consenting Sponsor to claim or declare a worthless stock deduction after the Effective Date in accordance with the terms of the Restructuring Support Agreement and the *Final Order Establishing Notification Procedures and Approving Restrictions on (A) Certain Transfers of Interests in the Debtors and (B) Claims of Certain Worthless Stock Deductions* [D.I. 205], and the Consenting Sponsor's obligations thereunder with regard to filing a worthless stock deduction shall survive the automatic termination of the Restructuring Support Agreement on the Effective Date. For the avoidance of doubt, without the consent of Reorganized Catalina Topco (which may only be obtained from and after the Effective Date), the Consenting Sponsor shall not claim or declare a worthless stock deduction for any tax year of the Consenting Sponsor ending prior to the Effective Date, and such obligation shall survive the automatic termination of the Restructuring Support Agreement on the Effective Date.

19. <u>Debt Documents</u>. The Debtors and Reorganized Debtors, as applicable, are authorized and empowered, without further approval of this Court or any other party, to take

such actions and to perform such acts as may be necessary, desirable, or appropriate to (i) execute the Amended and Restated First Lien Credit Agreement in accordance with the Plan and (ii) execute and deliver all agreements, documents, instruments, indentures, and certificates relating thereto (the "**Debt Documents**").  The loans and other extensions of credit contemplated by the Amended and Restated First Lien Credit Agreement and the granting of Liens to secure such loans and other extensions of credit are approved and authorized in all respects.   The Reorganized Debtors are authorized to enter into collateral documents to secure the Reorganized Debtors' obligations under the Amended and Restated First Lien Credit Agreement.  As of the Effective Date, without any further action by the Court or the directors, officers, managers, members, or shareholders of the Reorganized Debtors, the Liens and security interests granted pursuant to the Debt Documents will constitute legal, valid, and enforceable Liens and security interests in the collateral (as set forth in the Debt Documents and any other documents to be executed and delivered pursuant thereto) and such Liens and security interests will constitute legal, valid, and binding obligations of the Reorganized Debtors.  The holders of Liens under the Debt Documents are authorized to file, with the appropriate authorities, financing statements and other documents (the "**Debt Perfection Documents**") or take any other action in order to evidence, validate, and perfect such Liens or security interests.   The Debtors and the Reorganized Debtors are authorized to execute and deliver, under the Amended and Restated First Lien Credit Agreement, any such agreements, financing statements, instruments, and other documents or obtain all governmental approvals and consents the A&R Agent may reasonably request or that are required to reaffirm, establish, and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Order, and are authorized

to cooperate and make all other filings and recordings that otherwise would be reasonably necessary under applicable law to perfect and/or give notice of such Liens and security interests to third parties.   Whether the Debt Perfection Documents are filed prior to, on, or after the Effective Date, (i) such Debt Perfection Documents will be valid, binding, enforceable, and in full force and effect as of the Effective Date, and (ii) the Liens and security interests granted under or in connection with the Debt Documents will become or continue to be, as applicable, valid, binding, and enforceable obligations of the Reorganized Debtors.   The granting of such Liens and security interests, the making of such loans and other extensions of credit, the payment of any fees contemplated thereunder, and the execution and consummation of the Debt Documents and the Debt Perfection Documents have been and are being undertaken in good faith, for legitimate business purposes, and for reasonably equivalent value, will be deemed not to constitute a preference, fraudulent conveyance, or fraudulent transfer, and will not otherwise be subject to avoidance, recharacterization, disallowance, reduction, subordination (whether equitable, contractual, except as provided in any applicable intercreditor agreement, or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any Person or entity.   All fees and expenses required to be paid under the Amended and Restated First Lien Credit Agreement, including all fees and expenses payable, shall be paid by the Reorganized Debtors without further order of the Court.

20.    <u>Cancellation of Liens</u>.   Except as otherwise specifically provided in the Plan, this Order, the Debt Documents (including in connection with any express written amendment of any mortgage, deed of trust, Lien, pledge or other security interest under the Debt Documents), or in any contract, instrument, release, or other agreement or document created

pursuant to the Plan, upon the exchange in accordance with the Plan of the DIP Facility Claims, the First Lien Debt Claims or the Second Lien Debt Claims into the consideration set forth in Sections 2.3, 4.3 and 4.4 of the Plan, respectively, any Lien securing a DIP Facility Claim, First Lien Debt Claim or Second Lien Debt Claim that is converted or exchanged in accordance with the Plan for the consideration set forth in Sections 2.3, 4.3 and 4.4 of the Plan, in each case, shall be deemed released and discharged, and the holder of such DIP Facility Claim, First Lien Debt Claim or Second Lien Debt Claim (or the DIP Facility Agent, First Lien Agent or Second Lien Agent on behalf of the respective holders of such DIP Facility Claims, First Lien Debt Claims or Second Lien Debt Claims) shall be authorized and directed, at the sole expense of the Reorganized Debtors, to release any Collateral or other property of the Debtors (including any cash collateral) held by such holder and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release or discharge of such Lien, including the execution, delivery and filing or recording of such releases or discharges as may be requested by the Reorganized Debtors (including to the extent required in order to terminate any related financing statements, mortgages, mechanic's liens or lis pendens), and the Reorganized Debtors and their designees shall be authorized to file UCC-3 termination statements and other release or discharge documentation (to the extent applicable) with respect thereto.   Notwithstanding anything to the contrary herein, none of the DIP Facility Agent, the First Lien Agent, or the Second Lien Agent shall incur any cost or liability in connection with the cancellation, release, or discharge of Liens in accordance with this Order.

21.   Compliance with Section 1123(a)(6) of the Bankruptcy Code.   The Amended Certificates of Incorporation, and the terms governing the issuance of the New Common Stock, comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are

hereby approved.  The adoption and filing of the Amended Certificates of Incorporation are hereby authorized, ratified, and approved.  The Debtors have complied in all respects, to the extent necessary, with section 1123(a)(6) of the Bankruptcy Code.

22.     <u>Exemption from Securities Law</u>.  The issuance of and the distribution under the Plan of the New Common Stock shall be exempt from registration under the Securities Act and any other applicable securities laws pursuant to section 1145 of the Bankruptcy Code.  These securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code.  In addition, securities exempt under section 1145 of the Bankruptcy Code generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of several states.

23.     <u>Authorization and Issuance of Plan Securities</u>.  The Debtors or Reorganized Debtors, as applicable, are authorized to issue all plan-related securities and documents, including, without limitation, the New Common Stock.

24.     <u>Treatment of DIP Facility Claims</u>.  In full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Facility Claim, each holder of an Allowed DIP Facility Claim shall receive (i) on account of its Allowed DIP Facility New Money Loan Claims, its Pro Rata share of the loans under the A&R First-Out Tranche, and (ii) on account of its Allowed DIP Facility Roll-Up Loan Claims, its Pro Rata share of the loans under the A&R Last-Out Tranche.

25.     <u>Cancellation of Existing Securities and Claims</u>.  Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan,

or in any Plan Document, on the Effective Date, all agreements, instruments, executory contracts, and other documents evidencing any prepetition Claim or Interest (other than certain Intercompany Interests that are not modified by the Plan) and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.  The holders of or parties to such cancelled instruments, Securities, and other documentation shall have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.  For the avoidance of doubt, the foregoing sentence shall not apply to any instruments, Securities, and other documentation relating to or arising under the DIP Facility Loan Agreement.  Notwithstanding such cancellation and discharge, the First Lien Credit Agreement and the Second Lien Credit Agreement shall continue in effect solely to the extent necessary to (i) allow the holders of Allowed First Lien Debt Claims and Allowed Second Lien Debt Claims to receive distributions under the Plan, and (ii) allow the Debtors, the Reorganized Debtors, the First Lien Agent, the Second Lien Agent, and the Disbursing Agent to make post-Effective Date distributions or take such other action, if any, pursuant to the Plan on account of the Allowed First Lien Debt Claims and Allowed Second Lien Debt Claims, and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims in accordance with the Plan; provided that nothing in the Plan shall affect the discharge of Claims pursuant to the Bankruptcy Code, this Order, or the Plan or result in any liability or expense to the Reorganized Debtors.  Notwithstanding anything to the contrary herein, any and all indemnification and reimbursement provisions in the First Lien Credit Agreement and Second Lien Credit Agreement and the other Loan Documents (as defined in the First Lien Credit Agreement and Second Lien Credit Agreement, as applicable)

shall survive the occurrence of the Effective Date to the extent such indemnification and reimbursement provisions would survive the satisfaction and discharge of all other Obligations (as defined in the First Lien Credit Agreement and Second Lien Credit Agreement, as applicable). Nothing in this Order shall be deemed to limit or otherwise affect any rights of, or liens or security interests in favor of, JPM under or in connection with the L/C Cash Collateral Agreement, the Cash Collateral Account (as defined in the L/C Cash Collateral Agreement) or any contents or proceeds thereof, and the L/C Cash Collateral Agreement shall remain in effect in accordance with its terms for so long as any obligations remain outstanding thereunder (including any obligations of the Debtors to pay fronting fees or other costs pursuant to Section 2.03(i) of the First Lien Credit Agreement, which obligations shall survive the occurrence of the Effective Date and continue to accrue for so long as the JPM Letter of Credit remains outstanding). Any distributions with respect to the First Lien Credit Facility shall be made in accordance with the First Lien Credit Agreement, and any distributions with respect to the Second Lien Credit Facility shall be made in accordance with the Second Lien Credit Agreement.

26.    <u>Subordination</u>. Except as otherwise expressly provided in the Plan, any Plan Document, this Order, or a separate order of this Court, the classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Except as otherwise expressly provided in the Plan or any Plan Document, all subordination rights that a holder of a Claim or Existing Equity Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be

enjoined permanently.  Accordingly, except as otherwise expressly provided in the Plan, the distributions under the Plan to the holders of Allowed Claims and Interests will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

27.    <u>Compensation and Benefit Plans</u>.  The Debtors are hereby authorized to, and shall on the Effective Date, subject to the cancellation of the Existing Equity Interests pursuant to the Plan, assume all employment and severance policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans.  For the avoidance of doubt, the Court is not approving or endorsing the Management Incentive Plan, which shall be developed and implemented by the New Board in accordance with the Plan.

28.    <u>Proofs of Claim</u>.  Holders of Claims need not file proofs of Claim with the Bankruptcy Court, and the Reorganized Debtors and holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Cases had not been commenced.  The Reorganized Debtors shall retain all rights, claims, defenses, counterclaims, crossclaims, or rights of setoff or recoupment with respect to any Claims, including General Unsecured Claims, in the ordinary course of business after the Effective Date.  Notwithstanding any other provision of the Plan or this Order, the fact that a Claim, including General Unsecured Claims, remains unaltered by the Plan shall in no way effect whether such Claim is Allowed.  Unless otherwise ordered by the Bankruptcy Court, the holders of Claims shall not be subject to any claims resolution process in

Bankruptcy Court in connection with their Claims, and shall retain all their rights under applicable non-bankruptcy law to pursue their Claims against the Debtors or Reorganized Debtors in any forum with jurisdiction over the parties.  Except for (i) proofs of Claim asserting damages arising out of the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to Section 8.3 of the Plan and (ii) proofs of Claim that have been otherwise objected to by the Debtors prior to the Effective Date, upon the Effective Date, such proofs of Claim, regardless of the time of filing, and including Claims filed after the Effective Date, shall be deemed withdrawn.  To the extent not otherwise provided in the Plan, the deemed withdrawal of a proof of Claim is without prejudice to such claimant's rights, under Section 7.1 of the Plan to assert such Claims in any forum as though the Debtors' Chapter 11 Cases had not been commenced.  From and after the Effective Date, the Reorganized Debtors may satisfy, dispute, settle, or otherwise compromise any Claim without approval of the Bankruptcy Court and shall retain all rights, claims, defenses, counterclaims, crossclaims, or rights or setoff or recoupment with respect to any such Claims.

        29.    <u>Insurance Policies</u>.  Notwithstanding anything to the contrary contained in this Order, the Plan, the Plan Supplement, the other Plan Documents, or any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening or grants an injunction or release), upon the Effective Date, all insurance policies to which any Debtor is a party as of the Effective Date shall be deemed to be and treated as executory contracts and shall be assumed by the applicable Debtor or Reorganized Debtor and shall continue in full force and effect thereafter in accordance with their respective terms.  All other insurance policies shall vest in the Reorganized Debtors.

30.     <u>Ongoing Litigation and Administrative Proceeding</u>.     Notwithstanding anything to the contrary in this Order, the Plan, the Plan Supplement, the other Plan Documents, or any other document related to any of the foregoing, each litigation or administrative proceeding against the Debtors or Reorganized Debtors, pending or threatened, or that was or could have been commenced against the Debtors prior to the date of entry of this Order (including, without limitation, any Claim covered by Insurance Policies), shall survive these Chapter 11 Cases as if the Chapter 11 Cases had not been commenced and continue in the ordinary course in the forum where such proceeding has been or could have been brought had these Chapter 11 Cases not been commenced, and the applicable insurance carriers may administer, handle, defend, settle, and/or pay such Claims and use and apply any or all of the collateral provided by or on behalf of the Debtors (or the Reorganized Debtors, as applicable) in the ordinary course of business subject to the terms of the insurance policies.

31.     <u>Reservation of Rights in Favor of the United States.</u>  Notwithstanding any provision in the Plan, this Confirmation Order or other related Plan documents: nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability or cause of action of the United States, or impairs the ability of the United States to pursue any claim, liability, right, defense, or cause of action against any Debtor, Reorganized Debtor or non-debtor.   Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtors' Chapter 11 Cases were never filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy law.  All claims,

liabilities, rights, causes of action, or defenses of or to the United States shall survive the Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities, or causes of action would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced; provided, that nothing in the Plan or this Confirmation Order shall alter any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors under non-bankruptcy law with respect to any such claim, liability, or cause of action.  Without limiting the foregoing, for the avoidance of doubt: (i) the United States shall not be required to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or cause of action; (ii) nothing shall affect or impair the exercise of the United States' police and regulatory powers against the Debtors, the Reorganized Debtors or any non-debtor; (iii) nothing shall be interpreted to set cure amounts or to require the United States to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) nothing shall affect or impair the United States' rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) nothing shall constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law, and (vi) nothing shall relieve any party from compliance with all licenses and permits in accordance with non-bankruptcy law.

32.    <u>Compromise of Controversies</u>.  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a

good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan, and the entry of this Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to section 10.11 of the Plan.

33.    Sources of Consideration for Plan Distributions.  All consideration necessary for the Reorganized Debtors to make payments pursuant to the Plan shall be obtained from existing Cash balances of the Debtors and the proceeds of the Amended and Restated First Lien Credit Agreement.

34.    Conditions Precedent to Effective Date.  The Plan shall not become effective unless and until all conditions set forth in Section 9.2 of the Plan have been satisfied or waived pursuant to Section 9.3 of the Plan.

35.    Professional Compensation.  All Professional Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall (a) file, on or before the date that is forty five (45) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Fee Claim.  On the Effective Date, the Debtors shall establish and fund the Fee Escrow Account.  The Debtors shall fund the Fee Escrow Account with Cash equal to the Professional Persons' good faith estimates of the Fee Claims.  Funds held in the Fee Escrow Account shall not be considered property of the Debtors' Estates or property of the Reorganized Debtors, but shall revert to the Reorganized Debtors only after all Fee Claims allowed by the Bankruptcy Court

have been irrevocably paid in full. The Fee Escrow Account shall be held in trust for Professional Persons retained by the Debtors and for no other parties until all Fee Claims Allowed by the Bankruptcy Court have been paid in full. Fees owing to the applicable Professional Persons shall be paid in Cash to such Professional Persons from funds held in the Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court or authorized to be paid under the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Related Relief* [D.I. 191]; provided, however, that the Reorganized Debtors' obligations with respect to Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Fee Escrow Account. To the extent that funds held in the Fee Escrow Account are insufficient to satisfy the amount of accrued Fee Claims owing to the Professional Persons, such Professional Persons shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with Section 2.1 of the Plan. No Liens, claims, or interests shall encumber the Fee Escrow Account in any way.

36.     <u>Objections to Final Fee Applications</u>. All objections to any final fee applications shall be served and filed (a) no later than twenty-one (21) days after the filing of the final fee applications or (b) such later date as ordered by the Court upon a motion of the Reorganized Debtors.

37.     <u>Administrative Expenses</u>. Administrative expenses incurred by the Debtors or the Reorganized Debtors after the Effective Date, including Fee Claims, shall not be subject to application and may be paid by the Debtors or the Reorganized Debtors, as the case may be, in the ordinary course of business and without further Court approval.

38.    <u>Discharge</u>.  As of the Effective Date: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Debtors' Estates, or the Reorganized Debtors; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be deemed satisfied and discharged and released in full, and the liability of the Debtors and the Reorganized Debtors with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, or the Reorganized Debtors, any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

39.    <u>Releases by the Debtors</u>.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service and contributions of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, the Released Parties are deemed forever released and discharged by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other entities that may purport to assert any Cause of Action derivatively, by or through the foregoing entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses,

remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates, whether known or unknown, foreseen or unforeseen, certain or contingent, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the DIP Facility, the Amended and Restated First Lien Credit Facility, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement and any exhibits or documents relating thereto, the Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to the Plan, any other act or omission, transaction, agreement, event, or other occurrence, or any other relief obtained by the Debtors in the Chapter 11 Case, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud.

40.    <u>Releases by Holders of Claims and Interests</u>.  As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of and contribution of the

Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, the Released Parties are deemed forever released and discharged by the (i) the holders of all Claims and Interests who vote to accept the Plan, (ii) holders of Claims or Interests that are Unimpaired under the Plan, where the applicable Claims or Interests have been fully paid or otherwise satisfied in accordance with the Plan, (iii) holders of Claims or Interests whose vote to accept or reject the Plan was solicited but who did not vote either to accept or to reject the Plan, (iv) holders of Claims or Interests who voted to reject the Plan but did not opt out of granting the releases set forth herein and in the Plan, (v) the Restructuring Support Parties, (vi) the First Lien Agent, (vii) the Second Lien Agent, (viii) the DIP Facility Agent, and (ix) the DIP Facility Lenders, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, certain or contingent, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (with the exception of affiliates of the Restructuring Support Parties or the DIP Facility Lenders in their capacity as an affiliate) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the DIP Facility, the Amended and Restated

First Lien Credit Facility, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement and any exhibits or documents relating thereto, the Plan and related agreements, instruments, and other documents (including the Plan Documents), the solicitation of votes with respect to the Plan, any other act or omission, or any other relief obtained by the Debtors in the Chapter 11 Case, other than Claims or Causes of Action arising out of or related to any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct; provided, that solely for purposes of this Section, the Berkshire Funds shall be excluded from the definition of Released Party if they have not executed the Restructuring Support Agreement on or before the deadline established in the Plan for filing the Plan Supplement and become a Consenting Sponsor.

41.    Release and Exculpation Provisions.    All release and exculpation provisions embodied in the Plan, including but not limited to those contained in Sections 10.7 and 10.8 of the Plan, are (i) integral parts of the Plan, (ii) fair, equitable, and reasonable, (iii) given for valuable consideration, and (iv) are in the best interest of the Debtors (and their Estates), the Reorganized Debtors, and all other parties in interest, and such provisions are approved and shall be effective and binding on all persons and entities, to the extent provided in the Plan; provided, however, that the exculpation set forth in Section 10.8 of the Plan shall not inure to the benefit of any non-Debtor affiliate or non-Debtor subsidiary.  The release contained in Section 10.7(b) of the Plan was disclosed and explained on the Ballots, in the Disclosure Statement, and in the Plan.  The release provisions contained in Section 10.7(b) of the Plan are consensual under applicable law because the releases therein are provided only by (i) holders of Claims that are Unimpaired and (ii) holders of Impaired Claims and Interests entitled to vote on the Plan who (a) voted to accept the Plan, (b) did not vote on the Plan, or (c) voted to reject the

Plan and did not check the opt-out box. *See In re Indianapolis Downs*, 486 B.R. at 303. Notwithstanding any language to the contrary contained in the Disclosure Statement, the Plan, and/or this Order, no provision of the Disclosure Statement, the Plan, or this Order shall (a) preclude the United States and any of its agencies including, without limitation, the Securities and Exchange Commission and the United States Department of Justice, from enforcing their police or regulatory powers or (b) release any nondebtor from liability in connection with any Claim of the United States government or any of its agencies.

42.     <u>Plan Injunction</u>. Pursuant to Section 10.6(a) of the Plan, this Order shall, except as otherwise provided in the Plan or in the Plan Documents, constitute an injunction, as of the entry of this Order but subject to the occurrence of the Effective Date, permanently enjoining all Persons who have held, hold, or may hold Claims or Interests, with respect to any such Claim or Interest, from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor (or its Estate), a Reorganized Debtor (or its property), or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating,

perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan, and the Plan Documents, to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan and the Plan Documents; provided, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate from exercising their rights and remedies, or obtaining benefits, pursuant to and consistent with the terms of the Plan and the Plan Documents.  Pursuant to Section 10.6(b) of the Plan, by accepting distributions thereunder, each holder of an Allowed Claim or Interest will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in Section 10.6 therein.

43.     Unimpaired Claims.  For the avoidance of doubt, consistent with the definition of "Unimpaired" set forth in the Plan, the provisions of paragraphs 38-42 of this Order shall not apply or take effect with respect to any Allowed Unimpaired Claim until such Claim is (i) paid in full in accordance with applicable law, (ii) paid in full or otherwise satisfied under the governing documents giving rise to such Claim, (iii) paid in full or otherwise satisfied pursuant to terms agreed to between the holder of such Claim and the Debtor or Reorganized Debtor or in accordance with the terms and conditions of the particular transaction giving rise to such Claim, (iv) paid in full or otherwise satisfied pursuant to the Plan, the Plan Documents, or this

Confirmation Order, or (v) otherwise satisfied or disposed of as determined by a court of competent jurisdiction.

44.    <u>Indemnification Obligations</u>.

(a)    Pursuant to Section 8.4 of the Plan, subject to the occurrence of the Effective Date, any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organizational documents to indemnify current and former officers, directors, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; provided, that the Reorganized Debtors shall not indemnify directors of the Debtors for any claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes gross negligence or intentional fraud.  All such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors.  Any claim based on the Debtors' obligations as set forth herein or in the Plan shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.

(b)    Pursuant to Section 10.15 of the Plan, (i) the obligations of the Debtors to indemnify and reimburse their directors or officers that were directors or officers, respectively, on or subsequent to the Petition Date shall be assumed by the Reorganized Debtors and (ii) indemnification obligations of the Debtors arising from services as officers and directors during the period from and after the Petition Date shall be Administrative Expense Claims.  In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise

reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect as of the Petition Date, and all members, managers, directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date will be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date.

45.     <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930, shall be paid as and when due or otherwise pursuant to an agreement between the Reorganized Debtors and the U.S. Trustee, until such time as a Chapter 11 Case for a Debtor shall be closed.

46.     <u>Payment of Fees and Expenses of the Ad Hoc Groups' Advisors and the DIP Facility Advisors</u>.  Notwithstanding anything to the contrary herein, the unpaid reasonable and documented fees and expenses of (a) Davis Polk, as primary counsel for the Prepetition First Lien Agent and the L/C Issuer, (b) Landis Rath, as local counsel for the Prepetition First Lien Agent and the L/C Issuer, (c) Ankura, as financial advisor for the Prepetition First Lien Agent and the L/C Issuer, (d) Jones Day, as primary counsel for the Prepetition First Lien Lenders and DIP Lenders, (e) Pachulski Stang, as local counsel for the Prepetition First Lien Lenders and DIP Lenders, (f) Evercore, as financial advisor to the Prepetition First Lien Lenders and DIP Lenders, (g) Paul Weiss, as counsel to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders, (h) Young Conaway, as local counsel to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders, (i) PJT, as financial advisor to certain of the DIP Lenders, certain of the Prepetition First Lien Lenders, and that certain Ad Hoc Group of Prepetition Second Lien Lenders, (j) Wilmer Hale, as primary counsel to the Prepetition Second Lien Agent, and (k) one local counsel to the Prepetition Second Lien

Agent, shall, in each case, be Allowed in full as Administrative Expense Claims and shall be paid in full, in Cash on or before the Effective Date in accordance with the DIP Facility Order, the Restructuring Support Agreement, the Plan and/or as required by the applicable underlying credit agreement, indemnity, or fee letter, without application or approval by the Court; provided, however, that notwithstanding anything to the contrary this Order, the DIP Facility Order or the Restructuring Support Agreement, all unpaid invoices for reasonable and documented fees of the parties listed in clauses (a) through (k) of this paragraph 46 that are presented to the Debtors no later than two Business Days prior to the Effective Date, shall be paid on the Effective Date.

47.     <u>Consenting Unsecured PDM Noteholders</u>.  So long as (i) the Consenting Unsecured PDM Noteholders and the Unsecured PDM Advisors (each as defined in the Second Amended and Restated Restructuring Support Agreement) do not assert or otherwise claim (or direct any Person to assert or otherwise claim) that any amounts are owed to them by the Debtors or the Reorganized Debtors on account of services rendered to, or for the benefit of, the Unsecured PDM Noteholders (as defined in the Second Amended and Restated Restructuring Support Agreement) by the Unsecured PDM Advisors prior to the Effective Date, other than the Consenting Unsecured PDM Noteholder Fee Amount (as defined in the Second Amended and Restated Restructuring Support Agreement) owed to Debevoise & Plimpton LLP and (ii) such Consenting Unsecured PDM Noteholders remain parties to, and in compliance with, the Second Amended and Restated Restructuring Support Agreement on the Effective Date, then (x) the Consenting Unsecured PDM Noteholders shall be considered "Released Parties" under the Plan and this Order and (y) the Debtors shall pay in cash, on the Effective Date, the Consenting Unsecured PDM Noteholder Fee Amount and other reasonable and documented out-of-pocket

expenses of the Consenting Unsecured PDM Noteholders invoiced to the Debtors prior to the Effective Date in an aggregate amount not to exceed $25,000.

48.    Notwithstanding anything in this Order or the Second Amended and Restated Restructuring Support Agreement to the contrary, in the event that any Consenting Unsecured PDM Noteholder or Unsecured PDM Advisor (or any Person acting at the direction of the foregoing) asserts or otherwise claims, before or after the Effective Date, that any amounts are owed to it or any Unsecured PDM Advisor by the Debtors or the Reorganized Debtors on account of services rendered to, or for the benefit of, the Unsecured PDM Noteholders by the Unsecured PDM Advisors prior to the Effective Date, other than the Consenting Unsecured PDM Noteholder Fee Amount owed to Debevoise & Plimpton LLP, the releases of the Consenting Unsecured PDM Noteholders set forth in the Plan and this Order shall immediately and automatically be of no force or effect, without any requirement for additional action by the Court or any other party.

49.    <u>Withholding and Reporting Requirements</u>.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any withholding or reporting requirements.  In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate Cash necessary to pay over the withholding tax.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution

under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.  The Reorganized Debtors have the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.  The Reorganized Debtors may require, as a condition to receipt of a distribution, that the holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such holder.  If the Reorganized Debtors make such a request and the holder fails to comply before the date that is one hundred eighty (180) days after the request is made, the amount of such distribution shall irrevocably revert to the applicable Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or its respective property.

50.    Exemption from Transfer Taxes.    Pursuant to section 1146 of the Bankruptcy Code and Section 12.1 of the Plan, (a) the issuance, transfer or exchange of any securities, instruments or documents, including issuance of the New Common Stock (b) the creation of any Lien, mortgage, deed of trust or other security interest, (c) all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under the Plan, (d) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, (e) the grant of collateral under the Amended and Restated First Lien Credit Agreement, and (f) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan, including, without limitation, this Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to this Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

51.    Texas Tax Authorities. The claims of Anderson County, Bastrop County, Bell County Tax Appraisal District, Bowie Central Appraisal District, Brazos County, Burnet Central Appraisal District, Calhoun County Appraisal District, Comal County, Coryell County, Denton County, Erath County, Guadalupe County, Harrison Central Appraisal District, Hays County, Henderson County, Jasper County, City of Waco, et al., Midland Central Appraisal District, Taylor County Central Appraisal District, Wharton County, Williamson County, and Harrison County (collectively, the "**Texas Tax Authorities**") for any unpaid 2018 ad valorem business personal property taxes shall be paid in the ordinary course of business. In the event any such claims are paid after January 31, 2019, the rights of the Texas Tax Authorities to seek interest at the state statutory rate pursuant to sections 506(b), 511, and 1129 of the Bankruptcy Code shall be reserved. The Texas Tax Authorities shall retain the liens that secure all amounts ultimately owed on their claims as well as the state law priority of those liens until the claims are paid in full. In the event that collateral that secures the claim of one or more of the Texas Tax Authorities is returned to a creditor that is junior to the Texas Tax Authorities, the Debtor or the

Reorganized Debtor, as applicable, shall first pay all ad valorem property taxes that are secured by the collateral.

52.   <u>Dole Packaged Foods, LLC</u>.   Notwithstanding anything in the Plan or this Confirmation Order to the contrary: the *Objection of Dole Packaged Foods, LLC to Joint Prepackaged Chapter 11 Plan of Checkout Holding Corp. and its Affiliated Debtors* [D.I. 235] shall be deemed an affirmative opt out by Dole Packaged Foods, LLC of the releases provided under Section 10.7(b) of the Plan and paragraph 40 of this Order.   Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any rights that Dole Packaged Foods, LLC may have to recoupment or to offset a mutual debt owing by Dole Packaged Foods, LLC to any of the Debtors against any claim Dole Packaged Foods, LLC may have against such Debtor are reserved.

53.   <u>Closing of Chapter 11 Cases</u>.   Section 5.12 of the Plan is hereby amended such that, in order to close any of the Chapter 11 Cases, the Debtors must file a motion with the Court.   For the avoidance of doubt, the Debtors may not close any of the Chapter 11 Cases solely by filing an order under certification of counsel.

54.   <u>Intercompany Claims</u>.   On the Effective Date, or as soon as practicable thereafter, all Intercompany Claims shall be paid, adjusted, continued, settled, reinstated, discharged, contributed to capital, or eliminated, in each case to the extent determined to be appropriate by the Debtors (with the consent of the Ad Hoc First Lien Group) or the Reorganized Debtors, as applicable, subject to the terms of the Acquisition Transactions and Restructuring Transactions.

55.   <u>Documents, Mortgages, and Instruments</u>.      Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any

and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions, including the Restructuring Transactions, contemplated in the Plan and this Order.

56.     Reversal/Stay/Modification/Vacatur of Order.     Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

57.     Retention of Jurisdiction.     Notwithstanding the entry of this Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Plan, the Plan Documents, or this Order, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Plan.

58.     Modifications.     The Plan and the Plan Documents may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to

section 1125 of the Bankruptcy Code, except as otherwise ordered by the Court.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors, with the consent of the Required Restructuring Support Parties, may remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents, or this Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.  Notwithstanding anything herein or in the Plan to the contrary, prior to the Effective Date, the Debtors, with the consent of the applicable Restructuring Support Parties, may make appropriate adjustments and modifications to the Plan and the Plan Documents consistent with the Restructuring Support Agreement without further order or approval of the Court; provided, that such adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under the Plan.

59.    <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

60.    <u>Headings</u>.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Order for any other purpose.

61.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced

in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

62.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to section 1123(a) and section 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

63.     <u>Waiver of Filings</u>.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the entry of this Order.

64.     <u>Governmental Approvals Not Required</u>.  This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements (including the Plan Documents), and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

65.     <u>Notice of Order</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Order and occurrence of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit B</u>**, to all parties who hold a Claim or Interest in these cases and the U.S. Trustee. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

66.     <u>Post-Effective Date Notices</u>.  Except as otherwise may be provided in the Plan or in this Order, the only parties entitled to notice of any pleadings filed in the Chapter 11 Cases after the Effective Date shall be the U.S. Trustee, the Reorganized Debtors and their counsel, and the Restructuring Support Parties and their respective counsel.

67.     <u>Termination of the Restructuring Support Agreement</u>.  On the Effective Date, the Restructuring Support Agreement will terminate in accordance with Section 6 thereof, except for any provisions thereunder that expressly survive termination of the Restructuring Support Agreement.

68.     <u>Waiver of Section 341(a) Meeting</u>.  As of the Confirmation Date, the Section 341(a) Meeting has not been convened.  The convening of the Section 341(a) Meeting is hereby waived in accordance with the Scheduling Order.

69.     <u>Termination of Challenge Period</u>.  The time within which to commence a Challenge (as defined in the Final DIP Order) is terminated as of the date hereof, and the stipulations, admissions, findings, and releases contained in the Final DIP Order shall be binding on the Debtors' estates and all parties in interest.

70.     <u>Final Order</u>.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

71.     <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

72.     <u>Waiver of Stay</u>.  The stay of this Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for fourteen (14) days or otherwise, is hereby waived, and this Order shall be effective and enforceable immediately upon its entry by the Court.

73.     <u>Inconsistency</u>.  To the extent of any inconsistency between this Order and the Plan, this Order shall govern.

74.     <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

75.     <u>Restructuring Transactions</u>.  Prior to or on the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan and this Order.

**Dated: January 31st, 2019**
**Wilmington, Delaware**

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**